# EXHIBIT 10

| | |
|---|---|
| **To:** | tiger lily venture ltd (CJ@TLV.VC) |
| **Subject:** | U.S. TRADEMARK APPLICATION NO. 85868892 - LEHMAN BROTHERS - N/A |
| **Sent:** | 6/17/2013 5:09:58 PM |
| **Sent As:** | ECOM105@USPTO.GOV |
| **Attachments:** | Attachment - 1 |
| | Attachment - 2 |
| | Attachment - 3 |
| | Attachment - 4 |
| | Attachment - 5 |
| | Attachment - 6 |
| | Attachment - 7 |
| | Attachment - 8 |
| | Attachment - 9 |
| | Attachment - 10 |
| | Attachment - 11 |
| | Attachment - 12 |
| | Attachment - 13 |
| | Attachment - 14 |
| | Attachment - 15 |
| | Attachment - 16 |
| | Attachment - 17 |
| | Attachment - 18 |
| | Attachment - 19 |
| | Attachment - 20 |
| | Attachment - 21 |
| | Attachment - 22 |
| | Attachment - 23 |
| | Attachment - 24 |
| | Attachment - 25 |
| | Attachment - 26 |
| | Attachment - 27 |
| | Attachment - 28 |
| | Attachment - 29 |
| | Attachment - 30 |
| | Attachment - 31 |
| | Attachment - 32 |
| | Attachment - 33 |
| | Attachment - 34 |
| | Attachment - 35 |
| | Attachment - 36 |
| | Attachment - 37 |
| | Attachment - 38 |
| | Attachment - 39 |
| | Attachment - 40 |
| | Attachment - 41 |
| | Attachment - 42 |
| | Attachment - 43 |
| | Attachment - 44 |

[Attachment - 45](#)
[Attachment - 46](#)
[Attachment - 47](#)

**UNITED STATES PATENT AND TRADEMARK OFFICE (USPTO)**
**OFFICE ACTION (OFFICIAL LETTER) ABOUT APPLICANT'S TRADEMARK APPLICATION**

**U.S. APPLICATION SERIAL NO.** 85868892

**MARK:** LEHMAN BROTHERS

**\*85868892\***

**CORRESPONDENT ADDRESS:**
   TIGER LILY VENTURE ; TIGER LILY VENTURE
   145-157 ST JOHN STREET
   LONDON
   EC1V4PW
   UNITED KINGDOM

**CLICK HERE TO RESPOND TO THIS LETTER:**
http://www.uspto.gov/trademarks/teas/response_forms.jsp

**APPLICANT:** tiger lily venture ltd

**CORRESPONDENT'S REFERENCE/DOCKET NO :**
   N/A
**CORRESPONDENT E-MAIL ADDRESS:**
   CJ@TLV.VC

## OFFICE ACTION

### STRICT DEADLINE TO RESPOND TO THIS LETTER

TO AVOID ABANDONMENT OF APPLICANT'S TRADEMARK APPLICATION, THE USPTO MUST RECEIVE APPLICANT'S COMPLETE RESPONSE TO THIS LETTER **WITHIN 6 MONTHS** OF THE ISSUE/MAILING DATE BELOW.

**ISSUE/MAILING DATE: 6/17/2013**

**TEAS PLUS APPLICANTS MUST SUBMIT DOCUMENTS ELECTRONICALLY OR SUBMIT FEE:** Applicants who filed their application online using the reduced-fee TEAS Plus application must continue to submit certain documents online using TEAS, including responses to Office actions.  *See* 37 C.F.R. §2.23(a)(1).  For a complete list of these documents, see TMEP §819.02(b).  In addition, such applicants must accept correspondence from the Office via e-mail throughout the examination process and must maintain a valid e-mail address.  37 C.F.R. §2.23(a)(2); TMEP §§819, 819.02(a).  TEAS Plus applicants who do not meet these requirements must submit an additional fee of $50 per international class of goods and/or services.  37 C.F.R. §2.6(a)(1)(iv); TMEP §819.04.  In appropriate situations and where all issues can be resolved by amendment, responding by telephone to authorize an examiner's amendment will not incur this additional fee.

The referenced application has been reviewed by the assigned trademark examining attorney.  Applicant must respond timely and completely to the issue(s) below.  15 U.S.C. §1062(b); 37 C.F.R. §§2.62(a), 2.65(a); TMEP §§711, 718.03.

SUMMARY OF ISSUES that applicant must address:

- Section 2(a) False Connection Refusal
- Request for Information Regarding Nature and Meaning of the Mark

**SEARCH OF THE OFFICE'S DATABASE**

The trademark examining attorney has searched the Office's database of registered and pending marks and has found no conflicting marks that would bar registration under Trademark Act Section 2(d).  TMEP §704.02; *see* 15 U.S.C. §1052(d).

**SECTION 2(a) FALSE CONNECTION REFUSAL**

Registration is refused because the applied-for mark consists of matter which may falsely suggest a connection with Lehman Brothers, the former financial services firm. Although the financial firm is not connected with the goods provided by applicant under the applied-for mark, Lehman Brothers is so famous that consumers would presume a connection. Trademark Act Section 2(a), 15 U.S.C. §1052(a); *see* TMEP §§1203.03, 1203.03(e). *See generally Univ. of Notre Dame du Lac v. J.C. Gourmet Food Imps. Co.*, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983); *In re Cotter & Co.*, 228 USPQ 202 (TTAB 1985); *Buffett v. Chi-Chi's, Inc.*, 226 USPQ 428 (TTAB 1985).

The following is required for a showing of false connection under Trademark Act Section 2(a):

(1) The mark sought to be registered is the same as, or a close approximation of, the name or identity previously used by another person or institution.

(2) The mark would be recognized as such, in that it points uniquely and unmistakably to that person or institution.

(3) The person or institution identified in the mark is not connected with the goods sold or services performed by applicant under the mark.

(4) The fame or reputation of the named person or institution is of such a nature that a connection with such person or institution would be presumed when applicant's mark is used on its goods and/or services.

*In re Jackson Int'l Trading Co.*, 103 USPQ2d 1417, 1419 (TTAB 2012); *In re MC MC S.r.l.*, 88 USPQ2d 1378, 1379 (TTAB 2008); TMEP §1203.03(e); *see also Univ. of Notre Dame du Lac v. J.C. Gourmet Food Imps. Co.*, 703 F.2d 1372, 1375-77, 217 USPQ 505, 508-10 (Fed. Cir. 1983) (providing foundational principles for the current four-part test used to determine the existence of a false connection).

In this case, the applied-for mark "LEHMAN BROTHERS" appears in the identical spelling as the mark "Lehman Brothers" used by the investment firm. Therefore, the applied-for mark would be uniquely and unmistakably recognized by consumers to refer to the former investment firm. Although the investment firm did not distribute or produce beer or spirits, the institution associated with the "Lehman Brothers" name is so famous that a connection to the firm would be presumed if the applicant were to use the mark in connection with its goods. For example, the attached Wikipedia® page shows that Lehman Brothers was "the fourth-largest investment bank in the US" and that its bankruptcy filing is the largest in U.S. history. *See attached Wikipedia® page.* In addition, Lehman Brothers "is thought to have played a major role in the unfolding of the late-2000s global financial crisis." *See Id.* Since Lehman Brothers was once considered to be one of the major players in the global banking and financial services industries, the fame and reputation of the mark presumes a connection to the investment firm. *See http://www.investopedia.com/terms/l/lehman-brothers.asp.*

In addition, the following websites all reference the fame of the applied-for mark "LEHMAN BROTHERS":

http://www.library.hbs.edu/hc/lehman/history.html
http://online.wsj.com/article/SB10001424127887323844804578531170120093726.html
http://topics.nytimes.com/top/news/business/companies/lehman_brothers_holdings_inc/index.html
http://dm.epiq11.com/LBH/Project
http://www.cnbc.com/id/26638883
http://www.huffingtonpost.com/news/lehman-brothers-bankruptcy
http://www.cbsnews.com/8301-18560_162-57491089/the-case-against-lehman-brothers/

The fact that purchasers would realize, at some point after purchase, that no connection exists between the listed goods and/or services and the person or institution falsely connected, is not relevant. The focus is on "the initial reaction or impact of the mark when viewed in conjunction with the applicable goods or services." *In re U.S. Bicentennial Soc'y*, 197 USPQ 905, 906 (TTAB 1978) (internal punctuation omitted) (quoting *In re Nat'l Intelligence Acad.*, 190 USPQ 570, 572 (TTAB 1976)).

Lastly, the fact that Lehman Brothers has declared bankruptcy does not diminish the connection drawn to the investment firm in this case because Section 2(a) of the Trademark Act, 15 U.S.C. §1052(a), protects, inter alia, "persons, living or dead." *See TMEP 1203.03(a).*

Although applicant's mark has been refused registration, applicant may respond to the refusal(s) by submitting evidence and arguments in support of registration.

Applicant must respond to the requirement(s) set forth below.

**REQUEST FOR INFORMATION REGARDING MEANING AND NATURE OF APPLICANT'S MARK**

Applicant must explain whether "LEHMAN BROTHERS" has any meaning or significance in the industry in which the goods are manufactured/provided, or if such wording is a "term of art" within applicant's industry. Applicant must also explain whether this wording identifies a geographic place. *See* 37 C.F.R. §2.61(b); TMEP §814.

Further, applicant must provide additional information about this wording to enable proper examination of the application. Specifically, applicant must respond to the following questions:

1. What is the significance of the term "LEHMAN" in connection to the applicant's goods?
2. What is the significance of the term "BROTHERS" in connection to the applicant's goods?
3. What is the significance of the phrase "LEHMAN BROTHERS" in connection to the applicant's goods?
4. Is the applicant connected to the Lehman Brothers investment firm?
5. Is the applied-for mark intended to attempt to create a connection to the Lehman Brothers investment firm?

Failure to respond to a request for information is an additional ground for refusing registration. *See In re Cheezwhse.com, Inc.*, 85 USPQ2d 1917, 1919 (TTAB 2008); *In re DTI P'ship LLP*, 67 USPQ2d 1699, 1701 (TTAB 2003); TMEP §814.

Although applicant's mark has been refused registration, applicant may respond to the refusal(s) by submitting evidence and arguments in support of registration.

Because of the legal technicalities and strict deadlines involved in the USPTO application process, applicant may wish to hire a private attorney specializing in trademark matters to represent applicant in this process and provide legal advice. Although the undersigned trademark examining attorney is permitted to help an applicant understand the contents of an Office action as well as the application process in general, no USPTO attorney or staff is permitted to give an applicant legal advice or statements about an applicant's legal rights. TMEP §§705.02, 709.06.

For attorney referral information, applicant may consult the American Bar Association's Consumers' Guide to Legal Help at http://www.abanet.org/legalservices/findlegalhelp/home.cfm, an attorney referral service of a state or local bar association, or a local telephone directory. The USPTO may not assist an applicant in the selection of a private attorney. 37 C.F.R. §2.11.

If applicant has questions regarding this Office action, please telephone or e-mail the assigned trademark examining attorney. All relevant e-mail communications will be placed in the official application record; however, an e-mail communication will not be accepted as a response to this Office action and will not extend the deadline for filing a proper response. *See* 37 C.F.R. §2.191; TMEP §§304.01-.02, 709.04-.05. Further, although the trademark examining attorney may provide additional explanation pertaining to the refusal(s) and/or requirement(s) in this Office action, the trademark examining attorney may not provide legal advice or statements about applicant's rights. *See* TMEP §§705.02, 709.06.

/Catherine L. Roehl/
Trademark Examining Attorney
Law Office 105
(571) 272-6120
Catherine.Roehl@USPTO.GOV

**TO RESPOND TO THIS LETTER:**  Go to http://www.uspto.gov/trademarks/teas/response_forms.jsp. Please wait 48-72 hours from the issue/mailing date before using the Trademark Electronic Application System (TEAS), to allow for necessary system updates of the application. For *technical* assistance with online forms, e-mail TEAS@uspto.gov.  For questions about the Office action itself, please contact the assigned trademark examining attorney.  **E-mail communications will not be accepted as responses to Office actions; therefore, do not respond to this Office action by e-mail.**

**All informal e-mail communications relevant to this application will be placed in the official application record.**

**WHO MUST SIGN THE RESPONSE:**  It must be personally signed by an individual applicant or someone with legal authority to bind an applicant (i.e., a corporate officer, a general partner, all joint applicants).  If an applicant is represented by an attorney, the attorney must sign the response.

**PERIODICALLY CHECK THE STATUS OF THE APPLICATION:**  To ensure that applicant does not miss crucial deadlines or official notices, check the status of the application every three to four months using the Trademark Status and Document Retrieval (TSDR) system at http://tsdr.uspto.gov/.  Please keep a copy of the TSDR status screen. If the status shows no change for more than six months, contact the Trademark Assistance Center by e-mail at TrademarkAssistanceCenter@uspto.gov or call 1-800-786-9199.  For more information on checking

status, see http://www.uspto.gov/trademarks/process/status/.

**TO UPDATE CORRESPONDENCE/E-MAIL ADDRESS:**  Use the TEAS form at http://www.uspto.gov/trademarks/teas/correspondence.jsp.

| | |
|---|---|
| **To:** | tiger lily venture ltd (rg@gs2law.com) |
| **Subject:** | U.S. TRADEMARK APPLICATION NO. 85868892 - LEHMAN BROTHERS - N/A |
| **Sent:** | 12/23/2013 3:32:51 PM |
| **Sent As:** | ECOM105@USPTO.GOV |
| **Attachments:** | Attachment - 1<br>Attachment - 2<br>Attachment - 3<br>Attachment - 4<br>Attachment - 5<br>Attachment - 6<br>Attachment - 7<br>Attachment - 8<br>Attachment - 9<br>Attachment - 10<br>Attachment - 11<br>Attachment - 12<br>Attachment - 13<br>Attachment - 14<br>Attachment - 15<br>Attachment - 16 |

**UNITED STATES PATENT AND TRADEMARK OFFICE (USPTO)**
**OFFICE ACTION (OFFICIAL LETTER) ABOUT APPLICANT'S TRADEMARK APPLICATION**

**U.S. APPLICATION SERIAL NO.** 85868892

**MARK:** LEHMAN BROTHERS

**\*85868892\***

**CORRESPONDENT ADDRESS:**
   Robert Garson
   Garson, Segal, Steinmetz Fladgate LLP
   164 West 25th Street
   11R
   New York NY 10001

**CLICK HERE TO RESPOND TO THIS LETTER:**
http://www.uspto.gov/trademarks/teas/response_forms.jsp

**APPLICANT:** tiger lily venture ltd

**CORRESPONDENT'S REFERENCE/DOCKET NO :**
   N/A
**CORRESPONDENT E-MAIL ADDRESS:**
   rg@gs2law.com


## OFFICE ACTION

### STRICT DEADLINE TO RESPOND TO THIS LETTER

TO AVOID ABANDONMENT OF APPLICANT'S TRADEMARK APPLICATION, THE USPTO MUST RECEIVE APPLICANT'S COMPLETE RESPONSE TO THIS LETTER **WITHIN 6 MONTHS** OF THE ISSUE/MAILING DATE BELOW.

**ISSUE/MAILING DATE: 12/23/2013**

**THIS IS A FINAL ACTION.**

**TEAS PLUS APPLICANTS MUST SUBMIT DOCUMENTS ELECTRONICALLY OR SUBMIT FEE:** Applicants who filed their application online using the reduced-fee TEAS Plus application must continue to submit certain documents online using TEAS, including responses to Office actions. *See* 37 C.F.R. §2.23(a)(1). For a complete list of these documents, see TMEP §819.02(b). In addition, such applicants must accept correspondence from the Office via e-mail throughout the examination process and must maintain a valid e-mail address. 37 C.F.R. §2.23(a)(2); TMEP §§819, 819.02(a). TEAS Plus applicants who do not meet these requirements must submit an additional fee of $50 per international class of goods and/or services. 37 C.F.R. §2.6(a)(1)(iv); TMEP §819.04. In appropriate situations and where all issues can be resolved by amendment, responding by telephone to authorize an examiner's amendment will not incur this additional fee.

*This Final Action is in response to the applicant's communication filed on December 12, 2013. The applicant has satisfied the Request for Information Regarding Nature and Meaning of the Mark.*

The refusal under Trademark Act Section 2(a) is now made FINAL for the reasons set forth below. *See* 15 U.S.C. §1052(a); 37 C.F.R. §2.64(a).

SUMMARY OF ISSUES that applicant must address:

- Section 2(a) False Connection Refusal

### SECTION 2(a) FALSE CONNECTION REFUSAL
*This refusal is now made final.*
Registration remains refused because the applied-for mark consists of matter which may falsely suggest a connection with Lehman Brothers, the financial services firm. Although the financial firm is not connected with the goods provided by applicant under the applied-for mark, the Lehman Brothers institution, as well as the financial crisis surrounding the fall of the Lehman Brothers financial firm, is so famous and well known that consumers would presume a connection. Trademark Act Section 2(a), 15 U.S.C. §1052(a); *see* TMEP §§1203.03, 1203.03(e). *See generally Univ. of Notre Dame du Lac v. J.C. Gourmet Food Imps. Co.*, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983); *In re Cotter & Co.*, 228 USPQ 202 (TTAB 1985); *Buffett v. Chi-Chi's, Inc.*, 226 USPQ 428 (TTAB 1985).
The following is required for a showing of false connection under Trademark Act Section 2(a):

    (1) The mark sought to be registered is the same as, or a close approximation of, the name or identity previously used by another person or institution.

    (2) The mark would be recognized as such, in that it points uniquely and unmistakably to that person or institution.

    (3) The person or institution identified in the mark is not connected with the goods sold or services performed by applicant under the mark.

    (4) The fame or reputation of the named person or institution is of such a nature that a connection with such person or institution would be presumed when applicant's mark is used on its goods and/or services.

*In re Jackson Int'l Trading Co.*, 103 USPQ2d 1417, 1419 (TTAB 2012); *In re MC MC S.r.l.*, 88 USPQ2d 1378, 1379 (TTAB 2008); TMEP §1203.03(c)(i); *see also Univ. of Notre Dame du Lac v. J.C. Gourmet Food Imps. Co.*, 703 F.2d 1372, 1375-77, 217 USPQ 505, 508-10 (Fed. Cir. 1983) (providing foundational principles for the current four-part test used to determine the existence of a false connection).
In this case, the applicant did not apply for the mark "LEHMAN BROTHERS" in a novelty spelling or form, but rather applied for the mark "LEHMAN BROTHERS" in the identical spelling as the mark "Lehman Brothers" used by the investment firm. Therefore, the applied-for mark would be uniquely and unmistakably recognized by consumers as referring to the investment institution. In addition, in the applicant's Response to Office Action on December 12, 2013, the applicant admits that the meaning of the applied-for mark "LEHMAN BROTHERS" is "designed to evoke the feelings with and parody of the bankruptcy with which Lehman Brothers has become synonymous", and that the applicant **is not** connected to the Lehman Brothers investment firm (emphasis added).
Although the examining attorney and the applicant both agree on the fact that the investment firm did not distribute or produce beer or spirits, the examining attorney argues that the institution associated with the "Lehman Brothers" name is so famous that a connection to the firm would be presumed if the applicant were to use the mark in connection with its goods. Both the examining attorney and the applicant appear to agree that the Lehman Brothers investment firm was connected with and/or caused a role in the late-2000s global financial crisis through its bankruptcy filing. *See the examining attorney's previously attacked Wikipedia® page and Internet evidence and the applicant's evidence regarding the Lehman Brothers bankruptcy filing.* The applicant argues in its Response to Office Action that the applied-for mark is intended to be a novelty or parody line of products based off of the Lehman Brothers bankruptcy. In addition, the applicant argues that the phrase "LEHMAN BROTHERS" has acquired further meaning. The examining attorney respectfully disagrees.
While although the phrase "Lehman Moment" may now be used to describe economic failure, the applicant has not applied-for such a mark using the term "moment." Rather, while the phrase "Lehman Brothers" is used in some instances to describe failure, it does not change the fact that the phrase "Lehman Brothers" connotes a connection first and foremost to the financial institution itself. Since it was the financial

institution that caused the economic downturn, it is a step removed to assume that consumers will not first think of the actual financial institution of Lehman Brothers, before thinking of the economic consequences it caused.  Therefore, consumers are likely to associate a connection between the applied-for mark and the investment firm before thinking of any other meanings that may surround the name "Lehman Brothers."

In addition, the applicant argues that the applied-for mark is a parody.  However, evidence of an applicant's intent to use the name of a famous institution is highly probative that the public will make the intended false connection.  *Univ. of Notre Dame du Lac v. J.C. Gourmet Food Imps. Co.*, 703 F.2d 1372, 1377, 217 USPQ 505, 509 (Fed. Cir. 1983); TMEP §1203.03(c)(i).  In this, it is clear from the applicant's Response to Office Action that the applicant intended to use the exact name and spelling of the Lehman Brothers financial institution.  The applicant indicates that it is the "current interpretation of the name LEHMAN BROTHERS" that the applicant seeks to utilize.  *See applicant's Response.*  However, given the fact that the applicant's intent is to directly utilize the name of the financial institution, it is likely that consumers will continue to presume a false connection between the two organizations.  Furthermore, the applicant listed cases such as "PASSION" for perfume, or "RED" for fragrances to show that marks that convey specific commercial impressions are commonly registered.   However, to the examining attorney's knowledge, these cases were not refused based on a false connection under  Trademark Act Section 2(a), 15 U.S.C. §1052(a), and that there were no institutions in issue with the names of "PASSION" or "RED", in which a Section 2(a) False Connection refusal would have been issued in order to protect. Therefore, the applicant's referenced cases are not dispositive for this analysis.

Moreover, whether an applied-for mark is descriptive of a feature of a mark, versus whether it falsely suggests a connotation to a famous institution is a completely different analysis, and is not the focus of this final refusal.  In addition, the fact that purchasers would realize, at some point after purchase, that no connection exists between the listed goods and/or services and the person or institution falsely connected, is not relevant. The focus is on "the initial reaction or impact of the mark when viewed in conjunction with the applicable goods or services."  *In re U.S. Bicentennial Soc'y* , 197 USPQ 905, 906 (TTAB 1978) (internal punctuation omitted) (quoting *In re Nat'l Intelligence Acad.* , 190 USPQ 570, 572 (TTAB 1976).

Section 2(a) of the Trademark Act, 15 U.S.C. §1052(a), bars the registration on either the Principal or the Supplemental Register of a designation that consists of or comprises matter which, with regard to persons, institutions, beliefs, or national symbols, falsely suggests a connection with them *See* TMEP §1203.03.  As the applicant correctly noted, the examining attorney did not issue a Likelihood of Confusion Refusal in this case.  Section 2(a) is distinctly different from §2(d), 15 U.S.C. §1052(d), for which the relevant test is likelihood of confusion. *In Univ. of Notre Dame du Lac v. J.C. Gourmet Food Imps. Co.*, 703 F.2d 1372, 1375-76, 217 USPQ 505, 508-09 (Fed. Cir. 1983), aff'g 213 USPQ 594 (TTAB 1982), the Court of Appeals for the Federal Circuit noted as follows:

> A reading of the legislative history with respect to what became §2(a) shows that the drafters were concerned with protecting the name of an individual or institution which was not a technical "trademark" or "trade name" upon which an objection could be made under §2(d)....
>
> Although not articulated as such, it appears that the drafters sought by §2(a) to embrace concepts of the right to privacy, an area of the law then in an embryonic state (footnote omitted). Our review of case law discloses that the elements of a claim of invasion of one's privacy have emerged as distinctly different from those of trademark or trade name infringement. There may be no likelihood of such confusion as to the source of goods even under a theory of "sponsorship" or "endorsement," and, nevertheless, one's right of privacy, or the related right of publicity, may be violated.

The right to privacy protects a party's control over the use of its identity or "persona." A party acquires a protectable interest in a name or equivalent designation under §2(a) where the name or designation is unmistakably associated with, and points uniquely to, that party's personality or "persona." A party's interest in a name or designation does not depend upon adoption and use as a technical trademark or trade name. *See* TMEP 1203.03 and *Univ. of Notre Dame du Lac*, 703 F.2d at 1375-77, 217 USPQ at 508-09; *Buffett v. Chi-Chi's, Inc* ., 226 USPQ 428, 429 (TTAB 1985). **Section 2(a) protection is intended to prevent the unauthorized use of the persona of a person or institution and not to protect the public.** *In re MC MC S.r.l.*, 88 USPQ2d 1378, 1380 (TTAB 2008) (quoting Bridgestone/Firestone Research Inc. v. Auto. Club De L'Quest De La France, 245 F.3d 1359, 58 USPQ2d 1460 (Fed. Cir. 2001)) (emphasis added).

Since Lehman Brothers was once considered to be one of the major players in the global banking and financial services industries, the fame and reputation of the mark presumes a connection to the investment firm.  In addition, the following websites, as well as the previously attached websites all reference the fame to this day of the applied-for mark "LEHMAN BROTHERS":

http://www.google.com/url?sa=t&rct=j&q=&esrc=s&frm=1&source=web&cd=4&sqi=2&ved=0CE0QqQIwAw&url=http%3A%2F%2Fwww.crov leftover-subprime-loans-crowdfunded-american-homeowner-preservation%2F&ei=H2i4Up2BG6LisASM1oFI&usg=AFQjCNEJwXdJWZPo5DYfehLlZAROQFHuNw&bvm=bv.58187178,d.cWc

http://www.theguardian.com/business/poll/2013/sep/16/lehman-brothers-five-years-on-lessons-learned

http://www.meteoram.com/advisers/lehman-brothers-update2

http://www.reuters.com/article/2013/03/27/lehman-bankruptcy-idUSL2N0CJ0IQ20130327

Lastly, the fact that Lehman Brothers has declared bankruptcy does not diminish the connection drawn to the investment firm in this case because Section 2(a) of the Trademark Act, 15 U.S.C. §1052(a), protects, inter alia, "persons, living or dead."  *See TMEP 1203.03(a)(i).* The attached article shows that Lehman Brothers is still in existence despite the ongoing bankruptcy wrap up procedures.  *See http://money.cnn.com/2013/09/16/investing/lehman-brothers/.* Therefore, Lehman Brothers' rights under §2(a) have not yet been extinguished, because Lehman Brothers, as a juristic person has not yet ceased to exist. *See* TMEP §1203.03(a)(i) and *In re Wielinski*, 49 USPQ2d at 1758 (overruled on other grounds, In re WNBA Enter., LLC, 70 USPQ2d 1153 (TTAB 2003)).

**Therefore, in consideration of the arguments presented above, the refusal under Section 2(a) of the Trademark Act is continued and made final.**

**RESPONSE OPTIONS**

Applicant must respond within six months of the date of issuance of this final Office action or the application will be abandoned. 15 U.S.C. §1062(b); 37 C.F.R. §2.65(a). Applicant may respond by providing one or both of the following:

(1)  A response that fully satisfies all outstanding requirements;

(2)  An appeal to the Trademark Trial and Appeal Board, with the appeal fee of $100 per class.

37 C.F.R. §2.64(a); TMEP §714.04; *see* 37 C.F.R. §2.6(a)(18); TBMP ch. 1200.

In certain rare circumstances, an applicant may respond by filing a petition to the Director pursuant to 37 C.F.R. §2.63(b)(2) to review procedural issues. 37 C.F.R. §2.64(a); TMEP §714.04; *see* 37 C.F.R. §2.146(b); TBMP §1201.05; TMEP §1704 (explaining petitionable matters). The petition fee is $100. 37 C.F.R. §2.6(a)(15).

Applicant must respond within six months of the date of issuance of this final Office action or the application will be abandoned. 15 U.S.C. §1062(b); 37 C.F.R. §2.65(a). Applicant may respond by providing one or both of the following:

(1)  A response that fully satisfies all outstanding requirements;

(2)  An appeal to the Trademark Trial and Appeal Board, with the appeal fee of $100 per class.

37 C.F.R. §2.64(a); TMEP §714.04; *see* 37 C.F.R. §2.6(a)(18); TBMP ch. 1200.

In certain rare circumstances, an applicant may respond by filing a petition to the Director pursuant to 37 C.F.R. §2.63(b)(2) to review procedural issues. 37 C.F.R. §2.64(a); TMEP §714.04; *see* 37 C.F.R. §2.146(b); TBMP §1201.05; TMEP §1704 (explaining petitionable matters). The petition fee is $100. 37 C.F.R. §2.6(a)(15).

/Catherine L. Roehl/
Trademark Examining Attorney
Law Office 105
(571) 272-6120
Catherine.Roehl@USPTO.GOV

**TO RESPOND TO THIS LETTER:** Go to http://www.uspto.gov/trademarks/teas/response_forms.jsp. Please wait 48-72 hours from the issue/mailing date before using the Trademark Electronic Application System (TEAS), to allow for necessary system updates of the application. For *technical* assistance with online forms, e-mail TEAS@uspto.gov. For questions about the Office action itself, please contact the assigned trademark examining attorney. **E-mail communications will not be accepted as responses to Office actions; therefore, do not respond to this Office action by e-mail.**

**All informal e-mail communications relevant to this application will be placed in the official application record.**

**WHO MUST SIGN THE RESPONSE:** It must be personally signed by an individual applicant or someone with legal authority to bind an applicant (i.e., a corporate officer, a general partner, all joint applicants). If an applicant is represented by an attorney, the attorney must sign the response.

**PERIODICALLY CHECK THE STATUS OF THE APPLICATION:** To ensure that applicant does not miss crucial deadlines or official notices, check the status of the application every three to four months using the Trademark Status and Document Retrieval (TSDR) system at http://tsdr.uspto.gov/. Please keep a copy of the TSDR status screen. If the status shows no change for more than six months, contact the Trademark Assistance Center by e-mail at TrademarkAssistanceCenter@uspto.gov or call 1-800-786-9199. For more information on checking status, see http://www.uspto.gov/trademarks/process/status/.

**TO UPDATE CORRESPONDENCE/E-MAIL ADDRESS:** Use the TEAS form at http://www.uspto.gov/trademarks/teas/correspondence.jsp.