# EXHIBIT 12

**DIREÇÃO DE MARCAS E PATENTES**

**DEPARTAMENTO DE MARCAS, DESENHOS E MODELOS**

**Recusa**

| | |
|---|---|
| **Concordo,**<br>**O Chefe do Departamento**<br><br>**André Robalo** | **Concordo e indefiro**<br><br>**Por subdelegação de competências**<br>**do Conselho Diretivo**<br><br><br>**Ana Margarida Bandeira**<br>**Diretora** |

**RELATÓRIO DE EXAME**

**REGISTO DE MARCA NACIONAL N.º 578171**

**REPRODUÇÃO DO SINAL**

LEHMAN BROTHERS ASSET MANAGEMENT

No âmbito do presente pedido de registo de marca nacional, veio deduzir oposição a sociedade "BARCLAYS CAPITAL INC" invocando, nos termos do artigo 245.º do Código da Propriedade Industrial, de ora em diante designado como CPI, a imitação dos seguintes direitos prioritários:

A marca da União Europeia n.º 00008326 -"LEHMAN BROTHERS", requerida a 1 de abril de 1996 e concedida a 30 de setembro de 1998, que assinala, na classe 36.ª da Classificação Internacional de Nice - *Serviços financeiros; serviços de corretagem de títulos; serviços de consultadoria em investimentos; serviços de banca de investimentos; serviços de banca comercial;*

A marca da União Europeia n.º 013727649 -"LEHMAN BROTHERS", requerida a 10 de fevereiro de 2015 e concedida a 4 de junho de 2015, que assinala, na classe 16.ª da Classificação Internacional de Nice – *Publicações relacionadas com serviços financeiros, especificamente carteiras de ativos e atividades de*

negociação, e na classe 36.ª, da mesma tabela classificativa - *Serviços financeiros, especificamente execução de contratos de derivados, atividades financeiras, incluindo execução de transações em mercados relevantes, execução da negociação de participações, negociação de coberturas baseadas em derivados, negociação de ativos financeiros e administração de carteiras de ativos financeiros, avaliação, proteção e negociação de ativos financeiros e atividades de custódia relacionadas com títulos.*

A reclamante advoga que *(…) A ampla divulgação e prestígio das marcas* **LEHMAN BROTHERS** *no mundo financeiro é de tal forma evidente que pode ser considerada um verdadeiro facto notório, dispensando prova e até alegação, ao abrigo do art. 412.º do Código de Processo Civil.* E acrescenta que *(…) em 2008, a Lehman Brothers se tornara o quarto maior banco de investimento nos Estados Unidos, e era um dos maiores operadores nos mercados financeiros Europeus, prestando uma miríade de serviços financeiros na União Europeia sob as marcas* **LEHMAN BROTHERS***.*

A oponente, pleiteia, ainda, que, *(…) A Lehman Brothers, e as marcas da Reclamante com o mesmo nome, continuam a ser bem conhecidas do meio financeiro e do público em geral, e a gozar de enorme notoriedade.*

Por último, a reclamante considera que a eventual concessão do registo da marca registanda proporcionaria, independentemente da intenção da requerente, a prática de concorrência desleal conforme o n.º 1 do artigo 317.º do CPI.

A requisitante, depois de previamente notificada, não veio refutar os argumentos apresentados pela entidade reclamante.

Sintetizados os argumentos aduzidos pela oponente, cabe referir, antes de mais, que a marca é um sinal distintivo do comércio que se destina a identificar e a diferenciar os produtos ou os serviços oferecidos no mercado, distinguindo

aqueles que pertencem a uma determinada empresa dos de outras empresas, ao mesmo tempo que permite ao consumidor reportá-los à sua verdadeira origem empresarial.

Assim, nos termos da alínea a) do n.º 1 do artigo 239.º do CPI, será recusado o registo de uma marca que constitua imitação de outra.

De acordo com o estatuído no artigo 245.º do CPI, um sinal representa uma imitação de marca registada quando, cumulativamente:

  -a marca registada tiver prioridade;

  -assinale produtos e/ou serviços idênticos ou afins dos produtos e/ou serviços relativamente aos quais a marca prioritária se encontra protegida;

  -apresente tal semelhança gráfica, fonética, figurativa ou outra, que induza facilmente o consumidor em erro ou confusão, ou que compreenda um risco de associação com marca anteriormente registada, de forma que o consumidor não as possa distinguir senão depois de exame atento ou confronto.

Assim como, nos termos do artigo 242.º do CPI, será recusado o registo de uma marca se, ainda que destinada a produtos e serviços sem identidade ou afinidade, constituir tradução, ou for igual ou semelhante, a uma marca anterior que goze de prestígio em Portugal ou na Comunidade Europeia, se for comunitária, e sempre que o uso da marca posterior procure tirar partido indevido do carácter distintivo ou do prestígio da marca, ou posso prejudicá-los.

Igualmente, nos termos do disposto no artigo 241.º do CPI, será recusado o registo de marca que constitua reprodução, imitação ou tradução de marca notoriamente conhecida em Portugal, se for aplicada em produtos ou serviços idênticos ou semelhantes e com ela possa confundir-se.

Mas, também, a mera possibilidade do sinal registando poder favorecer situações de concorrência desleal nos termos definidos no artigo 317.º do CPI,

quer seja de forma intencional ou não, também constitui fundamento de recusa nos termos da alínea e) do n.º 1 do artigo 239.º do CPI.

Ora, no caso em análise, os sinais em confronto são:

|  Sinal Registando | Sinais Registados |
| --- | --- |
| LEHMAN BROTHERS ASSET MANAGEMENT | LEHMAN BROTHERS<br>Marca da União Europeia n.º 00008326 |
|  | LEHMAN BROTHERS<br>Marca da União Europeia n.º 13727649 |

Antes de mais, no que concerne à argumentação da reclamante relativa à notoriedade e ao prestígio dos direitos "LEHMAN BROTHERS" não podemos deixar de mencionar o que nos diz a anotação IV do artigo 241.º e do artigo 242.º - *Marcas Notórias e Marcas de Prestígio* do Código da Propriedade Industrial – Anotado - Páginas 471 e 473 – EDIÇÕES ALMEDINA. S. A., Janeiro, 2010 – (...), ***a notoriedade da marca tem que ser demonstrada por quem a invoque****, podendo, nomeadamente, para este efeito, ser apresentadas sondagens, estudos de mercado, evidências do volume de vendas, da posição alcançada no mercado, da publicidade de que o sinal tenha sido objecto e decisões judiciais em que ao mesmo já tenha sido reconhecida notoriedade.* (...) o ***prestígio da marca tem que ser demonstrado por quem o invoque****, podendo, nomeadamente, para este efeito ser apresentadas sondagens, estudos de mercado, evidências do volume de vendas, da posição alcançada no mercado, da publicidade de que o sinal tenha sido objecto e decisões judiciais em que ao mesmo já tenha sido reconhecido prestígio.* (negrito e sublinhado nossos).

Pelo exposto, a ora reclamante tinha a incumbência de carrear para o seu articulado de reclamação os documentos probatórios inerentes aos regimes previstos nos artigos 241.º e 242.º do CPI.

Face à ausência de prova documental probatória não nos encontramos legalmente habilitados para nos pronunciarmos sobre o eventual prestígio e notoriedade das marcas registadas a favor da reclamante.

Efetuada esta ressalva, e depois de apreciados os argumentos apresentados pela sociedade oponente, verifica-se que:

Os direitos que a reclamante invoca, tendo sido concedidos nos anos de 1998 e 2015, gozam de prioridade relativamente ao presente pedido de registo, apresentado no dia 23 de fevereiro de 2017.

Considerando que a legislação aplicável não descreve o conceito de afinidade entre produtos e serviços, a jurisprudência e a doutrina têm vindo a determinar alguns critérios para verificação desta conexão. Desta forma, para aferir da afinidade entre produtos e serviços é necessário, entre outros critérios, determinar se os mesmos são concorrenciais, têm a mesma utilidade e fim, ou se são complementares, acessórios ou substituíveis.

A ideia de afinidade está assim ligada à ideia de proximidade, pelo que, para determinar se existe afinidade entre produtos e serviços, não se deve atender propriamente à sua natureza intrínseca, mas antes aos respetivos destinos ou aplicações e possibilidade de confusão e de concorrência no mercado.

No caso em apreço, entre os serviços que se pretende identificar com a marca em estudo na classe 36.ª do Acordo de Nice Relativo à Classificação Internacional dos Produtos e Serviços *(Serviços de financiamento; gestão de fundos de investimento; investimento de fundos; investimento de capital;*

*serviços de consultadoria em matéria de investimento em imóveis; angariação de capital; gestão financeira e planeamento; corretagem; gerenciamento de portfólio; assuntos imobiliários; avaliação de imóveis)* e os produtos e serviços relativamente aos quais as marcas prioritárias, mencionadas e descritas anteriormente, se encontram registadas, estabelece-se, em nosso entender, uma relação de identidade e afinidade na medida em que, estamos perante produtos e serviços que serão disponibilizados por empresas do mesmo setor de atividade e têm o mesmo público relevante. Acresce que, os produtos e serviços registados e os serviços peticionados destinam-se a finalidades complementares, podendo, assim, encontrar-se em concorrência.

De salientar que,  a questão da afinidade entre os produtos e serviços em litígio e a possibilidade de confusão entre as marcas em estudo é agravada pelo facto de o sinal registando reproduzir na íntegra as marcas registadas o que, salvo melhor opinião, poderá induzir o consumidor em confusão. A este respeito, refere o TJUE no seu acórdão de 29.09.1998, no Processo C-39/97 ("Canon"), que "***a apreciação global do risco de confusão implica uma certa interdependência entre os factores tomados em conta, nomeadamente a semelhança das marcas e dos produtos ou serviços designados. Assim, um reduzido grau de semelhança entre os produtos ou serviços designados pode ser compensado por um elevado grau de semelhança entre as marcas, e inversamente***".

Pelo exposto, consideramos que a modificação introduzida, isto é, o aditamento da expressão "ASSET MANAGEMENT" (em português, gestão de ativos) na marca registanda não é globalmente significativa e nem afasta a alegada similitude detetada entre os sinais uma vez que, perante a reprodução integral das marcas registadas o consumidor médio irá naturalmente estabelecer uma associação espontânea, mas errónea entre os sinais em demanda, por acreditar que têm a mesma origem empresarial ou que algum tipo de relação existe entre as respetivas entidades.

Por último, cremos que a coexistência dos sinais em conflito no mercado favoreceria, ainda que sem intenção da ora requerente, a prática de atos de concorrência desleal suscetíveis de prejudicar a empresa reclamante conforme a alínea e) do n.º 1 do artigo 239.º do CPI e a alínea a) do n.º 1 do artigo 317.º do mesmo diploma legal.

Em face do exposto, reputando-se a reclamação procedente, propõe-se o indeferimento do presente pedido de registo, nos termos do n.º 4 do artigo 237.º do CPI e com os fundamentos acima indicados.

Instituto Nacional da Propriedade Industrial, 5 de setembro de 2017

O Técnico, Sandra Silva

Unknown validity
[icon]
ANDRÉ FILIPE DO
ESPÍRITO SANTO
ROBALO
09.05.2017

**TRADEMARK AND PATENT MANAGEMENT**

**DEPARTMENT OF TRADEMARKS, DESIGNS AND MODELS**

<u>**Rejection**</u>

**Agree,**                                    **Agree and reject**

**Head of Department**                **By subdelegation of duties from the**
**André Robalo**                          **Board of Directors**

                                         **Ana Margarida Bandeira**
                                         **Director**

**EXAM REPORT**

**REGISTRATION OF NATIONAL TRADEMARK No. 578171**

**SIGN REPRODUCTION**

LEHMAN BROTHERS ASSET MANAGEMENT

Under this request for registration of a national trademark, the corporation "BARCLAYS CAPITAL INC" has lodged an objection, invoking the following pre-emptive rights under the provisions of article 245 of the Industrial Property Code ("IPC"):

European Union Trademark No. 00008326, - "LEHMAN BROTHERS," requested on April 1, 1996 and granted on September 30, 1998, under class 36 of the International (Nice) Classification - *Financial services; securities brokerage services; investment consultancy services; investment bank services; commercial bank services;*

European Union Trademark No. 013727649 - "LEHMAN BROTHERS," requested on February 10, 2015 and granted on June 4, 2015, under class 16 of the International (Nice) Classification - *Publications related to financial services, specifically asset and business activity portfolios,* and class 36, of the same classification table - *Financial services, specifically the performance of derivative contracts, financial activities, including transactions in relevant markets, negotiation of stakes, negotiation of derivative-based coverage, negotiation of financial assets and management of financial*

*asset portfolios, appraisal, protection and negotiation of financial assets and escrow activities related to securities.*

The plaintiff argues that *(...) The widespread disclosure and prestige of the **LEHMAN BROTHERS** trademarks in the financial world is so evident that it can be considered a well-known fact, thus dispensing with any requirement for proof or even argument, under art. 412 of the Code of Civil Procedure.* The plaintiff also states that *(...) in 2008, Lehman Brothers became the fourth largest investment bank in the United States, and it was one of the largest operators in the European financial markets, providing a myriad of financial services within the European Union under the **LEHMAN BROTHERS** trademarks.*

It also claims that *(...) Lehman Brothers, and the Plaintiff's trademarks under the same name are still well known within the financial market and by the general public, and they enjoy significant notoriety.*

Lastly, the plaintiff believes that concession of registration of the applicant trademark would, regardless of the applicant's intentions, lead to unfair competition, pursuant to § 1 of article 317 of the IPC.

After being duly notified, the applicant failed to refute any of the arguments put forward by the plaintiff.

With the establishment of the arguments put forward by the plaintiff, it is worth stating up front that trademarks are distinctive signs denoting commercial activities, intended to identify and differentiate products within the market, distinguishing those that belong to a certain company from those of other companies, whilst at the same time enabling consumers to link them to their corporate origins.

Thus, under the terms of item a), § 1, of article 239 of the IPC, the registration of a trademark that imitates another must be rejected.

Pursuant to the provisions of article 245 of the IPC, a sign constitutes an imitation of a registered trademark when, cumulatively:

- the already registered trademark has priority;

- it involves identical or similar products and/or services to the products and/or services protected by the already-protected priority trademark;

- it presents graphic, phonetic, figurative or other similarities that can easily induce consumers to error or confusion, or that comprise a risk of association with the previously registered trademark, to a point that consumers are unable to distinguish them, other than through careful examination or face-to-face comparison.

Accordingly, under the terms of article 242 of the IPC, the registration of one trademark will be rejected in the event that it constitutes a translation or it is equal or similar to a previous trademark that enjoys prestige in Portugal or the European Community (if marketed throughout the Community), even if it is intended for products and services that are not identified with or are dissimilar to those marketed under the previous trademark, and whenever the use of the subsequent trademark seeks to take improper advantage of the distinctive character or prestige of the already-registered trademark, or if it may undermine the latter.

Similarly, under the terms of article 241 of the IPC, registration of any trademark that constitutes a reproduction, imitation or translation of a well-known trademark in Portugal will be rejected, if it is applied to identical or similar products or services and if it can be confused with them.

Furthermore, the mere possibility that the applicant trademark may lead to unfair competition, under the terms of the provisions of article 317 of the IPC, regardless of intention, also constitutes grounds for rejection, pursuant to item e), § 1, of article 239 of the IPC.

Thus, in the case in question, the conflicting signs are:

| Sign pending registration | Already-registered signs |
|---|---|
| LEHMAN BROTHERS ASSET MANAGEMENT | LEHMAN BROTHERS |
| | European Union Trademark No. 00008326 |
| | LEHMAN BROTHERS |
| | European Union Trademark No. 13727649 |

First of all, with regard to the plaintiff's argument pertaining to the notoriety and prestige of the "LEHMAN BROTHERS" rights, we cannot fail to mention point IV of article 241 and article 242 - *Well-Known Trademarks and Prestigious Trademarks* of the Industrial Property Code - With Footnotes - Pages 471 and 473 - EDIÇÕES ALMEDINA. S. A., January 2010 - (...), ***the notoriety of a trademark has to be demonstrated by whoever invokes it*** *and, for this purpose, the latter may present surveys, market studies, evidence of sales volumes, the position attained within the market and public notifications that the sign has been subject to and court rulings that establish its renowned notoriety.* (...) ***the prestige of a trademark has to be demonstrated by whoever invokes it*** *and, for this purpose, the latter may present surveys, market studies, evidence of sales volumes, the position attained within the market, public notifications that the sign has been subject to and court rulings that establish its renowned prestige.* (bold face and underlined sections added by us).

With regard to the foregoing, the plaintiff herein had the responsibility to include documentary proof in its claim, inherent to the provisions of articles 241 and 242 of the IPC.

In light of the lack of any such documentary proof, we have no legal grounds to decide on the potential prestige and notoriety of the trademarks registered in the name of the plaintiff.

Having established this caveat, and after having appraised the arguments presented by the opposing corporation, we can observe that:

The rights that the plaintiff invokes, having been granted in 1998 and 2015, have priority over this registration request, filed on February 23, 2017.

Whereas applicable legislation does not stipulate the concept of similarity between products and services, the legal framework and doctrine have determined several criteria for ascertaining this connection. Accordingly, in order to gauge the similarity between products and services, it is necessary, among other criteria, to determine whether they compete with each other, whether they have the same utility and purpose, or whether they are complementary, accessory or interchangeable.

The idea of similarity is thus linked to the idea of proximity and, accordingly, in order to ascertain whether there is any similarity between products and services, we should not consider their intrinsic natures, but rather their respective purposes or applications and the potential for confusion or competition within the market.

In the case in question, among the services that are intended to be identified with the trademark under class 36 of the International (Nice) Classification of Goods and Services *(Financial services; management of investment funds; investment funds; capital investment;*

*real estate investment consultancy services; raising of capital; financial management and planning; brokerage; portfolio management; real estate matters; real estate property appraisal)* and products and services with regard to which the priority trademarks, previously listed and described, are registered, establishes, in our understanding, a relationship of identity and similarity to the extent that we are considering products and services that will be provided by companies in the same area of activity, to the same relevant public. It should also be observed that the registered products and services and the applicant services are intended for similar purposes, and thus may be considered competitors.

It is worth emphasizing that the issue of similarity between the products and services that are subject to this litigation and the potential for confusion between the trademarks in question is aggravated by the fact that the sign to be registered fully reproduces the already registered trademarks which, to the best of our knowledge and belief, may induce confusion among consumers. Accordingly, in an appellate decision handed down on 09.29.1998, under Process C-39/97 ("Canon"), the CJEU stated that **"*the global appreciation of the risk of confusion implies a certain level of interdependence between the facts taken into account, especially the similarity between the trademarks and the respective products or services. Thus, a reduced degree of similarity between the respective products or services may be compensated by a high degree of similarity between trademarks, and vice-versa.*"**

In light of the foregoing, we consider that the modification presented, i.e., the use of the English expression "ASSET MANAGEMENT" in the trademark applying for registration is not globally significant, nor does it preclude the alleged similarity between the signs, since, with the full reproduction of the registered trademarks, the average consumer will naturally establish a spontaneous, but erroneous, association between the signs in question, believing that they belong to the same corporate entity or that there is some kind of relationship between the respective entities.

Lastly, we believe that the co-existence of conflicting signs in the market would favor, regardless of the applicant's intention, unfair competition that could potentially undermine the plaintiff, pursuant to item e), § 1, of article 239 of the IPC and item a), § 1, of article 317 of the same law.

In light of the foregoing, we grant the plaintiff's claim and are in favor or rejection of this registration request, pursuant to § 4 of article 237 of the IPC, on the aforementioned grounds.

National Industrial Property Institute, September 5, 2017

Technician, Sandra Silva

# TRANSPERFECT

| | |
|---|---|
| **DATE OF TRANSLATION:** | 30-Sep-20 |
| **ELECTRONIC FILE NAME:** | Portugal Decision - LEHMAN BROTHERS ASSET MANAGEMENT |
| **SOURCE LANGUAGE:** | Portuguese |
| **TARGET LANGUAGE:** | English |
| **TRANSPERFECT JOB ID:** | US0806874 |

TransPerfect is globally certified under the standards ISO 9001:2015 and ISO 17100:2015. This Translation Certificate confirms the included documents have been completed in conformance with the Quality Management System documented in its ISO process maps and are, to the best knowledge and belief of all TransPerfect employees engaged on the project, full and accurate translations of the source material.

TCert v. 2.0

**DIREÇÃO DE MARCAS E PATENTES**

**DEPARTAMENTO DE MARCAS, DESENHOS E MODELOS**

**Recusa**

**Concordo,**
**O Chefe do Departamento**

**André Robalo**

**Concordo e indefiro**

**Por subdelegação de competências**
**do Conselho Diretivo**


**Ana Margarida Bandeira**
**Diretora**


**RELATÓRIO DE EXAME**

**REGISTO DE MARCA NACIONAL N.º 578166**

**REPRODUÇÃO DO SINAL**

LEHMAN BROTHERS ENCORE

No âmbito do presente pedido de registo de marca nacional, veio deduzir oposição a sociedade "BARCLAYS CAPITAL INC" invocando, nos termos do artigo 245.º do Código da Propriedade Industrial, de ora em diante designado como CPI, a imitação dos seguintes direitos prioritários:

A marca da União Europeia n.º 00008326 -"LEHMAN BROTHERS", requerida a 1 de abril de 1996 e concedida a 30 de setembro de 1998, que assinala, na classe 36.ª da Classificação Internacional de Nice - *Serviços financeiros; serviços de corretagem de títulos; serviços de consultadoria em investimentos; serviços de banca de investimentos; serviços de banca comercial;*

A marca da União Europeia n.º 013727649 -"LEHMAN BROTHERS", requerida a 10 de fevereiro de 2015 e concedida a 4 de junho de 2015, que assinala, na classe 16.ª da Classificação Internacional de Nice – *Publicações relacionadas com serviços financeiros, especificamente carteiras de ativos e atividades de*

*negociação*, e na classe 36.ª, da mesma tabela classificativa - *Serviços financeiros, especificamente execução de contratos de derivados, atividades financeiras, incluindo execução de transações em mercados relevantes, execução da negociação de participações, negociação de coberturas baseadas em derivados, negociação de ativos financeiros e administração de carteiras de ativos financeiros, avaliação, proteção e negociação de ativos financeiros e atividades de custódia relacionadas com títulos.*

A reclamante advoga que *(…) A ampla divulgação e prestígio das marcas* **LEHMAN BROTHERS** *no mundo financeiro é de tal forma evidente que pode ser considerada um verdadeiro facto notório, dispensando prova e até alegação, ao abrigo do art. 412.º do Código de Processo Civil.* E acrescenta que *(…) em 2008, a Lehman Brothers se tornara o quarto maior banco de investimento nos Estados Unidos, e era um dos maiores operadores nos mercados financeiros Europeus, prestando uma miríade de serviços financeiros na União Europeia sob as marcas* **LEHMAN BROTHERS**.

A oponente, pleiteia, ainda, que, *(…) A Lehman Brothers, e as marcas da Reclamante com o mesmo nome, continuam a ser bem conhecidas do meio financeiro e do público em geral, e a gozar de enorme notoriedade.*

Por último, a reclamante considera que a eventual concessão do registo da marca registanda proporcionaria, independentemente da intenção da requerente, a prática de concorrência desleal conforme o n.º 1 do artigo 317.º do CPI.

A requisitante, depois de previamente notificada, não veio refutar os argumentos apresentados pela entidade reclamante.

Sintetizados os argumentos aduzidos pela oponente, cabe referir, antes de mais, que a marca é um sinal distintivo do comércio que se destina a identificar e a diferenciar os produtos ou os serviços oferecidos no mercado, distinguindo

aqueles que pertencem a uma determinada empresa dos de outras empresas, ao mesmo tempo que permite ao consumidor reportá-los à sua verdadeira origem empresarial.

Assim, nos termos da alínea a) do n.º 1 do artigo 239.º do CPI, será recusado o registo de uma marca que constitua imitação de outra.

De acordo com o estatuído no artigo 245.º do CPI, um sinal representa uma imitação de marca registada quando, cumulativamente:

    -a marca registada tiver prioridade;

    -assinale produtos e/ou serviços idênticos ou afins dos produtos e/ou serviços relativamente aos quais a marca prioritária se encontra protegida;

    -apresente tal semelhança gráfica, fonética, figurativa ou outra, que induza facilmente o consumidor em erro ou confusão, ou que compreenda um risco de associação com marca anteriormente registada, de forma que o consumidor não as possa distinguir senão depois de exame atento ou confronto.

Assim como, nos termos do artigo 242.º do CPI, será recusado o registo de uma marca se, ainda que destinada a produtos e serviços sem identidade ou afinidade, constituir tradução, ou for igual ou semelhante, a uma marca anterior que goze de prestígio em Portugal ou na Comunidade Europeia, se for comunitária, e sempre que o uso da marca posterior procure tirar partido indevido do caráter distintivo ou do prestígio da marca, ou posso prejudicá-los.

Igualmente, nos termos do disposto no artigo 241.º do CPI, será recusado o registo de marca que constitua reprodução, imitação ou tradução de marca notoriamente conhecida em Portugal, se for aplicada em produtos ou serviços idênticos ou semelhantes e com ela possa confundir-se.

Mas, também, a mera possibilidade do sinal registando poder favorecer situações de concorrência desleal nos termos definidos no artigo 317.º do CPI,

quer seja de forma intencional ou não, também constitui fundamento de recusa nos termos da alínea e) do n.º 1 do artigo 239.º do CPI.

Ora, no caso em análise, os sinais em confronto são:

Sinal Registando

Sinais Registados

LEHMAN BROTHERS ENCORE

LEHMAN BROTHERS

Marca da União Europeia n.º 00008326

LEHMAN BROTHERS

Marca da União Europeia n.º 13727649

Antes de mais, no que concerne à argumentação da reclamante relativa à notoriedade e ao prestígio dos direitos "LEHMAN BROTHERS" não podemos deixar de mencionar o que nos diz a anotação IV do artigo 241.º e do artigo 242.º - *Marcas Notórias e Marcas de Prestígio* do Código da Propriedade Industrial – Anotado - Páginas 471 e 473  – EDIÇÕES ALMEDINA. S. A., Janeiro, 2010 – (...), ***a notoriedade da marca tem que ser demonstrada por quem a invoque***, *podendo, nomeadamente, para este efeito, ser apresentadas sondagens, estudos de mercado, evidências do volume de vendas, da posição alcançada no mercado, da publicidade de que o sinal tenha sido objecto e decisões judiciais em que ao mesmo já tenha sido reconhecida notoriedade.* (...) o ***prestígio da marca tem que ser demonstrado por quem o invoque***, *podendo, nomeadamente, para este efeito ser apresentadas sondagens, estudos de mercado, evidências do volume de vendas, da posição alcançada no mercado, da publicidade de que o sinal tenha sido objecto e decisões judiciais em que ao mesmo já tenha sido reconhecido prestígio.* (negrito e sublinhado nossos).

Pelo exposto, a ora reclamante tinha a incumbência de carrear para o seu articulado de reclamação os documentos probatórios inerentes aos regimes previstos nos artigos 241.º e 242.º do CPI.

Face à ausência de prova documental probatória não nos encontramos legalmente habilitados para nos pronunciarmos sobre o eventual prestígio e notoriedade das marcas registadas a favor da reclamante.

Efetuada esta ressalva, e depois de apreciados os argumentos apresentados pela sociedade oponente, verifica-se que:

Os direitos que a reclamante invoca, tendo sido concedidos nos anos de 1998 e 2015, gozam de prioridade relativamente ao presente pedido de registo, apresentado no dia 23 de fevereiro de 2017.

Considerando que a legislação aplicável não descreve o conceito de afinidade entre produtos e serviços, a jurisprudência e a doutrina têm vindo a determinar alguns critérios para verificação desta conexão. Desta forma, para aferir da afinidade entre produtos e serviços é necessário, entre outros critérios, determinar se os mesmos são concorrenciais, têm a mesma utilidade e fim, ou se são complementares, acessórios ou substituíveis.

A ideia de afinidade está assim ligada à ideia de proximidade, pelo que, para determinar se existe afinidade entre produtos e serviços, não se deve atender propriamente à sua natureza intrínseca, mas antes aos respetivos destinos ou aplicações e possibilidade de confusão e de concorrência no mercado.

No caso em apreço, entre os serviços que se pretende identificar com a marca em estudo na classe 41.ª do Acordo de Nice Relativo à Classificação Internacional dos Produtos e Serviços *(educação, ensino e formação; serviços de entretenimento; apresentação de filmes; distribuição de filmes; fornecimento*

*de filmes e programas televisivos não descarregáveis através de um serviço de aluguer de vídeo; organização e realização de workshops e seminários; organização e direcção de congressos; organização de exposições para fins culturais e educativos; publicação de livros eletrônicos e revistas on-line)* e os produtos e serviços relativamente aos quais as marcas prioritárias, mencionadas e descritas anteriormente, se encontram registadas, estabelece-se, em nosso entender, uma relação de afinidade na medida em que, por exemplo o teor de um workshop ou de uma publicação eletrónica poderá versar sobre serviços financeiros, ou seja, os serviços e produtos em contenda destinam-se a finalidades complementares, podendo, assim, encontrar-se em concorrência.

Acresce mencionar que, a questão da afinidade entre os produtos e serviços em litígio e a possibilidade de confusão entre as marcas em estudo é agravada pelo facto de o sinal registando reproduzir na íntegra as marcas registadas o que, salvo melhor opinião, poderá induzir o consumidor em confusão. A este respeito, refere o TJUE no seu acórdão de 29.09.1998, no Processo C-39/97 ("Canon"), que "*a apreciação global do risco de confusão implica uma certa interdependência entre os factores tomados em conta, nomeadamente a semelhança das marcas e dos produtos ou serviços designados. Assim, um reduzido grau de semelhança entre os produtos ou serviços designados pode ser compensado por um elevado grau de semelhança entre as marcas, e inversamente*".

Pelo exposto, consideramos que a modificação introduzida, isto é, o aditamento do vocábulo francês "ENCORE" (em português, novamente) na marca registanda não é globalmente significativa e nem afasta a alegada similitude detetada entre os sinais uma vez que, perante a reprodução integral das marcas registadas o consumidor médio irá naturalmente estabelecer uma associação espontânea, mas errónea entre os sinais em demanda, por

acreditar que têm a mesma origem empresarial ou que algum tipo de relação existe entre as respetivas entidades.

Por último, cremos que a coexistência dos sinais em conflito no mercado favoreceria, ainda que sem intenção da ora requerente, a prática de atos de concorrência desleal suscetíveis de prejudicar a empresa reclamante conforme a alínea e) do n.º 1 do artigo 239.º do CPI e a alínea a) do n.º 1 do artigo 317.º do mesmo diploma legal.

Em face do exposto, reputando-se a reclamação procedente, propõe-se o indeferimento do presente pedido de registo, nos termos do n.º 4 do artigo 237.º do CPI e com os fundamentos acima indicados.

Instituto Nacional da Propriedade Industrial, 4 de setembro de 2017

O Técnico, Sandra Silva

Unknown validity
[icon]
ANDRÉ FILIPE DO
ESPÍRITO SANTO
ROBALO
09.04.2017

## TRADEMARK AND PATENT MANAGEMENT

## DEPARTMENT OF TRADEMARKS, DESIGNS AND MODELS

### Rejection

**Agree,**                                      **Agree and reject**

**Head of Department**                          **By subdelegation of duties from the**
**André Robalo**                                **Board of Directors**

                                                **Ana Margarida Bandeira**
                                                **Director**

## EXAM REPORT

## REGISTRATION OF NATIONAL TRADEMARK No. 578166

## SIGN REPRODUCTION

LEHMAN BROTHERS ENCORE

Under this request for registration of a national trademark, the corporation "BARCLAYS CAPITAL INC" has lodged an objection, invoking the following pre-emptive rights under the provisions of article 245 of the Industrial Property Code ("IPC"):

European Union Trademark No. 00008326, - "LEHMAN BROTHERS," requested on April 1, 1996 and granted on September 30, 1998, under class 36 of the International (Nice) Classification - *Financial services; securities brokerage services; investment consultancy services; investment bank services; commercial bank services;*

European Union Trademark No. 013727649 - "LEHMAN BROTHERS," requested on February 10, 2015 and granted on June 4, 2015, under class 16 of the International (Nice) Classification - *Publications related to financial services, specifically asset and business activity portfolios,* and class 36, of the same classification table - *Financial services, specifically the performance of derivative contracts, financial activities, including transactions in relevant markets, negotiation of stakes, negotiation of derivative-based coverage, negotiation of financial assets and management of financial asset portfolios, appraisal, protection and negotiation of financial assets and escrow activities related to securities.*

The plaintiff argues that *(...) The widespread disclosure and prestige of the* **LEHMAN BROTHERS** *trademarks in the financial world is so evident that it can be considered a well-known fact, thus dispensing with any requirement for proof or even argument, under art. 412 of the Code of Civil Procedure.* The plaintiff also states that *(...) in 2008, Lehman Brothers became the fourth largest investment bank in the United States, and it was one of the largest operators in the European financial markets, providing a myriad of financial services within the European Union under the* **LEHMAN BROTHERS** *trademarks*.

It also claims that *(...) Lehman Brothers, and the Plaintiff's trademarks under the same name are still well known within the financial market and by the general public, and they enjoy significant notoriety.*

Lastly, the plaintiff believes that concession of registration of the applicant trademark would, regardless of the applicant's intentions, lead to unfair competition, pursuant to § 1 of article 317 of the IPC.

After being duly notified, the applicant failed to refute any of the arguments put forward by the plaintiff.

With the establishment of the arguments put forward by the plaintiff, it is worth stating up front that trademarks are distinctive signs denoting commercial activities, intended to identify and differentiate products within the market, distinguishing those that belong to a certain company from those of other companies, whilst at the same time enabling consumers to link them to their corporate origins.

Thus, under the terms of item a), § 1, of article 239 of the IPC, the registration of a trademark that imitates another must be rejected.

Pursuant to the provisions of article 245 of the IPC, a sign constitutes an imitation of a registered trademark when, cumulatively:

- the already registered trademark has priority;

- it involves identical or similar products and/or services to the products and/or services protected by the already-protected priority trademark;

- it presents graphic, phonetic, figurative or other similarities that can easily induce consumers to error or confusion, or that comprise a risk of association with the previously registered trademark, to a point that consumers are unable to distinguish them, other than through careful examination or face-to-face comparison.

Accordingly, under the terms of article 242 of the IPC, the registration of one trademark will be rejected in the event that it constitutes a translation or it is equal or similar to a previous trademark that enjoys prestige in Portugal or the European Community (if marketed throughout the Community), even if it is intended for products and services that are not identified with or are dissimilar to those marketed under the previous trademark, and whenever the use of the subsequent trademark seeks to take improper advantage of the distinctive character or prestige of the already-registered trademark, or if it may undermine the latter.

Similarly, under the terms of article 241 of the IPC, registration of any trademark that constitutes a reproduction, imitation or translation of a well-known trademark in Portugal will be rejected, if it is applied to identical or similar products or services and if it can be confused with them.

Furthermore, the mere possibility that the applicant trademark may lead to unfair competition, under the terms of the provisions of article 317 of the IPC, regardless of intention, also constitutes grounds for rejection, pursuant to item e), § 1, of article 239 of the IPC.

Thus, in the case in question, the conflicting signs are:

| Sign pending registration | Already-registered signs |
|---|---|
| LEHMAN BROTHERS ENCORE | LEHMAN BROTHERS |
| | European Union Trademark No. 00008326 |
| | LEHMAN BROTHERS |
| | European Union Trademark No. 13727649 |

First of all, with regard to the plaintiff's argument pertaining to the notoriety and prestige of the "LEHMAN BROTHERS" rights, we cannot fail to mention point IV of article 241 and article 242 - *Well-Known Trademarks and Prestigious Trademarks* of the Industrial Property Code - With Footnotes - Pages 471 and 473 - EDIÇÕES ALMEDINA. S. A., January 2010 - (...), ***the notoriety of a trademark has to be demonstrated by whoever invokes it*** *and, for this purpose, the latter may present surveys, market studies, evidence of sales volumes, the position attained within the market and public notifications that the sign has been subject to and court rulings that establish its renowned notoriety.* (...) ***the prestige of a trademark has to be demonstrated by whoever invokes it*** *and, for this purpose, the latter may present surveys, market studies, evidence of sales volumes, the position attained within the market, public notifications that the sign has been subject to and court rulings that establish its renowned prestige.* (bold face and underlined sections added by us).

With regard to the foregoing, the plaintiff herein had the responsibility to include documentary proof in its claim, inherent to the provisions of articles 241 and 242 of the IPC.

In light of the lack of any such documentary proof, we have no legal grounds to decide on the potential prestige and notoriety of the trademarks registered in the name of the plaintiff.

Having established this caveat, and after having appraised the arguments presented by the opposing corporation, we can observe that:

The rights that the plaintiff invokes, having been granted in 1998 and 2015, have priority over this registration request, filed on February 23, 2017.

Whereas applicable legislation does not stipulate the concept of similarity between products and services, the legal framework and doctrine have determined several criteria for ascertaining this connection. Accordingly, in order to gauge the similarity between products and services, it is necessary, among other criteria, to determine whether they compete with each other, whether they have the same utility and purpose, or whether they are complementary, accessory or interchangeable.

The idea of similarity is thus linked to the idea of proximity and, accordingly, in order to ascertain whether there is any similarity between products and services, we should not consider their intrinsic natures, but rather their respective purposes or applications and the potential for confusion or competition within the market.

In this case, among the services intended to be identified under the trademark in question under class 41 of the International (Nice) Classification of Goods and Services *(education, teaching and training; entertainment services; presentation of movies; distribution of movies; provision*

*of non-downloadable movies and television programs through a video rental service; organization and execution of workshops and seminars; organization and direction of congresses; organization of cultural and educational exhibitions; online publication of electronic books and magazines)* and the products and services under which the previously listed and described priority trademarks are already registered, establishes, in our understanding, a relationship of similarity to the extent that, for example, the content of a workshop or electronic publication may cover financial services, i.e., the services and products that are intended for complementary purposes, and which thus may compete with each other.

It is worth mentioning that the issue of similarity between the products and services that are subject to this litigation and the potential for confusion between the trademarks in question is aggravated by the fact that the sign to be registered fully reproduces that already registered trademarks which, to the best of our knowledge and belief, may induce confusion among consumers. Accordingly, in an appellate decision handed down on 09.29.1998, under Process C-39/97 ("Canon"), the CJEU stated that ***"the global appreciation of the risk of confusion implies a certain level of interdependence between the facts taken into account, especially the similarity between the trademarks and the respective products or services. Thus, a reduced degree of similarity between the respective products or services may be compensated by a high degree of similarity between trademarks, and vice-versa."***

In light of the foregoing, we consider that the modification presented, i.e., the use of the French term "ENCORE" in the trademark applying for registration is not globally significant, and nor does it preclude the alleged similarity between the signs, since, with the full reproduction of the registered trademarks, the average consumer will naturally establish a spontaneous, but erroneous, association between the signs in question, believing that they belong to the same corporate entity or that there is some kind of relationship between the respective entities.

Lastly, we believe that the co-existence of conflicting signs in the market would favor, regardless of the applicant's intention, unfair competition that could potentially undermine the plaintiff, pursuant to item e), § 1, of article 239 of the IPC and item a), § 1, of article 317 of the same law.

In light of the foregoing, we grant the plaintiff's claim and are in favor or rejection of this registration request, pursuant to § 4 of article 237 of the IPC, on the aforementioned grounds.

National Industrial Property Institute, September 4, 2017

Technician, Sandra Silva

**TRANSPERFECT**

**DATE OF TRANSLATION:**     30-Sep-20

**ELECTRONIC FILE NAME:**     Portugal Decision - LEHMAN BROTHERS ENCORE

**SOURCE LANGUAGE:**     Portuguese
**TARGET LANGUAGE:**     English
**TRANSPERFECT JOB ID:**     US0806874

TransPerfect is globally certified under the standards ISO 9001:2015 and ISO 17100:2015. This Translation Certificate confirms the included documents have been completed in conformance with the Quality Management System documented in its ISO process maps and are, to the best knowledge and belief of all TransPerfect employees engaged on the project, full and accurate translations of the source material.

TCert v. 2.0