# EXHIBIT 16



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------------X

BRENT SATTERFIELD,

                              Plaintiffs,

        - against –

VSTOCK TRANSFER, LLC, AMERICA 2030 CAPITAL,
LLC, (a/k/a BENTLEY ROTHSCHILD
CAPITAL LTD CORP.), BENTLEY ROTHSCHILD
CAPITAL LTD CORP., AMERICA 2030 CAPITAL,
LIMITED, BENTLEY ROTHSCHILD INVESTMENTS,
XYZ CORPORATION (1-10 fictitious names), and VAL
SKLAROV,

                              Defendants.

------------------------------------------------------------------X

Index No.: 650311/2019

**COMPLAINT**

        Plaintiff Dr. Brent Satterfield ("Satterfield" or "Plaintiff"), by and through his counsel,

Guzov, LLC, as and for his complaint against the above-named defendants, states as follows:

<u>**Introduction**</u>

        1.      This action seeks redress for an increasingly prevalent form of fraud:  a Stock

Loan Fraud.  In this form of fraud, an individual owning shares in a corporation is induced to

pledge those shares as collateral for a loan.  Rather than making the loan, however, the purported

"lender" immediately sells the pledged collateral and pockets the proceeds, leaving the

"borrower" with neither cash nor shares.

        2.      This is precisely what befell Satterfield in this case.  Defendant Val Sklarov,

together with Sklarov's corporate affiliates, defendants America 2030 Capital, LLC ("America

2030"), America 2030 Capital, Limited ("America 2030 Limited") Bentley Rothschild Capital

Ltd. Corp. ("Bentley Rothschild"), Bentley Rothschild Investments, ("BR Investments")

(collectively the "Sklarov Corporate Defendants" and with Sklarov, the "Sklarov Defendants"),

1

Case 1:20-cv-08437-LAK    Document 1-16    Filed 10/09/20    Page 3 of 21

each participated in a scheme to defraud Satterfield by convincing him to pledge over 2 million

shares in non-party Co-Diagnostics, Inc. ("Co-Diagnostics") (the "Shares") as security for a loan

of up to $3.5 million.

3.      Of course, the Sklarov Defendants never had any intention of making a loan to

Satterfield:  their only goal was to obtain control over Satterfield's Shares and sell them as soon

as they possibly could.  The Sklarov Defendants proceeded to do exactly that, and in fact began

to sell the purported "collateral" before providing Satterfield with a penny in "loan" proceeds.

All told, the Sklarov Defendants realized over $1.1 million in proceeds from sales of the shares,

while providing Satterfield with only $66,709.00 of his "loan."

4.      Satterfield brings this action for injunctive relief against defendant VStock

Transfer, LLC, the transfer agent used by the Sklarov Defendants, to obtain control over the

remainder of his Shares.  Satterfield also seeks damages based on fraud and conversion against

each of the Sklarov Defendants, as well as, in the alternative, rescission of his purported loan

agreements.

## The Parties

5.      Plaintiff Dr. Brent Satterfield is a natural person residing in Wichita County,

Texas.  He is the Chief Technology Officer of non-party Co-Diagnostics, a publicly traded

company which provides molecular diagnostic tools for use in the medical and agricultural

industries.

6.      Defendant Val Sklarov ("Sklarov") is a natural person who, on information and

belief, resides in Chicago Illinois.

7.      Defendant America 2030 is a limited liability company organized and existing

under the laws of the State of Colorado with offices located in Kennesaw, Georgia.  Defendant

2

America 2030 represents itself on LinkedIn.com as maintaining an office on 48th Street, New York, NY.

8.      On information and belief, Defendant America 2030 Limited is a corporation organized and existing under the laws of the country of St. Kitts & Nevis.

9.      Defendant Bentley Rothschild. is a corporation organized and existing under the laws of the country of St. Kitts & Nevis.

10.     On information and belief, Defendant BR Investments is a corporation organized and existing under the laws of the country of St. Kitts & Nevis.

11.     Defendant VStock Transfer, LLC, is a limited liability corporation organized and existing under the laws of the State of Delaware with its principal offices located in Woodmere, New York.

12.     On information and belief, Sklarov exercises dominion and control over America 2030, America 2030 Limited, Bentley Rothschild, and BR Investments, and disregards the corporate form of those entities to such an extent that the independent existence of those entities should be disregarded, and the corporate veil pierced, rendering Sklarov personally liable for acts purportedly undertaken through such corporate entities.

13.     Defendants XYZ Corp. 1-10 are corporations, limited liability corporations, partnerships, or limited partnerships who are owned or controlled by one or more of Sklarov or the Sklarov Defendants.  At present, Plaintiff is unable to provide additional details concerning the identity or existence of these fictitious defendants, but expects to be in a position to do so in the future, and at that time will amend or supplement this Complaint.

**Jurisdiction and Venue**

14.     The amount in controversy in this action exceeds the jurisdictional minimum

3

required for subject-matter jurisdiction in this Court.

15.     This Court has personal jurisdiction over defendant Sklarov pursuant to CPLR 302(a) (2) based upon his commission of tortious acts within the State of New York.

16.     This Court has personal jurisdiction over defendants, VStock, and America 2030 based upon CPLR 301, in that such defendants are present within this State.  In particular, America 2030 maintains an office for the conduct of its business on 48th Street in Manhattan, and defendant VStock maintains its principal place of business at 18 Lafayette Place, Woodmere, NY.

17.     This Court may exercise personal jurisdiction over the remaining defendants other than Sklarov, America 2030, and VStock because such remaining defendants participated, along with Sklarov, and America 2030, in a conspiracy to defraud Plaintiff.  Each defendant committed particular acts in furtherance of the conspiracy as set forth in detail below.

18.     This Court may exercise in rem jurisdiction based upon CPLR 314 over that portion of Plaintiff's Shares (as defined below) which are in the custody of VStock within the State of New York, including without limitation entering judgments against any Defendant adjudicating such Defendant's right, title and interest to the Shares held by VStock.

19.     Venue is proper in this county pursuant to CPLR based upon CPLR 503 because defendant America 2030 maintains an office in New York county, and because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in New York county.

## Statement of Facts

### Plaintiff Is Introduced to Defendant Sklarov

20.     Plaintiff is a resident of Wichita Falls, Texas. He is the Chief Technology Officer

4

of Co-Diagnostics.

21.     On or about July 12, 2017, Co-Diagnostics became a publicly traded company, traded on the NASDQ Exchange in New York. As part of the initial public offering of Co-Diagnostics, Plaintiff received approximately 2 million restricted shares.  As required by federal securities regulations, these shares were restricted from being traded, and bore legends to that effect.

22.     During the restricted period Plaintiff could not sell any Shares. However, it was brought to his attention that it was possible to obtain a loan using those shares as collateral if he required cash flow while the Shares were restricted.

23.     Plaintiff was introduced to a "finder" in New York City, non-party Leib Schaeffer, who then introduced Plaintiff to defendant Sklarov. Sklarov told Plaintiff he was the head of a company named America 2030 Capital, LLC, located in Georgia, but with offices in New York City.

24.     Plaintiff personally dealt extensively with Sklarov, who claimed to be connected with America 2030's New York City office on 48th Street.  Sklarov would often refer to America 2030 and other Sklarov Corporate Defendants as a "Wall Street Firm."

25.     When Plaintiff began dealing with Sklarov, he did not know that Sklarov had been convicted of Medicare fraud and money laundering, and had served time in federal prison. Nor was Plaintiff aware that the Sklarov Defendants were being sued by other individuals and corporate entities claiming to have been defrauded in connection with stock loan transactions. Had Plaintiff been aware of these facts, he would not have dealt with Sklarov.

5

Case 1:20-cv-08437-LAK    Document 1-16    Filed 10/09/20    Page 7 of 21

**Defendants' Fraudulent Scheme**

26.    In the spring of 2018, Sklarov's proposal was as follows: his company, America 2030 would loan Plaintiff up to $1.5 million which was later revised to be up to $3.5 million. This money could be repaid over the course of a five-year period. The first interest payment would be due three months after the loan funded. As security for this loan, Plaintiff would use the Shares, which were worth over $7 million at that time.  The Shares were, at that time, still with the transfer agent, defendant VStock, because they were still restricted.

27.    During emails and telephone calls in the spring of 2018, Defendant Sklarov made a variety of representations to Plaintiff in order to induce him to pledge his shares as collateral. These representations are also summarized on America 2030's website, as follows:

- Annual interest of only 4%-6%.
- Loan to Value (LTV) up to 80% of value of stock.
- The stock shares are kept in a bank custodian account in your home country.
- The stock shares are never short traded, sold, reassigned, transferred or traded.
- The stock shares remain in the name of company or client in local custodian bank.
- Loan will be closed in borrower's country and funds can be disbursed in any currency and free to be transferred anywhere. No restriction whatsoever on use of funds.
- No borrower requirement. Securities are the collateral. Loan is against stock & securities, not borrower.
- Loan proceeds to be used for any purpose and not restricted in any way.
- No ownership transfer of stock or securities.
- Dividends are paid to stock & securities owner because owner is still official owner of record.
- Simple interest is paid quarterly.

28.    On or about March 30, 2018, and in reliance on these representations, Plaintiff, without the assistance of an attorney, executed a document provided by Sklarov entitled "Master Loan Agreement," (the "MLA"). When Plaintiff asked if he needed an attorney, Sklarov said it was a simple, standard loan document, that his firm relied on their international reputation, and there is no need to consult an attorney.

29.    Plaintiff relied upon defendant Sklarov for assistance in completing the MLA and

6

Case 1:20-cv-08437-LAK    Document 1-16    Filed 10/09/20    Page 8 of 21

related documents. For instance, Plaintiff completed America 2030's "Know Your Customer" application.  When filling out the "Know Your Customer" form, Plaintiff continually expressed his lack of understanding of securities terms and regulations. Plaintiff was instructed to just fill out his name, and America 2030 or non-party Schaeffer would "work on the missing pieces of the forms."

30.    On or about March 9, 2018 before filling in the Know Your Customer booklet, Plaintiff called non-party Schaeffer to ask questions about how to fill in the information. Schaeffer again indicated what he told Plaintiff on or about March 6 – that the stock would be free-trading by the time the loan was done, and that Plaintiff should so indicate on the Know Your Customer form.

31.    Plaintiff also reminded Sklarov that the "freely tradeable" shares mentioned in 4.2 of the MLA were still paper certificates in need of a legal opinion to be tradeable, which legal opinion may or may not be complicated by the fact that Plaintiff was a 10% shareholder, officer, and director of Co-Diagnostics. Sklarov said it was not a problem and that the language was just a legal formality; the shares would be freely tradeable before the loan was finalized

32.    Subsequently Mr. Sklarov provided Plaintiff with several Addenda to the MLA. The first Addendum changed the form of the transaction from a transfer of shares, to a pledge, as is required by the restrictive legend on the shares.

33.    No matter what the designation, ownership of Plaintiff's shares were never to be actually transferred to any Defendant- that would not have even be possible, as the Shares were restricted. They were to be held as collateral for the loan reflected in the MLA.

34.    Under the Sklarov Defendants' fraudulent scheme, approximately half of Plaintiff's shares would have become freely tradeable on or around December 11, 2018, and the

7

other half on or around January 17, 2019. As the first half of Plaintiff's Shares were set to go unrestricted in December 2018, Plaintiff started hearing from Sklarov in late November. Sklarov pressured Plaintiff for help in removing the transfer restrictions on the Shares, explaining that he could not fund the "loan" without doing so. Plaintiff was unfamiliar with the loan process, and Sklarov represented that this was a procedural requirement.

35.     Whenever Plaintiff inquired about the loan process, his inquiries were met with threats. In particular, in late 2018, Sklarov began to threaten to sell half of Plaintiff's shares if Plaintiff did not sign additional addenda to the MLA.

36.     Plaintiff told non-party Schaeffer that he did not like the threatening way Sklarov was starting to conduct business and that there was no way Plaintiff was going to agree to Sklarov's requests if Plaintiff was going to have to sue to get half of his stock back in two weeks. Schaeffer said that Plaintiff should call Sklarov directly.

37.     In a phone call with Sklarov, Plaintiff repeated to Sklarov what he told Schaeffer and said that he saw no reason to execute the requested addenda. Sklarov said he needed to make the changes for administrative reasons. He then asked if Plaintiff was worried about being screwed out of his stock in two weeks, and said that if they were going to screw Plaintiff, they would have done it six months ago, as they had had the Shares this whole time. In effect, Sklarov was telling Plaintiff that the Sklarov Defendants were trustworthy since they had access to his shares and had not "yet" stolen them. Sklarov then added the implicit threat that Plaintiff was already in default because the Shares were not free-trading. Plaintiff protested, reminding Sklarov that both he and Schaeffer knew that the stock was not free-trading and had promised they could get it to be free-trading. Sklarov eventually promised to make changes to the addenda, and Plaintiff agreed to execute them.

8

## The Purported "Closing" and Defendants' Sales of Shares Prior Thereto

38.     The supposed transaction at issue had a projected "closing" date of December 15, 2018, on which date Plaintiff signed documents purporting to be closing documents. Prior to the "closing," Plaintiff arranged to have the Shares transferred to what he assumed to be an escrow account, in preparation for the "closing".

39.     On or about December 11, 2018, Sklarov notified Plaintiff by email that the legend had been removed from the Shares used as the collateral for the loan.

40.     Between about December 13, 2018 (on or about the date the restriction on the first half of the Shares was removed and the shares reached the broker) and December 27, 2018 (the date the Defendants sent Satterfield their Notice of Default, discussed more fully herein below), and thus a period of only about two weeks, the price of Co-Diagnostics shares dropped precipitously, from $2.18 to $1.15.  This is a nearly 50% drop.  The company's stock is thinly traded and has shown volatility in the past, but this type and magnitude of a price drop was wholly unprecedented.  However, unbeknownst to Plaintiff, the decline in price was being caused by the Sklarov Defendants' sales of his collateral.

41.     On or about December 17, 2018, America 2030 countersigned the "Closing Statement and Addendum" form.  Plaintiff, having played no part in the drafting of that document and at this point being unaware of the fraud scheme that was being perpetrated, signed the closing documents and awaited funding of the loan.

42.     On December 26, 2018, Plaintiff received a "First Disbursement Statement" dated December 25, 2018 from America 2030.  The Statement indicated that America 2030 was providing a "Disbursement Amount" of $100,000, but had deducted fees, expenses and interest of $33,291. This left a "Balance Payment Due to Borrower" of $66,709. A wire transfer for this

token amount was sent to Plaintiff.

43. The next day, only just over a week after the "closing", on or about December 27, 2018, America 2030 Limited sent Plaintiff document dated December 27, 2018 entitled "Margin Call." In it, the Defendants demand a "top-up" of their collateral under the MLA based on the share price for the Co-Diagnostics stock having fallen to below $1.50 per share over the previous three trading days, i.e., December 21, 24 (Christmas Eve) and 26 (the Day after Christmas Day). Unbeknownst to Plaintiff, Defendants had caused this price drop by dumping the Shares, thereby manipulating the stock price, during the prior weeks.

44. The details and timing of this critical period reveal that the Defendants had meticulously planned and timed this fraud scheme and their execution of it.

45. After receipt of third-party discovery, Plaintiff now knows that the Defendants actually took and sold the Shares before the purported closing even took place, and before a single cent was loaned to Plaintiff.  Plaintiff also knows that the Sklarov Defendants continued to sell the shares, even after Plaintiff expended enormous effort and resources to get a preliminary injunction in this case.

46. On information and belief, the drop in the price of Co-Diagnostics shares to below $1.50 was caused, in whole or in part, by the Sklarov Defendants' sales of the Shares.

47. Records subpoenaed in connection with this action from Bank of NY show that the 2030 Defendants actually took, and sold, 10,760 shares on December 13, 2018 (for $23,120.24) and 28,900 shares on December 14, 2018 (for $58,447.93)—days before the "closing" was supposed to take place.

48. They continued selling on almost every trading day since then in ever increasing manner:

10

| Trade Date | Principal Amount | Shares/Par | Local Price |
|---|---|---|---|
| 12/13/2018 | 23,120.24 | -10,760.00 | 2.1509 |
| 12/14/2018 | 58,447.93 | -28,800.00 | 2.0315 |
| 12/17/2018 | 18,193.90 | -9,434.00 | 1.9305 |
| 12/18/2018 | 9,118.75 | 5,000.00 | 1.8256 |
| 12/19/2018 | 8,852.02 | -5,000.00 | 1.7722 |
| 12/20/2018 | 8,219.16 | -5,000.00 | 1.643832 |
| 12/21/2018 | 7,520.97 | -5,000.00 | 1.5057 |
| 12/27/2018 | 5,660.07 | -4,100.00 | 1.3854 |
| 12/28/2018 | 6,231.42 | -5,000.00 | 1.2503 |
| 1/2/2019 | 10,243.03 | -7,521.00 | 1.3646 |
| 1/4/2019 | 36,653.75 | -29,341.00 | 1.2505 |
| 1/3/2019 | 38,774.69 | -30,000.00 | 1.2938 |
| 1/7/2019 | 49,065.09 | -40,810.00 | 1.2022811 |
| 1/8/2019 | 61,917.21 | -50,000.00 | 1.2396 |
| 1/8/2019 | 52,672.29 | -43,705.00 | 1.2064 |
| 1/10/2019 | 31,722.59 | -26,311.00 | 1.2069 |
| 1/11/2019 | 64,580.08 | -57,249.00 | 1.1292 |
| | | - | |
| 1/14/2019 | 323,585.71 | 246,416.00 | 1.3145 |
| 1/15/2019 | 74,082.70 | -64,761.00 | 1.1451 |
| 1/16/2019 | 77,697.76 | -71,982.00 | 1.0805 |
| **1/18/2019** | **41,478.34** | **-37,315.00** | **1.1127** |
| 1/17/2019 | 68,662.66 | -62,100.00 | 1.1068 |
| **1/22/2019** | **76,038.34** | **-70,321.00** | **1.0824** |
| | $1,152,538.70 | -905,926 | |

49.     The trades indicated in red on the above chart were initiated *after* this Court granted temporary restraining orders against America 2030 and Bentley Rothschild enjoining them from further sales of the Shares.

50.     So far, the Sklarov Defendants have now pocketed **$1,152,000** as a result of fraudulent sales of Plaintiff's shares. Plaintiff received a loan of $66,709, but over $1,152,000 in supposed "collateral" for that loan has been disposed of, and the proceeds pocketed by Defendants.

51.     Approximately 1,134,897 restricted shares of Co-Diagnostics are currently held

11

by Defendant VStock pursuant to a preliminary injunction entered by this Court on February 4, 2019.

**Defendants' Prior Fraudulent Schemes**

52.     The Sklarov Defendants have been involved with the same stock-loan scheme in the recent past, and, according to court filings and press reports, are currently the subject of injunctions in Hong Kong and Singapore restraining America 2030 and Sklarov from continuing to trade shares that were supposed to be held as "collateral".

**Hong Kong**

53.     The docket and filings in a District Court of Georgia action, styled *America 2030 Capital Limited v. Prescient Investment Limited, et.al*, 1:18-cv-04875-AT (the "Georgia Case"), reveal that an injunction is currently in effect in Hong Kong restraining America 2030 and Sklarov from transferring and trading shares in a company whose shares were obtained in the exact same way as here (indeed the "MLA" in that case appears to be identical).

54.     In the Georgia Case, the Hong Kong executives pledged their shares as collateral as part of an MLA with America 2030. When America 2030 tried to liquidate and transfer the shares, the Borrower objected because, like here, America 2030 had not yet made the loan. The borrower obtained an injunction from a Hong Kong court prohibiting the transfer agent from transferring the shares. In response, America 2030 filed the Georgia Case. In that case, America 2030 claims that the loan documents permitted it, to sell the collateral in the absence of making the loan. See Georgia case, 1:18-cv-04875-AT, Document 16.

55.     The case was dismissed on jurisdictional grounds, and America 2030 was sanctioned. In a Rule 11 Sanctions Order issued last week in the District Court in Georgia, the

Court sanctioned Val Sklarov personally and enjoined him and the following entities the judge deemed affiliated entities;

- America 2030 Capital Limited (incorporated in Hong Kong);

- America 2030 Capital Limited (incorporated in the United Kingdom);

- America 2030 Capital Limited (incorporated in Colorado)

- America 2030 Capital LLC  (incorporated in Colorado)

- Any company doing business as America 2030 Capital Limited or America 2030

Capital Limited Co. and associated with the plaintiff or its officers; and

- All affiliates of the plaintiff.


### Singapore

56.      In late 2018, in a press release, a Singapore company named Sunpower Group, announced it had to halt trading in its shares after two of its substantial shareholders had informed the company that, on November 3, 2018:

> …they had placed 14 million shares each with a lender, America 2030 Capital Ltd., as collateral for a loan, and said the shares were no longer in the depository broker account.

57.      After these executives commenced legal action in Singapore, America 2030 announced it was bringing an arbitration against these two executives in Nevis against:

> …entities owned by two key executives of Sunpower Business Group LTD for amongst other things, breach of contract, default, tortuous [sic]interference, defamation and slander.

58.      This is <u>after</u>, like here, these executives had gone into Court in Singapore to restrain trading in shares that had been essentially stolen from them.

59.     The two executives have launched a complaint with regulatory agencies in

Singapore: https://www.businesstimes.com.sg/companies-markets/sunpowers-exec-chairman-
exec-director-lodge-report-with-cad-over-unauthorised.

### United Kingdom

60.     In the UK, the CEO of a company named Angus Energy had to step down, after

the company disclosed he had transferred his Angus Energy shares to a company called America

2030 Capital Limited for "nil consideration". It was said to be "in contemplation of a possible

equity linked loan against his shareholding". Unbelievably, the company reports that America

2030 sold 10 million shares (a value of over $100 million) before it was discovered.


### Sklarov's Prior Criminal History

61.     This action is only one of many in which Sklarov personally and his company

America 2030 and its affiliates have been accused of fraud, conspiracy, antitrust collusion,

LIBOR manipulation and stock-loan fraud.

62.     In a case entitled *USA v. Sklarov, et al.,* 97-cr-00176 (DJL) (W.D. Pa.), Sklarov

was convicted of fraud and sentenced to one year in prison and $14,000,000 restitution,

stemming from Medicare fraud.


### AS AND FOR A FIRST CAUSE OF ACTION
(Fraud as against Defendant Sklarov)

63.     Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through

62 above as if set forth in full herein.

64.     Sklarov made repeated misrepresentations of material fact concerning, *inter alia,*

the nature of the transaction he was proposing to Plaintiff, his intent to provide loan funding to

14

Plaintiff, and his intent to safeguard Plaintiff's collateral. These misrepresentations were made via emails and telephone calls from Sklarov to Plaintiff.

65.    At the time Sklarov made these representations he knew they were false, and he intended that Plaintiff would rely upon them. Plaintiff also caused the Sklarov Corporate Defendants to sell the Shares prior to the closing, and after the closing but before providing any funds to Plaintiff, in order to manipulate the price of the Shares.

66.    Plaintiff did in fact rely upon Sklarov's misrepresentations by executing the MLA, executing the addenda to the MLA, executing the purported closing documents, and providing the Shares to Sklarov and the Sklarov Defendants.

67.    Plaintiff's reliance was justifiable.

68.    Plaintiff has suffered damages caused by Sklarov's fraud in an amount to be proven at trial but believed to be in excess of $1.1 million. In addition, Sklarov's actions were wanton, reprehensible, and egregious, so as to warrant the imposition of punitive damages in an amount to be determined at trial but believed to be in excess of $2,000,000.

### AS AND FOR A SECOND CAUSE OF ACTION
(Aiding and Abetting Fraud as against the Sklarov Corporate Defendants)

69.    Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 68 above as if set forth in full herein.

70.    Defendant Sklarov executed a fraudulent scheme against Plaintiff as described above.

71.    Each of the Sklarov Corporate Defendants knew of Sklarov's fraudulent scheme and intended to materially assist Sklarov in perpetrating it.

72.    The Sklarov Corporate Defendants provided substantial assistance to Sklarov in perpetrating his fraudulent scheme against Plaintiff, as follows:

15

a.  America 2030 provided documentation to Plaintiff in furtherance of the scheme, including but not limited to the purported closing documents;

b.  America 2030 Limited provided documentation to Plaintiff in furtherance of the scheme, including but not limited to the purported margin call notice;

c.  Bentley Rothschild and BR Investments sold the Shares at issue, despite the lack of a default by Plaintiff and despite the fact that only a fraction of the value of the loan was ever funded.

73.  Plaintiff has suffered damages caused by Sklarov's fraud as aided and abetted by the Sklarov Corporate Defendants in an amount to be proven at trial but believed to be in excess of $1.1 million. In addition, the Sklarov Corporate Defendants' actions were wanton, reprehensible, and egregious, so as to warrant the imposition of punitive damages in an amount to be determined at trial but believed to be in excess of $2,000,000.

**AS AND FOR A THIRD CAUSE OF ACTION**
(Conversion as against Sklarov and the Sklarov Corporate Defendants)

74.  Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 73 above as if set forth in full herein.

75.  Plaintiff has a current possessory right and interest in the Shares.

76.  The Shares constitute separate and identifiable property.

77.  Sklarov and the Sklarov Defendants have exercised, and are continuing to exercise, dominion over the shares in derogation of Plaintiff's rights.

78.  Plaintiff has been damaged by this conversion in an amount to be proven at trial but believed to be in excess of $1.1 million. In addition, Sklarov and the Sklarov Corporate Defendants' actions were wanton, reprehensible, and egregious, so as to warrant the imposition of punitive damages in an amount to be determined at trial but believed to be in excess of

16

$2,000,000. Alternatively, Plaintiff is entitled to the return of the Shares wrongfully taken by Defendants, including but not limited to the shares currently held by Defendant VStock.

## AS AND FOR A FOURTH CAUSE OF ACTION
(Conspiracy to commit fraud and conversion as against Sklarov and the Sklarov Corporate Defendants)

79.      Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 78 above as if set forth in full herein.

80.      Sklarov has committed fraud against Plaintiff, aided and abetted by the Sklarov Corporate Defendants.

81.      Sklarov and the Sklarov Corporate Defendants have committed conversion against Plaintiff.

82.      An agreement to conspire to commit the torts of fraud and conversion existed between and among Sklarov and the Sklarov Corporate Defendants.

83.      Each of Sklarov and the Sklarov Corporate Defendants committed overt acts in furtherance of the conspiracy as alleged in detail above.

84.      By reason of the foregoing, Plaintiff has been damaged in an amount to be proven at trial but believed to be in excess of $1.1 million. In addition, Sklarov and the Sklarov Corporate Defendants' actions were wanton, reprehensible, and egregious, so as to warrant the imposition of punitive damages in an amount to be determined at trial but believed to be in excess of $2,000,000.

## AS AND FOR A FIFTH CAUSE OF ACTION
(Preliminary and Permanent Injunctive Relief as against VStock

85.      Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through

17

62 above as if set forth in full herein.

86.      VStock currently holds more than 1.1 million of the Shares pursuant to this Court's Preliminary Injunction dated February 4, 2019.

87.      Plaintiff's right, title and interest in the Shares held by VStock is superior to VStock's, or that of any other Defendant.

88.      Plaintiff lacks an adequate remedy at law.

89.      By reason of the foregoing, Plaintiff is entitled to temporary, preliminary and permanent injunctive relief directing VStock to return all Shares in its possession, custody or control to Plaintiff.

## AS AND FOR A SIXTH CAUSE OF ACTION
(Unjust Enrichment against Sklarov and the Sklarov Corporate Defendants)

90.      Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 62 above as if set forth in full herein.

91.      Defendants Sklarov and the Sklarov Corporate Defendants have wrongfully sold Shares which belong to Plaintiff, and have refused to turn over any portion of the proceeds of such sales to Plaintiff.

92.      The above-named defendants would be unjustly enriched if they are permitted to retain the proceeds of their wrongful sale of the Shares.

93.      Plaintiff lacks an adequate remedy at law.

94.      Plaintiff has been damaged in an amount to be proven at trial but believed to be in excess of $1.1 million.

WHEREFORE, Plaintiff demands a judgment as follows:

18

1. On the first cause of action, a judgment in favor of Plaintiff against Defendant Sklarov awarding damages in an amount to be proven at trial but believed to be in excess of $1,100,000.00, plus punitive damages in an amount to be determined at trial but believed to be in excess of $2,000,000.

2. On the second cause of action, a judgment in favor of Plaintiff against the Sklarov Corporate Defendants awarding damages, jointly and severally, in an amount to be proven at trial but believed to be in excess of $1,100,000.00, plus punitive damages in an amount to be determined at trial but believed to be in excess of $2,000,000.

3. On the third cause of action, a judgment in favor of Plaintiff against Defendant Sklarov, and the Sklarov Corporate Defendants awarding damages in an amount to be proven at trial but believed to be in excess of $1,100,000.00, plus punitive damages in an amount to be determined at trial but believed to be in excess of $2,000,000, or, in the alternative, an order directing Defendants Sklarov and the Sklarov Corporate Defendants to return any and all Shares in their possession to Plaintiff.

4. On the fourth cause of action, a judgment in favor of Plaintiff against Defendants Sklarov, and the Sklarov Corporate Defendants awarding damages in an amount to be proven at trial but believed to be in excess of $1,100,000.00, plus punitive damages in an amount to be determined at trial but believed to be in excess of $2,000,000.

5. On the fifth cause of action, an order constituting a preliminary and permanent injunction directing Defendant VStock to transfer any Shares currently in its possession to Plaintiff.

6. On the sixth cause of action, a judgment in favor of Plaintiff against Defendants Sklarov, and the Sklarov Corporate Defendants awarding damages in an amount to be proven at trial but believed to be in excess of $1,100,000.00.

Case 1:20-cv-08437-LAK   Document 1-16   Filed 10/09/20   Page 21 of 21

7.  Together with interest, attorneys' fees, and such other and further relief as the Court may

deem just and proper, including the costs and disbursements of this action.


DEMAND FOR A JURY TRIAL

Plaintiff respectfully demands a trial by jury for all issues so triable in this action.

Dated:  New York, New York
         March 13, 2019

GUZOV, LLC


By:_____ _____
Debra J. Guzov, Esq.
Anne W. Salisbury, Esq.
805 Third Avenue, 8th Floor
New York, N.Y. 10022
Tel:     (212) 371-8008
dguzov@guzovllc.com
*Attorneys for Plaintiff*

20