# EXHIBIT 19

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  COMMERCIAL DIVISION PART 48

-------------------------------------------------------------------------------X

BRENT SATTERFIELD,

                                        Plaintiff,

                    - v -

VSTOCK TRANSFER, LLC, AMERICA 2030 CAPITAL,
LLC (A/K/A BENTLEY ROTHSCHILD CAPITAL LTD
CORP.), BENTLEY ROTHSCHILD CAPITAL LTD CORP.,
AMERICA 2030 CAPITAL, LIMITED, BENTLEY
ROTHSCHILD FINANCIAL, LLC, BENTLEY ROTHSCHILD
INVESTMENTS, XYZ CORPORATION 1 - 10, VAL
SKLAROV,

                                        Defendants.

-------------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 650311/2019 |
| **MOTION DATE** | |
| **MOTION SEQ. NO.** | 004 |

**DECISION + ORDER ON MOTION**[1]

The following e-filed documents, listed by NYSCEF document number (Motion 004) 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 80, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 132

were read on this motion to/for _____ STAY _____.

        On January 16, 2019, plaintiff Brent Satterfield initiated this action against VStock

Transfer, LLC (VStock), a stock transfer agent which currently holds the shares of

nonparty Co-Diagnostics, Inc. (CODX) at issue here, with a summons with notice,

wherein plaintiff alleged:

> "This is an action for injunctive relief.  Due to a fraudulent scheme perpetrated
> against him, Plaintiff was induced to pledge restricted shares of . . . Co-
> Diagnostics, Inc. . . . . as security for a loan to be advanced by . . . America 2030
> Capital, LLC . . . . or its affiliates.  The loan was fractionally funded (less than
> $100,000) and repaid in full many times over when America 2030 previously, and
> wrongfully, sold half of the Shares pledged to it by Plaintiff and pocketed the
> proceeds.  Plaintiff seeks injunctive relief preventing VStock from allowing the
> second half of these Shares to be sold, transferred, assigned, encumbered, or

_____

[1] This decision was delayed by the imprecision of the parties.  While plaintiff's
imprecision was acceptable in the early stages of this action due to the urgency of the
matter, it cannot be excused now.  Both parties fail to distinguish one entity from
another with identical names.  The parties are urged to be precise forthwith.  Likewise,
the parties failure to file documents in ECF caused additional delays.

Case 1:20-cv-08437-LAK     Document 1-19     Filed 10/09/20     Page 3 of 35

otherwise disposed of, which will otherwise become unrestricted on January 17, 2019, and will be sold by the fraudsters who victimized Plaintiff, rendering any further judgment by this Court without practical effect."  (NYSCEF Doc. No. [NYSCEF Doc.] 1).

Though not filed under Article 75 of the CPLR, this case was originally framed as one in support of arbitration, the forum being in either New York or Nevis-St. Kitts.  To preserve the status quo, the court issued a preliminary injunction enjoining VStock from releasing the remaining CODX shares in its possession.  (NYSCEF Doc. 47.)  However, plaintiff has since filed a complaint in which he seeks damages, only, and mentions nothing of arbitration.  (NYSCEF Doc. 11.)

Now before the court is plaintiff's motion sequence number 04, brought by OSC, to enjoin defendants America 2030 Capital, LLC (America 2030) and Bentley Rothschild Capital Ltd. Corp.[2] (collectively, Defendants) from proceeding with an arbitration in Nevis-St. Kitts for defamation allegedly caused by plaintiff filing this action.  (NYSCEF Doc. 59.)[3]  Also before the court is plaintiff's motion sequence number 03 for contempt against Defendants for violating prior court orders by selling CODX shares after the court issued a TRO enjoining such sales.  (NYSCEF Doc. 48.)  Defendants have made

---

[2] Defendants claim that Bentley Rothschild Capital Ltd. Corp. is incorrectly named and unknown to defendants.  (NYSCEF Doc. 92 at n 1.)  The court notes that in the March 13, 2019 complaint, plaintiff added defendants America 2030 Capital Limited, Bentley Rothschild Financial LLC, Bentley Rothschild Investments, XYZ Corporation (1-10 fictitious names) and Val Sklarov to the caption.  (NYSCEF Doc. 130; see also NYSCEF Doc. 144, Notice to County Clerk – Amendment to Caption.)

[3] Defendants improperly cross-moved to compel the Nevis arbitration.  (NYSCEF Doc. 92 and (Tr. 5:14-18 [not filed in NYSCEF].)  By cross moving, defendants unfairly short served plaintiff without court authorization.  (See e.g. (Block v Nelson, 71 AD2d 509 [1st Dept 1979]).

650311/2019  SATTERFIELD, BRENT vs. VSTOCK TRANSFER, LLC          Page 2 of 15
Motion No.  003 004

2 of 15

several appearances before this court, and requested affirmative relief from this court,[4]

including their May 20, 2019 motion to dismiss challenging the court's jurisdiction.

(NYSCEF Doc.175, motion sequence number 08.)  Accordingly, the court addresses

motion sequence number 04 only and holds sequence number 03 in abeyance until

there is a determination on jurisdiction.

Plaintiff also filed motion sequence number 06 on March 15, 2019 to amend

motion 04 to add America 2030 Capital Limited and Bentley Rothschild Financial LLC

(collectively, Nevis Defendants) and Bentley Rothschild Investments, XYZ Corporation

(1-10 fictitious names) and Val Sklarov to the court's TRO (NYSCEF Doc. 133)

consistent with the complaint filed on March 13, 2019.  (NYSCEF Doc. 130).  On March

8, 2019, the court signed the OSC and directed service on the new defendants

consistent with the CPLR.  (NYSCEF Doc. 143).  As of now, there are no affidavits of

service filed with the court demonstrating that the Nevis Defendants were so served.

Accordingly, this decision and order is directed to those entities that have been served

with process.

Plaintiff is an inventor of a rapid DNA test used in the medical and agricultural

industries and a founder of CODX to exploit his invention; CODX is one of several start-

up companies plaintiff had been involved in.  (NYSCEF Doc. 130, Complaint ¶ 5;

---

[4] In motion sequence number 07, America 2030 seeks a preliminary injunction enjoining plaintiff from contacting financial institutions doing business with Defendants. (NYSCEF Doc. 153.)  The court rejected Defendants' improper cross motion to plaintiff's OSC. (3/13/19 Transcript [Tr.] 5:14-16 [not submitted in NYSCEF]; NYSCEF Doc. 91, Notice of Cross Motion.)  On April 26, 2019, the court also denied Defendants' motion to dismiss for failure to serve a complaint and granted plaintiff's cross motion to excuse the late service of his complaint.  (NYSCEF Doc. 173, decision on motion sequence number 05.)

650311/2019  SATTERFIELD, BRENT vs. VSTOCK TRANSFER, LLC
Motion No.  003 004

Page 3 of 15

3 of 15

NYSCEF Doc. 164, Satterfield Aff of Direct Testimony, April 19, 2019 [4/19/19 Aff] at ¶¶

5, 6.) Plaintiff is an officer and director of CODX, and its Chief Technology Officer. (*Id.*)

CODX is traded on the NASDAQ, having gone public on July 12, 2017. (4/19/19 Aff at

¶ 7.) Plaintiff received 2.3 million restricted shares of CODX as part of the public

offering. (*Id.*) The restriction arises from SEC Rule 144 (17 CFR § 230.144), which

restricts the sale of certain shares held by particular shareholders, such as insiders, as

to amount, manner, and timing. The restriction on half of plaintiff's shares was to expire

in December 2018. (NYSCEF Doc. 60, Satterfield Aff, February 9, 2019 [2/9/19 Aff] at ¶

17.)

This action arises from the Master Loan Agreement (MLA), providing for a $1.5

million "Non-Recourse Title Transfer Loan" from America 2030, executed by plaintiff, the

borrower, on March 30, 2018 and Val Sklarov, as managing member of America 2030,[5]

on April 2, 2018. (NYSCEF Doc. 61, MLA at §§ 2.1[a], 3.1.) Most significant to this

decision, the MLA provides for AAA arbitration in New York applying New York law. (*Id.*

at § 8.) The parties defined "arbitral disputes" to include "the existence, validity,

---

[5] The "America 2030" involved in this action appears to be incorporated in Colorado. (NYSCEF Doc. 15 at 18 [*see* stamp next to Sklarov's signature on MLA].) However, the court notes that in a civil action in the U.S. District Court for the Northern District of Georgia, "America 2030 Capital Limited" is incorporated in Hong Kong and the United Kingdom while America 2030 Capital Limited and America 2030 Capital, LLC are incorporated in Colorado (collectively, 2030 America Defendants). (NYSCEF Doc. 122, Consent Order), but on the Arbitration Agreemen,t America Limited Capital Limited appears to be a Nevis corporation. As there is considerable confusion as to which, if any, of the America 2030 Defendants hold the CODX shares, the court wishes to clarify that it is the court's intention to maintain the status quo as to the shares that are the subject of the MLA, regardless of which America 2030 Defendant or their affiliates, assigns, and/or associates and/or any and all officers, directors, managing members, shareholders, mangers of any title and/or employees thereof hold the shares at issue.

interpretation, performance, breach, termination thereof, or any dispute regarding noncontractual obligation arising out of or relating to it." (*Id.* at § 8.1.) "The award shall be final and legally binding on the Parties and shall be subject to enforcement in any courts having jurisdiction over the Parties." (*Id.*)

An April 3, 2018 addendum increases the amount of the loan to $3.5 million and reassigns voting rights to plaintiff. (NYSCEF Doc 62, at pp. 1-2, §§ I, II [d].) A November 30, 2018 addendum amends the MLA to assign the loan to America 2030 Capital Limited, a Nevis corporation, and identifies Bentley Rothschild Capital Limited of Nevis as a second assignee which is also in possession of shares of CODX held by VStock "awaiting 6 month time frame for removal of restriction legend as a result of its acceptance of transfer of shares to it." (NYSCEF Doc. 62 at p. 3, § I [e]; *see also id.* at § I [c], [d].) The arbitration provision was also amended to provide for arbitration of the "existence, validity, interpretation and resolution" of the agreement in St Kitts & Nevis with the law of the United States governing. (*Id.* at p. 4, § I [a].) There is also a May 29, 2018 addendum clarifying that plaintiff's pledge of 2,269,795 shares was not intended to establish defendants as "affiliates" of plaintiff as exemplified by "reassigning voting rights back to [plaintiff]," thus avoiding SEC Rule 140. (*Id.* at pp. 9-10.)

The closing was set for December 15, 2018. (2/9/19 Aff at ¶ 18; NYSCEF Doc. 63, Closing Agreement.) On December 26, 2018, plaintiff received a disbursement of $66,709. (2/9/19 Aff at ¶ 20.) On December 27, 2018, Sklarov issued a "margin call." (NYSCEF Doc. 102.)

Defendants sold through Bank of New York 10,760 shares on December 13, 2018; 28,800 shares on December 14, 2018, before plaintiff signed the MLA; and

650311/2019  SATTERFIELD, BRENT vs. VSTOCK TRANSFER, LLC
Motion No. 003 004

Page 5 of 15

5 of 15

continued selling until a total of 905,926 shares were sold by January 22, 2019, 37,315 of which were sold on January 18, 2019, the same day that this court issued the VStock TRO. (4/19/19 Aff at ¶ 60.) 70,321 were sold on January 22, 2019, after the court had issued the TRO enjoining Defendants. (Id.; see also NYSCEF Doc. 41.) Meanwhile, the CODX price, which was at a high of $5.28 on June 5, 2018, dropped from $2.1509 on December 13, 2108 to $1.0824 on January 22, 2019. (See https://finance.yahoo.com/quote/CODX?p=CODX&.tsrc=fin-srch-v1 [submitted by Defendants but not filed in NYSCEF].)

In motion sequence number 01, filed by OSC on January 17, 2019 at 1:39 p.m., plaintiff moved for an injunction preventing VStock from selling, transferring, assigning, encumbering or otherwise disposing of any shares of CODX. (NYSCEF Doc. 11.) The court signed the TRO enjoining VStock but directed additional service of the TRO on America 2030 because its interest in trading CODX would be affected by the TRO against VStock. Accordingly, the preliminary injunction against VStock was served with supporting papers at the office of America 2030 on January 18, 2019 at 2:38 p.m. by hand delivery to Shalonda M. White, a secretary. (NYSCEF Doc. 26.) It was also served by Federal Express (tracking no. 774250478926) on January 22, 2019 at 9:42 a.m. (NYSCEF Doc. 75.) VStock did not appear on the return date and did not oppose the motion for a preliminary injunction which was granted on the record at argument on January 23, 2019; however, counsel for Defendants were present and thus aware of the TRO granted against VSTOCK. (NYSCEF Doc. 161, Tr. at 2:8-24.) A written order issued February 4, 2019. (NYSCEF Doc. 47.)

On January 18, 2019, plaintiff filed an amended summons with notice adding

Defendants. (NYSCEF Docs. 19, 20.) Simultaneously, plaintiff filed motion sequence

number 02 by OSC for a TRO enjoining Defendants from selling, transferring, assigning,

encumbering or otherwise disposing of any shares of CODX. (NYSCEF Doc. 41.)

Consistent with the court's rules, on January 18, 2019 at 1:53 p.m., plaintiff's counsel

notified America 2030 by email and stated that plaintiff would be seeking a TRO

enjoining Defendants from selling shares of CODX. (NYSCEF Doc. 35.) At 3:23 p.m.

the same day, Steven Roberts, Esq. responded by leaving a voicemail for plaintiff's

counsel, admitting receipt of plaintiff's email notice. (*See* NYSCEF Doc. 90.) In

addition, plaintiff provides documentary evidence of the relationship between

Defendants and Roberts who gave an opinion letter on behalf of Defendants, dated

January 18, 2019, identifying the seller of the CODX shares as Bentley Rothschild

Financial, LLC, which includes the Seller's Representative Letter signed by Sklarov on

behalf of Bentley Rothschild Financial LLC to VStock requesting that VStock lift the

trading restriction on the CODX shares. (NYSCEF Doc. 65.)[6]

The court signed motion sequence number 02 with the TRO and directed service

consistent with the CPLR. The TRO with the amended Summons with Notice was hand

---

[6] In addition to the Seller's Representative Letter signed by Sklarov and Robert's letter, the letter to VStock consists of a cover letter signed by Elizaveta Lata, "Director & Secretary" of Bentley Rothschild Financial, LLC, directing VStock to expedite and authorizing a rush fee; a document entitled "Transfer Instruction Form", dated January 18, 2019, listing Bentley Rothschild Financial Inc. as current shareholder, and Bentley Rothschild Capital Limited as the recipient of 1,134,897 shares; a document entitled "Statement of Account" for Bentley Rothschild Financial LLC, as of July 19, 2018, with a balance of 1,134,897 CODX shares as a "restricted book balance;" and a credit card authorization signed by Sklarov on October 30, 2018, listing America 2030 Capital LLC as the shareholder of the CODX shares.

650311/2019  SATTERFIELD, BRENT vs. VSTOCK TRANSFER, LLC    Page 7 of 15
Motion No. 003 004

7 of 15

delivered to Defendants on January 22, 2019 at 2:40 p.m. (NYSCEF Docs. 27, 28.)

The TRO against America 2030 was also sent by Federal Express (tracking no.

77423882493) to America 2030 at a Georgia address and delivered there on January

23, 2019 at 3:03 p.m. (NYSCEF Doc. 76.) It was also returnable on January 23, 2019.

Defendants' counsel was present with the court granted the motion for a preliminary

injunction on the record. (NYSCEF Doc. 112.)

On January 18, 2019, America 2030 Capital Limited, Nevis, issued plaintiff a

notice of default. (NYSCEF Doc. 103.) Specifically, Sklarov listed plaintiff's failure to

comply with the December 27, 2018 margin call. In addition, Sklarov asserts that

plaintiff violated the MLA when he tendered CODX shares in April 2018 which were

restricted.

America 2030 Capital Limited (Nevis) and Bentley Rothschild Capital Limited

(Nevis) initiated arbitration in Nevis. The application, signed by Sklarov and dated

January 20, 2019, is stamped "The Arbitrator received January 21, 2019." (NYSCEF

Doc. 66.) In the application, claimants object to plaintiff's filing of this action as an

interference with their ability to dispose of the securities but fail to assert what relief is

sought. Though Defendants deny "awareness" of the TROs until January 22, 2019,

(NYSCEF Doc. 71, Defendants' memo of law at p. 2), Claimants reference this action in

the Nevis arbitration application dated January 20, 2019. (NYSCEF Doc. 66.)

Defendants' demand for a complaint is dated January 24, 2019. (NYSCEF Doc.

108.)

On February 8, 2019, plaintiff filed motion 03 for contempt. (NYSCEF Doc. 48.)

Case 1:20-cv-08437-LAK    Document 1-19    Filed 10/09/20    Page 10 of 35

Another Nevis arbitration application is stamped "The Arbitrator received February 4, 2019" with America 2030 Capital Limited (Nevis) and Bentley Rothschild Capital Limited (Nevis) as claimants 1 and 2 respectively, and Sklarov as claimant 3. This application, dated February 2, 2019, is executed three times by Sklarov, individually, and as operations manager of claimants 1 and 2. (NYSCEF Doc. 68.)  The claimants allege plaintiff's defamation of the claimants arising from statements in documents filed in this action.  (NYSCEF Doc. 66.)

On February 11, 2019, Salman Ravala, Esq. filed a notice of appearance which states that he is designated to accept service of pleadings and papers in this litigation for defendants America 2030 and Bentley Rothschild Capital Ltd. Corp.  (NYSCEF Doc. 70.)[7]

On February 11, 2019, plaintiff filed motion 04 by OSC, seeking to stay the arbitration in Nevis as amended by 06.  (NYSCEF Doc. 59, 143.)

On March 4, 2019, Defendants filed a cross motion pursuant to CPLR 7503 (a) to compel arbitration and dismissing or otherwise denying plaintiff's OSC, motion 04, to stay arbitrations filed February 10, 2019.  (NYSCEF Doc. 91.)

On March 7, 2019, Defendants filed motion sequence number 05 to dismiss the action for failure to serve a complaint.  (NYSCEF Doc. 105.)  Plaintiff cross-moved for time to serve.  (NYSCEF Doc. 129.)

---

[7] On April 2, 2019, a notice of substitution was also filed, but Bentley Rothschild Ltd. Corp. is crossed out. (NYSCEF Doc. 160.)

650311/2019  SATTERFIELD, BRENT vs. VSTOCK TRANSFER, LLC
Motion No. 003 004

Page 9 of 15

On March 13, 2019, the court heard argument on the pending OSCs and directed expedited discovery and a hearing on contempt and whether the second arbitration provision was permeated with fraud.[8]

On March 20, 2019, Sklarov wrote to Dolphin Financial explaining that America 2030 is a UK entity, and thus, not subject to this court's order.  (Plaintiff's 6B at the April 22, 2019 hearing, email from Skarov to Dolphin Financial [not filed in NYSCEF].)

Plaintiff filed a complaint dated March 13, 2019 alleging (1) fraud against Sklarov; (2) aiding and abetting fraud against Sklarov defendants;[9] (3) conversion; (4) conspiracy to commit fraud and conversion against Sklarov and the Sklarov Corporate Defendants; (5) injunction against VStock to transfer the remaining shares to plaintiff; and (6) unjust enrichment against Sklarov and the Sklarov defendants.  Plaintiff seeks to pierce the corporate veils and damages against Sklarov and his business entities.

### Discussion

Certainly, arbitration is favored over litigation, especially where the arbitration provision is broad, as it is here.  (*Matter of Weinrott (Carp)*, 32 NY2d 190 [1973] [for

---

[8] As to the contempt motion, the court found that issues of fact abounded as to when Sklarov signed an arbitration application.  (March 13, 2019, Tr. 13:17-22.)  Sklarov's testimony was also needed regarding defendant Bentley Rothschild Capital Ltd. Corp, for which Sklarov is listed as CEO (NYSCEF Doc. 85) and maybe deeply involved in this complex transaction.  Of concern, Sklarov, in an affidavit before this court, disavows knowing Bentley Rothshild Ltd. Corp.  (NYSCEF Doc. 104 at ¶ 3.)  In addition, the court requested Sklarov's testimony on his letter to VStock asking for the removal of the restriction.  (Tr. 14:21-24.)  Specifically, the court invited Sklarov to testify as to what he knew about the court's TROs and when he knew of them.

[9] In the complaint, plaintiff defines America 2030, America 2030 Capital, Limited, Bentley Rothshild Capital Ltd. Corp., Bentley Rothschild Investments, collectively as the "Sklarov Corporate Defendants" and with Sklarov, the "Sklarov Defendants."

discussion of language evidencing scope of arbitration clauses].)  New York's "CPLR

arbitration provisions (CPLR 7501 *et seq.*) evidence a legislative intent to encourage

arbitration," and serve as the basis for the strong federal policy favoring arbitration in the

cases relied upon by defendants.  (*Id.* at 199.)  Accordingly, the only issue reserved for

the court is whether the parties have agreed to arbitration.  (*Matter of Kennelly v Mobius

Realty Holdings LLC*, 33 AD3d 380 [1st Dept 2006] [petitioner challenged signature on

arbitration agreement; court must decide threshold issue of whether the parties have a

valid arbitration agreement].)

Here, plaintiff argues that the MLA and its amendments are permeated with

fraud, and thus, he has not agreed to arbitration.  "To demonstrate that fraud permeated

the entire contract, it must be established that the agreement was not the result of an

arm's length negotiation, or the arbitration clause was inserted into the contract to

accomplish a fraudulent scheme" (*Markowits v Friedman*, 144 AD3d 993, 997 [2d Dept

2016] [internal quotation marks and citation omitted].)  Here, plaintiff alleges both.

However, "where a party to a contract containing an arbitration agreement or clause,

with knowledge of alleged fraud or misrepresentation affecting the contract, affirms the

validity of the contract by accepting the benefit of a material provision thereof or by

taking or participating in an action or proceeding to enforce a claim or right existing by

virtue of the contract, he is precluded from avoiding the arbitration agreement or clause

on the basis of the alleged fraud or misrepresentation."  (*Housekeeper v Lourie*, 39

AD2d 280, 282-283 [1st Dept 1972] [citations omitted].)  Under these circumstances,

while the agreement can be challenged as fraudulent, it must be challenged in

arbitration.

Plaintiff does not deny he executed the MLA and received $60,000 pursuant to it. Plaintiff also asserts red flags, that may evidence fraud or misrepresentations. (4/19/19 Aff at ¶¶10, 15, 19, 26, 28, 34, 35.)  The question is whether these flags were enough to give plaintiff knowledge of fraud and misrepresentation affecting the MLA or the addendums.  If so, plaintiff could not avoid the arbitration provision and whether the MLA, the addendums, or the arbitration provision are permeated with fraud would be arbitrable. (*Housekeeper v Lourie*, 39 AD2d at 283.)  The question is which arbitrator, New York or Nevis.

Defendants assert that the November 30, 2018 addendum puts the arbitration in Nevis.  Plaintiff objects that he did not agree to the Nevis arbitration because the November 30, 2018 addendum and its arbitration provision are also permeated with fraud.  Plaintiff may challenge his agreement to one arbitration provision even if he agreed to a prior arbitration provision.  (*See Kennelly*, 33 AD3d 380 [defendant agreed to two prior agreements but specifically objected to third agreement].)  The question is whether plaintiff accepted the $60,000 knowing that the MLA, the addendums or both were affected by fraud or misrepresentation.

The virtues of arbitration are speed and finality.  (*Matter of Weinrott (Carp)*, 32 NY2d at 198.)  Here, an immediate hearing to determine whether the arbitration proceeds in Nevis or New York furthered those purposes.  (*See Oberlander v Fine Care*, 108 AD2d 798 [2d Dept 1985] [an evidentiary hearing is necessary to resolve the issue of whether the entire agreement including the arbitration provision is permeated with fraud].)  Accordingly, the court held a hearing on April 22 and 24, 2019 at which plaintiff testified and submitted documentary proof to support his claim that the

650311/2019  SATTERFIELD, BRENT vs. VSTOCK TRANSFER, LLC
Motion No.  003 004

Page 12 of 15

12 of 15

Case 1:20-cv-08437-LAK    Document 1-19    Filed 10/09/20    Page 14 of 35

November 2018 addendum, specifically the Nevis arbitration clause, was permeated by fraud. Defendants' attorney was present, but failed to present any evidence on the issue.

### Preliminary Injunction

Plaintiff seeks a preliminary injunction enjoining Defendants from participating in the Nevis arbitrations. A preliminary injunction is a "drastic remedy." (*Edgeworth Food Corp. v Stephenson*, 53 AD2d 588, 588 [1st Dept 1976].) Before a court may issue a preliminary injunction, the movant must establish (1) a likelihood of success on the merits of the action, (2) the danger of irreparable harm in the absence of a preliminary injunction, and (3) a balance of equities in favor of the moving party. (*Gliklad v Cherney*, 97 AD3d 401, 402 [1st Dept 2012] [citations omitted].)

Plaintiff testified that he is a bioengineer and experienced inventor, but financially naive. (4/19/19 Aff at ¶ 5.) When he decided to use his CODX shares as collateral for a loan of $500,000[10] to invest in business opportunities, pay down his home mortgage, and renovate his home, he did so without an attorney. (*Id.* at ¶¶ 6, 9.) This court has the authority to stay an arbitration where the underlying agreement or the arbitration provision is permeated with fraud. Plaintiff establishes with credible testimony a likelihood of success on the merits that the Nevis arbitration provision is permeated with fraud. (NYSCEF Doc. 186.) Documentary evidence corroborates that the MLA was amended to avoid the SEC's jurisdiction over the shares and transactions here which evidences a fraudulent scheme. (Plaintiff's exhibit 9, iMessage [not filed in NYSCEF].).

---

[10] While the amount of the loan on the cover of the MLA is $1.5 million, plaintiff offered documentary proof of Defendants' offers to increase the loan to $3.5 million and even $6 million. (4/19/19 Aff at ¶¶ 24, 25, 46.)

650311/2019  SATTERFIELD, BRENT vs. VSTOCK TRANSFER, LLC
Motion No. 003 004

Page 13 of 15

Case 1:20-cv-08437-LAK    Document 1-19    Filed 10/09/20    Page 15 of 35

Although the shares were restricted, and the loan was to be secured by the shares, Defendants began selling the shares before the closing. Moreover, the MLA was for a $1.5 million loan, but plaintiff received only $60,000 yet Defendants assert that plaintiff defaulted first. Due to the expedited nature of the proceeding, the court confines its finding of success on the merits to the Nevis arbitration provision. The issue of whether the MLA and addendums are permeated with fraud must await the court's decision on the Defendants' motion to dismiss.[11] Until then, the court is constrained to assess success on the merits without making any findings of fact.

Plaintiff may be irreparably harmed if his CODX shares are transferred or removed from the jurisdiction. Money damages may not be calculable if the price of CODX shares is artificially depressed by the sale of a large number of shares. (See https://finance.yahoo.com/quote/CODX?p=CODX&.tsrc=fin-srch-v1.) Further, trading history evidences a thin market for CODX shares and volatile prices.

Finally, the balance of equities favors plaintiff because Defendants failed to identify any equities favoring them. Defendants' only argument in opposition to motion 04 is that the Nevis arbitration and the MLA arbitration provision preclude this court from exercising jurisdiction. (NYSCEF Doc. 92). In light of the MLA's New York arbitration provision, the court has authority to maintain the status quo. However, a court order directing the parties to arbitration before AAA must await the court's resolution of Defendants' motion to dismiss.

Accordingly, it is

---

[11] The parties are not precluded from agreeing to proceed with AAA arbitration in New York as they agreed in the MLA.

650311/2019  SATTERFIELD, BRENT vs. VSTOCK TRANSFER, LLC          Page 14 of 15
Motion No.  003 004

14 of 15

ORDERED that motion 04 is granted and defendants America 2030 Capital, LLC, Bentley Rothschild Capital Ltd. Corp, and Val Sklarov are enjoined from participating in the Nevis arbitration until further order of this court; and it is further

ORDERED that plaintiff shall file an undertaking of $10,000; and it is further

ORDERED that the parties are directed to file trial exhibits and transcripts not already filed in ECF.

_6/20/19_
**DATE**

~~Andrea~~ **ANDREA MASLEY, J.S.C.**

| CHECK ONE: | | | | |
|---|---|---|---|---|
| | CASE DISPOSED | | X | NON-FINAL DISPOSITION |
| | X GRANTED | DENIED | | GRANTED IN PART | OTHER |
| APPLICATION: | SETTLE ORDER | | | SUBMIT ORDER |
| CHECK IF APPROPRIATE: | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | REFERENCE |

650311/2019   SATTERFIELD, BRENT vs. VSTOCK TRANSFER, LLC
Motion No. 003 004

15 of 15

Page 15 of 15

## SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

| | |
|---|---|
| PRESENT: **HON. ANDREA MASLEY** | PART **IAS MOTION 48EFM** |
| _Justice_ | |

-----------------------------------------------------------------------------X

BRENT SATTERFIELD,

                    Plaintiff,

       - v -

VSTOCK TRANSFER, LLC, AMERICA 2030 CAPITAL, LLC
(A/K/A BENTLEY ROTHSCHILD CAPITAL LTD CORP.),
BENTLEY ROTHSCHILD CAPITAL LTD CORP., AMERICA
2030 CAPITAL, LIMITED, BENTLEY ROTHSCHILD
FINANCIAL, LLC, BENTLEY ROTHSCHILD
INVESTMENTS, XYZ CORPORATION 1 - 10, VAL
SKLAROV

                  Defendant.

-----------------------------------------------------------------------------X

INDEX NO.       650311/2019

MOTION DATE

MOTION SEQ. NO.     008

**DECISION + ORDER ON
MOTION**

**MASLEY, J.:**

The following e-filed documents, listed by NYSCEF document number (Motion 008) 175, 176, 177, 178, 179, 180, 181, 182, 183, 184, 185, 188, 189, 190, 191, 192, 193, 194, 195, 196, 197, 198, 199, 201, 265

were read on this motion to/for                 **DISMISSAL**     .

       In motion sequence number 008, defendants America 2030 Capital LLC (Capital

LLC), America 2030 Capital Limited (Capital Limited), Bentley Rothschild Capital Limited

Corp (BR) and Val Sklarov move to dismiss plaintiff Brent Satterfield's amended complaint

pursuant to CPLR 3211 (a) (1), (7), (8), and CPLR 327. Alternatively, they move to compel

arbitration pursuant to CPLR 7503.

### Background

       The following facts are alleged in the complaint unless noted otherwise, and for

purposes of this motion, accepted as true. On July 12, 2017, nonparty Co-Diagnostics,

Inc. became a publicly traded company. (NYSCEF Doc. No. [NYSCEF] 130 at ¶ 21.) As

part of the initial public offering, Satterfield received approximately 2 million restricted

shares. (_Id._) These shares were restricted from being traded, and bore legends to that

650311/2019  SATTERFIELD, BRENT vs. VSTOCK TRANSFER, LLC
Motion No. 008

Page 1 of 19

1 of 19

effect. (*see* 17 CFR § 230.144.) Accordingly, Satterfield could not sell the shares, but he became aware of the possibility of using the shares as collateral to obtain a loan. (NYSCEF 130, at ¶ 22.) Through nonparty Leib Schaeffer, a finder in New York City, Satterfield met Sklarov. (*Id.* at ¶ 23.) Sklarov informed Satterfield that he was the head of Capital LLC, a limited liability company organized under the laws of Colorado with offices in Kennesaw, Georgia. (*Id.* at ¶ 23, 7.) Capital LLC "represents itself on LinkedIn.com as maintaining an office on 48th Street, New York, NY." (*Id.* at 7.) In the Spring of 2018, Sklarov proposed that Capital LLC loan Satterfield up to $1.5 million to be repaid over the course of a five-year period. (*Id.* at ¶ 26.) Sklarov further proposed that Satterfield's shares, valued at the time in excess of $7 million, would serve as security for the loan. (*Id.*) At this time, the shares were held by defendant VStock Transfer LLC (VStock), a limited liability company organized under the laws of Delaware with principal offices operating in New York. (*Id.* at ¶¶ 26, 11.) On March 30, 2018, Satterfield and Capital LLC entered into a "Master Loan Agreement" (MLA). (*Id.* at ¶ 28.) Sklarov provided Satterfield with the MLA, and signed in his capacity as managing member of Capital LLC. (*Id.*; NYSCEF 178, MLA at 18.)

The MLA contains a provision in which the parties agreed that Capital LLC has the right to cease funding the loan if the shares experienced a material "Valuation Event" or material change in average daily trading volume. (NYSCEF 178 at § 6.2.) The MLA defines "Valuation Event" as when the fair market price of the shares falls to less than seventy five percent (75%) of the fair market price used to calculate the loan principal amount. (*Id.* at § 1.1.) In the event of a material "Valuation Event", the MLA further provides that Capital LLC shall provide written notice to Satterfield, who then has 3 business days to "top-up" the shares twenty-five percent (25%) more than the fair market

value, and cure the deficiency in value by tendering cash or a stock equivalent. (*Id.* at §
7.1 [g].) Another provision of the MLA indicates that either Satterfield or Capital LLC may
require any dispute arising out of the MLA to be resolved by arbitration, the place of which
was New York. (*Id.* at § 8.1.)

Sklarov subsequently provided Satterfield with several addenda that modified the
MLA. (NYSCEF 130 at ¶ 32.) The first of which changed the form of the transaction from a
transfer of shares, to a pledge, allegedly as required by the restrictive legend on the
shares. (*Id.*) This first addendum also increased the amount of the loan to $3.5 million.
(NYSCEF-179 at exhibit B, § I.) Again, Satterfield entered into this agreement with Sklarov
in his capacity as managing member of Capital LLC. (*Id.* at 2.)

Under the MLA, approximately half of the shares became freely tradeable on
December 11, 2018, and the other half on January 17, 2019. (NYSCEF 130 at ¶ 34.) In
late 2018, Sklarov began to threaten to sell half of Satterfield's shares if Satterfield did not
sign an additional addendum to the MLA. Sklarov also threatened Satterfield, with claims
that he was in default under the MLA because the shares were not free trading. (*Id.* at ¶
37.)

Satterfield executed the additional addendum, dated November 30, 2018
(November 2018 Addendum). (*Id.*) The November 2018 Addendum assigned the loan to
Capital Limited together with all rights, warranties, obligations, covenants and
representations. (NYSCEF 179 at exhibit B, § I.) It further modified the arbitration
provision in the MLA, providing that disputes are to be governed by The Arbitrator Conflict
Resolution Services in St. Kitts & Nevis, administered by the Arbitrator Conflict Resolution
Service in St. Kitts & Nevis. (*Id.*) Additionally, the November 2018 Addendum transferred
the shares to Capital Limited as one assignee, and to BR, a second assignee. (*Id.* at § II.

650311/2019  SATTERFIELD, BRENT vs. VSTOCK TRANSFER, LLC                    Page 3 of 19
Motion No. 008

3 of 19

[h].) The November 2018 Addendum was entered into by Satterfield, and Sklarov, in his capacity as managing member of Capital LLC, and "operations manager" of BR. (*Id.* at 5; NYSCEF 179 at 6.)

Prior to the closing, Satterfield "arranged to have the [s]hares transferred to what he assumed to be an escrow account." (NYSCEF 130 at ¶ 38.) On December 13, 2018, Sklarov informed Satterfield by email that the legend restricting the shares had been removed meaning the shares became freely tradeable. (*Id.* at ¶ 39.) Subsequently, the price of Co-Diagnostics shares dropped from $2.18 to $1.15, an unprecedented plummet. (*Id.* at ¶ 40.) On December 17, 2018, Capital LLC countersigned the "Closing Statement and Addendum" form. (*Id.* at ¶ 41.) Satterfield signed as well. (*Id.*)

On December 26, 2018, Satterfield received a disbursement amount of $100,000 in connection with the MLA, but after deductions, the disbursement was approximately $66,709. (*Id.* at ¶ 42.) The next day, Capital LLC sent Satterfield a notice demanding a "top-up" of the shares allegedly because the share price had fallen below $1.50. (*Id.* at ¶ 42.)

Satterfield alleges that Capital LLC, Capital Limited, BR, Sklarov, and defendant Bentley Rothschild Investments (BRI) caused the price of the shares to drop by dumping the shares and manipulating the stock price. (*Id.* at ¶¶ 43, 2.) Satterfield alleges that the defendants dumped the shares even before the closing took place, and before a "single cent was loaned" to Satterfield. (*Id.* at ¶ 45.) Allegedly, days before the closing, defendants sold 10,760 shares on December 13, 2018, and 28,900 shares on December 14, 2017. (*Id.* at ¶ 47.) Whereas Satterfield only received $66,709 as a loan, $1,152,000 worth of the shares have been disposed. (*Id.* at ¶ 50.) Of the 2 million shares that were held by VStock, only about 1,134,897 shares are currently held. (*Id.* at ¶¶ 51, 26, 18.)

650311/2019  SATTERFIELD, BRENT vs. VSTOCK TRANSFER, LLC    Page 4 of 19
Motion No. 008

4 of 19

Accordingly, Satterfield commenced this action for fraud, aiding and abetting fraud, conversion, civil conspiracy to commit fraud and conversion, unjust enrichment, and injunctive relief. He maintains that the defendants engaged in a stock loan fraud scheme, a scheme in which an individual owning shares in a corporation is induced to pledge those shares as collateral for a loan only to find that the "lender" has sold the collateral without paying the loan. (NYSCEF 130 at ¶¶ 1, 2.) Satterfield claims that Capital LLC, Capital Limited, BR, Sklarov, and BRI each participated in this scheme with the goal of obtaining his shares and selling them as soon as possible. (*Id.* at ¶ 3.) He alleges that they never intended to make the loan to him.

## Discussion

CPLR 3211(a)(8) provides that "[a] party may move for judgment dismissing one or more causes of action asserted against him on the ground that ... the court has not jurisdiction of the person of the defendant." "On a motion to dismiss pursuant to CPLR 3211(a)(8), the plaintiff has the burden of presenting sufficient evidence, through affidavits and relevant documents, to demonstrate jurisdiction." (*Coast to Coast Energy, Inc. v Gasarch*, 149 AD3d 485, 486 [1st Dept 2017][citation omitted].) Additionally, the court must accept as true the allegations set forth in the complaint and accord the plaintiff the benefit of every favorable inference. (*Wilson v Dantas*, 128 AD3d 176, 182 [1st Dept 2015].)

### A. Waiver of Jurisdiction

Preliminarily, Capital LLC did not waive its right to assert lack of personal jurisdiction as a defense. CPLR 320 (b) provides that "an appearance of the defendant is equivalent to personal service of the summons upon him, unless an objection to jurisdiction ... is asserted by motion or in the answer as provided in rule 3211." Accordingly, a defendant

650311/2019 SATTERFIELD, BRENT vs. VSTOCK TRANSFER, LLC
Motion No. 008

Page 5 of 19

5 of 19

waives lack of personal jurisdiction as a defense by failing to assert it in the answer or on a

motion to dismiss. (*Deutsche Bank Natl. Trust Co. v Ned*, 114 AD3d 524, 524 [1st Dept

2014].) Once Satterfield filed the complaint in this action,[1] Capital LLC moved to dismiss

for lack of personal jurisdiction, and therefore did not waive the defense.[2] (NYSCEF Doc.

No. 130; NYSCEF Doc. No. 176, Motion 08 filed on May 20, 2019.) Although Satterfield

argues that Capital LLC waived the defense by demanding a complaint and moving to

dismiss for failure to file a complaint, "a demand or [such motion] does not of itself

constitute an appearance in the action." (CPLR 3012 [b].) Capital LLC has raised

jurisdiction as a defense from the inception of this litigation, and consistently maintained

that position in subsequent motion practice. (NYSCEF Doc. No. 112, tr at 3:7-8.)

Satterfield's remaining arguments do not yield an alternative result, and therefore, the court

will consider whether a basis for personal jurisdiction exists with respect to Capital LLC

and the other moving defendants.

### B. General Jurisdiction

Satterfield fails to allege or otherwise present sufficient evidence to demonstrate

general jurisdiction over the defendants. CPLR 301 states that "[a] court may exercise

such jurisdiction over persons, property, or status as might have been exercised

heretofore." When there is a basis for general jurisdiction under CPLR 301, personal

jurisdiction over a defendant exists. (*Magdalena v Lins*, 123 AD3d 600, 601 [1st Dept

2014].) A basis for general jurisdiction exists when a limited liability company's affiliations

with New York are so continuous and systematic as to render it at home in New York.

---

[1] This case began on January 16, 2019 with a Summns and Notice and OSC to stop
Vstock from transferring shares. (NYSCEF 1; 11).

[2] Capital LLC has not yet filed an answer.

**650311/2019  SATTERFIELD, BRENT vs. VSTOCK TRANSFER, LLC**
**Motion No.  008**                                                    **Page 6 of 19**

6 of 19

(*Robins v Procure Treatment Ctrs., Inc.*, 157 AD3d 606, 607 [1st Dept 2018].) In the corporate context, corporations are considered at home in New York, and thus subject to general jurisdiction, when they are incorporated in New York, or have a principal place of business in New York. (*Magdalena,* 123 AD3d 601.)

The parties agree that Capital Limited was not served with process of service, and therefore Capital Limited is dismissed. (NYSCEF Doc. No. 265, Transcript, august 26, 2019, at 3:6-20.)

Satterfield fails to allege or show that BR is incorporated in New York or has a principal place of business in New York. Plaintiff alleges only that BR is a corporation organized under the laws of St. Kitts & Nevis. (NYSCEF 130 at ¶ 9.) Accordingly, a basis for general jurisdiction does not exist with respect to BR.

Satterfield also fails to allege or show that Capital LLC, a Colorado LLC with offices in Georgia, has a principal place of business in New York. (NYSCEF 130 at ¶ 7.) Plaintiff alleges in the complaint only that Capital LLC "represents itself on LinkedIN.com as maintaining an office on 48th Street, New York, NY", however, Satterfield never alleges, argues, or shows that this office is Capital LLC's principal place of business.[3] Indeed, an entity that operates in many places "can scarcely be deemed at home in all of them." (*Daimler AG v Bauman*, 571 US 117, 189 n 20 [2014].) Therefore, a basis for general jurisdiction does not exist with respect to Capital LLC. Because a basis for general

---

[3] Satterfield submits copies of Capital LLC's alleged webpage on www.glassdoor.com apparently to show that anonymous persons have identified themselves as employees of Capital LLC in New York. (NYSCEF Doc. Nos. 195 and 196.) However, these submissions do not demonstrate that Capital LLC's principal place of business is in New York. Such "website information . . . is, by itself, insufficient to meet [the] ultimate burden of establishing jurisdiction." (*Venegas v Capric Clinic*, 147 AD3d 457, 458 [1st Dept 2017].)

jurisdiction does not exist with respect to these defendants, the court considers whether a

basis for long-arm jurisdiction exists.

## C. Long-Arm Jurisdiction

When there is a basis for long-arm jurisdiction under CPLR 302, personal

jurisdiction over a defendant exists, and here, Satterfield alleges or presents sufficient

evidence to demonstrate jurisdiction over Capital LLC, Sklarov and BR.

### 1. Transacting Business Within New York

CPLR 302 (a) (1) provides that "a court may exercise personal jurisdiction over any

non-domiciliary ... who in person or through an agent ... transacts any business within the

state ... ." "It is a 'single act statute' and proof of one transaction in New York is sufficient to

invoke jurisdiction ... ." (*Kreutter v McFadden Oil Corp*, 71 NY2d 460, 467 [1988][citations

omitted].) To determine if jurisdiction exists, a two-prong test is used. (*Rushaid v Pictet &*

*Cie*, 28 NY3d 316, 323 [2016].) "[U]nder the first prong[,] the defendant must have

conducted sufficient activities to have transacted business in the state, and under the

second prong, the claims must arise from the transactions." (*Id.*)

"Whether a non-domiciliary is transacting business within the meaning of CPLR 302

(a) (1) is a fact based determination, and requires a finding that the non-domiciliary's

activities were purposeful and established 'a substantial relationship between the

transaction and the claim asserted.'" (*Paterno v Laser Spine Inst*, 24 NY3d 370, 376

[2014][citations omitted].) "Purposeful activities are volitional acts by which the non-

domiciliary avails itself of the privilege of conducting activities within the forum State, thus

invoking the benefits and protections of its laws." (*Id.* [internal quotation marks and

citations omitted].) "[A] non domiciliary transacts business when on his [or her] own

initiative ... [the non-domiciliary] project[s] himself [or herself] into this state to engage in a

650311/2019  SATTERFIELD, BRENT vs. VSTOCK TRANSFER, LLC                    Page 8 of 19
Motion No. 008

8 of 19

sustained and substantial transaction of business." (*Id.* at 377 [internal quotation marks and citations omitted].)  "The lack of an in-state physical presence is not dispositive of the question whether a non-domiciliary is transacting business in New York." (*Id.* at 376.) Indeed, CPLR 302 (a) (1) long-arm jurisdiction may exist "over commercial actors ... using electronic and telephonic means to project themselves into New York to conduct business transactions." (*Id.*)

"To satisfy the second prong of CPLR 302 (a) (1) that the cause of action arise[s] from the contacts with New York, there must be an 'articulable nexus' ... or 'substantial relationship' between the business transaction and the claim asserted." (*Rushaid*, 28 NY3d at 329.)  The inquiry merely requires "a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former." (*Id.*)  "The claim need only be 'in some way arguably connected to the transaction.'" (*Id*, [citation omitted].)

Here, Satterfield has established CPLR 302 (a) (1) long-arm jurisdiction over Capital LLC.  The complaint alleges that Satterfield received approximately 2 million restricted shares that remained with defendant VStock in New York, the transfer agent operating out of New York. (NYSCEF 130 at ¶¶ 11, 16, 26.)  Satterfield also submits the sworn testimony of VStock's compliance officer, Shay Galam, who stated that these shares were initially transferred to VStock from CODX in early 2018. (NYSCEF 190, tr. at 135: 1-2.) Galam swore under oath that Capital LLC engaged in at least two transactions with VStock. (*Id.* at 89:3-9.)  One transaction entailed the transfer of shares from Capital LLC to BR. (*Id.*) The second transaction entailed the transfer of shares from Capital LLC to its broker. (*Id.*)  Galam also discussed an email from Capital LLC to a VStock employee inquiring about lifting the restrictions on the shares. (*Id.* at 127:2-7.)  The email "reiterate[s]

650311/2019  SATTERFIELD, BRENT vs. VSTOCK TRANSFER, LLC    Page 9 of 19
Motion No.  008

9 of 19

Case 1:20-cv-08437-LAK     Document 1-19     Filed 10/09/20     Page 26 of 35

as previous emails" that Capital LLC is prohibited from transferring the shares. (*Id.*) The email is authored by Sklarov. (*Id.* at 127:17-20.) Galam further provided sworn testimony that it was possible to lift the restrictions on the shares but still hold the shares at the transfer agent's office. (*Id.* at 139:7-10.) Based on these allegations, Capital LLC engaged in purposeful activities or volitional acts by which it availed itself of the privilege of conducting activities within New York, thus invoking the benefits and protections of New York's laws. By initiating multiple transactions with New York based VStock to transfer scores of the 2 million shares, while also routinely corresponding with VStock about the shares' restrictions, Capital LLC projected itself into New York to engage in a sustained and substantial transaction of business. To say these transactions are "in some way arguably connected" to Satterfield's claims is a gross understatement. Indeed, these transactions are the very foundation of Satterfield's fraud claims insofar as he alleges that Capital LLC entered into a sham loan agreement simply to gain control of the shares and sell them off. Accordingly, the two prongs of CPLR 302 (a) (1) have been satisfied at to Capital LLC.

### 2. Agency

Because Sklarov represented Capital LLC "during [its] participation in purposeful acts in this State ... the fact that he acted for [Capital LLC] should not necessarily relieve him from responding to [Satterfield's] claims against him" in the event that Sklarov "acted improperly" in his capacity as managing member. (*Kreutter*, 71 NY2d at 470.) Here, Sklarov was the "primary actor in the transaction[s] with [VStock] in New York", not merely some employee of Capital LLC. (*Id.*) Accordingly, Capital LLC was acting as the agent of Sklarov such "that its actions are attributable to him." (*Id.* at 467.) To demonstrate this sort of agency, the plaintiff "need not establish a formal agency relationship" between the

**650311/2019  SATTERFIELD, BRENT vs. VSTOCK TRANSFER, LLC**
**Motion No. 008**

**Page 10 of 19**

10 of 19

individual officer and the entity. (*Id.*)  The plaintiff "need only convince the court that the [entity] engaged in purposeful activities in this State in relation to his transaction for the benefit of and with the knowledge and consent of the [individual officer], and that [the individual officer] exercise[d] some control over [the entity] in the matter." (*Id.*)  Here, the complaint contains various allegations that Sklarov "exercises dominion and control" over Capital LLC. (NYSCEF 130 at ¶ 12.)  Every agreement here, including the MLA and subsequent addenda, were signed by Sklarov in his capacity as managing member of Capital LLC.  The record indicates either explicitly or implicitly that Sklarov controls Capital LLC because he is the only individual directing the LLC's activities.  Further, Satterfield's sworn testimony establishes that Sklarov was the prime mover of these transactions in spite of his use of Capital LLC to complete them. (*See generally* NYSCEF 190.)  For instance, when asked under oath, "[d]id you ever come to learn who was trading shares in your stock from December 11th 2018 to … December 27th, 2018", Satterfield answered, "[y]es … [t]hey came from Val Sklarov, America 2030." (NYSCEF 190 at 59:4-8.)  Satterfield added, "as our counsel reached out to The Bank of New York, we acquired additional records that showed that Val Sklarov had been selling on a near daily basis from the day the shares hit his account." (*Id.* at 60:3-6.)  Accordingly, there is ample evidence in the record indicating that Capital LLC transacted business in New York for the benefit of, and with the knowledge and consent of Sklarov.  Therefore, a basis for CPLR 302 (a) (1) long-arm jurisdiction exists with respect to Sklarov under an agency theory[4].

---

[4] An additional basis for CPLR 302 (a) (1) long-arm jurisdiction exists with respect to Sklarov insofar as his agent, Leib Schaeffer, operated out of New York.  For instance, when asked under oath, "[d]id you ever become aware as to whether or not [Schaeffer] was acting in this transaction as Mr. Sklarov's agent", Satterfield answered, "yes." (NYSCEF 190 at 56:7-9.)  Satterfield clarified that "[Schaeffer] routinely sent e-mails, texts, that were clear that he was helping negotiation proceeding[s] … on [Sklarov's] behalf." (*Id.* at 56:11-14.)  When asked, "[d]id you ever ascertain where Mr. Schaeffer was located",

Page 11 of 19

650311/2019  SATTERFIELD, BRENT vs. VSTOCK TRANSFER, LLC
Motion No. 008

11 of 19

### 3. Tortious Act Within New York

The transactions noted above also provide a basis for long-arm jurisdiction under CPLR 302 (a) (2). CPLR 302 (a) (2) provides that "a court may exercise personal jurisdiction over any non-domiciliary … who in person or through an agent … commits a tortious act within the state … ." The non-domiciliary must have committed tortious conduct in New York (*Seevers v Tang*, 268 AD2d 249, [1st Dept 2000]) meaning the alleged tortious act occurs in New York. (*Keane v Kamin*, 94 NY2d 263, 266 [1999].) Although "our courts have traditionally required the defendant's presence here at the time of the tort" (*Pramer S.C.A. v Abaplus Intl. Corp.*, 76 AD3d 89, 97 [1st Dept 2010]), the First Department has affirmed that "[a] defendant with access to computers, fax machines etc., no longer has to physically enter New York to perform a financial transaction which may be criminal or tortious." (*Banco Nacional Ultramarino v Chan*, 169 Misc. 2d 182, [Sup Ct, NY County 1996], affd 240 AD2d 253.) For instance, "[u]sing a New York bank account for a fraudulent scheme constitutes a tort within New York." (*FIA Leveraged Fund Ltd. V Grant Thornton LLP* (150 AD3d 492, 495 [1st Dept 2017].)

Here, it is undisputed that the shares were held by VStock which operates out of New York. Accordingly, Capital LLC and Sklarov's use of New York-based VStock for this alleged fraudulent scheme also constitutes a tort within New York.

### 4. Conspiracy Jurisdiction

Satterfield alleges and presents sufficient evidence to demonstrate jurisdiction over BR insofar as there are allegations and evidence indicating that BR "was a party of a

Satterfield responded, "[h]e was in New York." (NYSCEF 190 at 57:1-5.) The court notes that Satterfield submitted the transcript of Schaeffer's deposition in addition to hearing transcript. (NYSCEF 198.) However, the court declined to consider the transcript of Schaeffer's deposition because it was not certified by the court reporter. (*Id.* at 130.)

650311/2019  SATTERFIELD, BRENT vs. VSTOCK TRANSFER, LLC        Page 12 of 19
Motion No. 008

12 of 19

conspiracy involving the commission of several overt tortious acts in New York." (*Lawati v Montague Morgan Slade Ltd.*, 102 AD3d 427, 428 [1st Dept 2013].)

"For purposes of [CPLR 392 (a) (2)], a coconspirator can be an agent" (*Small v Lorillard Tobacco Co*, 252 AD2d 1, 17 [1st Dept 1998]) especially when the "complaint contains allegations of a conspiracy with tortious acts committed within this jurisdiction by some of the conspirators." (*Reeves v Phillips*, 54 AD2d 854, 845 [1st Dept 1976].) The requirements for this conspiracy jurisdiction are set out in *FIA Leveraged Fund Ltd. v Grant Thornton LLP* (150 AD3d 492, 495 [1st Dept 2017].)  Specifically, plaintiff must allege in the complaint (1) a corrupt agreement between two or more parties, (2) an overt act in furtherance of the agreement, which constitutes an independent tort or wrongful act, (3) the defendant's intentional participation in the furtherance of the plan or purpose, and (4) resulting damages or injury.  (*Weinberg v Mendelow*, 113 AD3d 485, 487 [1st Dept 2014].)  The "mere conclusory claim that an activity is a conspiracy does not make it so especially when the complaint fails to establish that the alleged coconspirators knew their act would have an effect in New York." (*Pramer S.C.A. v Abaplus Intl. Corp.*, 76 AD3d 89, 97 [1st Dept 2010][ citations omitted].)  Additionally, the plaintiff must establish the requisite relationship between the defendant and its New York co-conspirators by showing that the defendant had an awareness of the effects in New York of its activity, the activity of the co-conspirators in New York was to the benefit of the out-of-state conspirators, and the co-conspirators acting in New York acted at the direction or under the control, or at the request of or on behalf of the out-of-state defendant.  (*Lawati v Montague Morgan Slade Ltd.*, 102 AD3d at 428 citing *Best Cellars Inc. v Grape Finds at Dupont, Inc.*, 90 F Supp 2d 431, 446 [SD NY 2000].)

650311/2019  SATTERFIELD, BRENT vs. VSTOCK TRANSFER, LLC
Motion No.  008

Page 13 of 19

13 of 19

Here, the first factor is satisfied because the complaint alleges a corrupt agreement among Capital LLC, Sklarov, and BR insofar as these defendants allegedly engaged in a stock loan fraud scheme. (NYSCEF 130 at ¶ 82.) The scheme centered around Capital LLC and BR's promise to provide a loan to Satterfield as a means of gaining control of his shares only to sell the shares without paying the loan. The second factor is satisfied because BR made an overt act in furtherance of the agreement when it entered into the November 2018 Addendum through its agent and "operations manager", Sklarov, and stated its intention to "fulfill all the obligations of the MLA" upon "the release of restriction by VStock Transfer." (NYSCEF 179 at exhibit B, 5 and § I.[e]-[f].) In accordance, with the November 2018 Addendum signed by Satterfield, and Sklarov in his capacity as managing member of Capital LLC, and operations manager of BR, BR was assigned the shares. The third factor is satisfied because BR's intentional participation in the furtherance of the plan or purpose is inferred by Sklarov's signature on the assignment in his capacity as operations manager. The fourth factor is satisfied because Satterfield has been damaged by this fraudulent scheme insofar as he was promised $3.5 million, of which he only received approximately $66,709, and he is now bereft of his shares. The fifth factor is satisfied because BR had an awareness of the effects in New York of its activities insofar as the assignment notes VStock's participation in these transactions and Sklarov signed the assignment on behalf of BR. The sixth factor is satisfied because the activity of Capital LLC and Sklarov in New York was to the benefit of BR, the entity that ultimately was assigned more than a million of the shares. Finally, the seventh factor is satisfied because there is ample evidence that Capital LLC and Sklarov acted in New York at the request of or on behalf of BR. Accordingly, a basis for CPLR 302 (a) (2) long-arm jurisdiction exists with respect to BR.

650311/2019  SATTERFIELD, BRENT vs. VSTOCK TRANSFER, LLC                    Page 14 of 19
Motion No.  008

14 of 19

### D. Federal Due Process

"Exercise of personal jurisdiction under the long-arm statute must comport with federal constitutional due process requirements. (*Rushaid*, 28 NY3d 316 at 330.) "[A] nondomiciliary must have 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" (*Id.* at 331 [citations omitted].) "The 'minimum contacts' test 'has come to rest on whether a defendant's conduct and connection with the forum State are such that it should reasonably anticipate being hailed into court there.'" (*Id.* at 331 [citations omitted].) These "minimum contacts exist where a defendant 'purposefully avails itself of the privilege of conducting activities within the forum State.'" (*Id.* [citation omitted].) Here, Capital LLC and Sklarov's numerous transfers, transactions, and communications with VStock "to achieve the wrong complained of in this suit satisfies the minimum contacts components of the due process inquiry."[5] (*Id.* [internal quotation marks and citation omitted].) Additionally, personal jurisdiction here does not offend notions of fair play and substantial justice.

> "Whether personal jurisdiction offends 'notions of fair play and substantial justice' depends on a consideration of 'the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.'"

(*Rushaid*, 28 NY3d 316 at 331.) Although Capital LLC is a Colorado LLC with offices in Kennesaw, Georgia, and Sklarov resides in Chicago, "the burden of litigation in New York

---

[5] Both the Court of Appeals and the Supreme Court of the United States have acknowledged "that it is constitutionally permissible to subject an individual participating in a transaction in a foreign State to long-arm jurisdiction even though his contacts with the forum were made in a corporate capacity." (*Kreutter*, 71 NY2d 460, 470, 470-471 [1988].)

650311/2019 SATTERFIELD, BRENT vs. VSTOCK TRANSFER, LLC
Motion No. 008

Page 15 of 19

15 of 19

is reduced by 'modern communication and transportation.'" (*Id.* [citations omitted]; NYSCEF 130 at ¶¶ 6, 7.) Indeed, the parties memorialized in the MLA that their disputes shall be arbitrated in New York begging the question whether litigating in New York is any burden at all. Additionally, the complaint implicates the fraudulent use of a New York limited liability company, an issue of great importance to the State. (*Rushaid*, 28 NY3d 316 at 331.) Satterfield also has an interest in obtaining convenient and effective relief as indicated by his commencement of this action here in the Commercial Division where complex commercial matters are routinely adjudicated. "On balance, and considering all the remaining factors, the maintenance of suit here does not 'offend traditional notions of fair play and substantial justice.'" (*Rushaid*, 28 NY3d 316 at 331.)

   With respect to BR, "by joining the conspiracy with the knowledge that overt acts in furtherance of the conspiracy had taken place in New York ... purposely [availed itself] of the privilege of conducting activities within [New York]." (*Lawati*, 103 Ad3d at 429.) In any event, the minimum contacts requirement is also satisfied "as a result of [BR's] acceptance of transfer of shares to it" from VStock. (*see* NYSCEF 179 at exhibit B.) Accordingly, asserting jurisdiction over BR comports with due process considerations.


### E. Forum Non Conveniens

   CPLR 327 provides "[w]hen the court finds that in the interest of substantial justice the action should be heard in another forum, the court ... may stay or dismiss the action in whole or in part on any conditions that may be just ... ." "In general, a decision to grant or deny a motion to dismiss on forum non conveniens grounds is addressed to a court's discretion ... ." (*Mashreqbank PSC v Ahmed Hamad Al Gosaibi & Bros. Co.,* 23 NY3d 129, 137–138 [2014].) "Forum non conveniens is a defense based upon the inconvenience of

650311/2019  SATTERFIELD, BRENT vs. VSTOCK TRANSFER, LLC        Page 16 of 19
Motion No. 008

16 of 19

the New York court as a forum of choice." (*National Union Fire Ins. Co. of Pittsburg, Pa. v Jordache Enters.*, 205 AD2d 341, 343 [1st Dept 1994].)  It is a "nexus-oriented defense" that requires the court to balance certain factors.  (*Id; see also Nasser v Nasser*, 52 AD3d 306, 306 [1st Dept 2008].)

As noted above, the action involves the use of a New York LLC to commit fraud in New York, and therefore, there is a substantial nexus between this jurisdiction, the subject matter of the action, and the parties.  (*National Union Fire Ins. Co. of Pittsburg, Pa. v Jordache Enters.*, 205 AD2d 341, [1st Dept 1994]; *compare Gibson Greetings Card, Div. of C.I.T. Fin. Corp. v Gateway Transp. Co.*, 41 AD2d 918, 919 [1st Dept 1973].)  Although "residency here ... is but one factor to be considered," the court notes the defendant VStock has its principal place of business in New York.  (*Nasser*, 52 AD3d at 306.)  Capital LLC and Skarlov are not residents of New York, but as previously noted, there is little if any potential hardship to them in litigating in New York.  (*Id.*)  There is little if any burden on the New York courts to hear this matter insofar as the New York courts have a great deal of expertise in adjudicating complex commercial matters.  (*Id.* at 308 ["the court properly considered the burden of the New York courts"].)  Moreover, the causes of action arose in New York, and would not "involve the applicability of foreign law."  (*Id.* at 307.)  There are certainly other forums available to the parties.  (*Id.* at 306.)  In considering these factors, among others, dismissal pursuant to CPLR 327 is denied.

<u>F. Arbitration</u>

"Arbitration is a creature of contract. Where parties have agreed upon a forum for resolution of controversy, courts should not rewrite their agreement." (*Matter of Intercontinental Packaging Co. v China Natl. Cereals, Oils & Foodstuffs Import & Export Corp., Shaghai Foodstuffs,* 159 Ad2d 190, 195 [1st Dept 1990].)  "Under both Federal and

650311/2019  SATTERFIELD, BRENT vs. VSTOCK TRANSFER, LLC
Motion No. 008

Page 17 of 19

17 of 19

New York law, it is settled that unless it can be established that there was a 'grand scheme' to defraud which permeated the entire agreement, including the arbitration provision, a broadly worded arbitration provision will be deemed separate from the substantive contractual provisions and the agreement to arbitrate may be valid despite the underlying allegation of fraud."[6]  In the complaint, Satterfield, quite literally, alleges that Capital LLC and Sklarov "participated in a scheme to defraud" him.  (NYSCEF 130 at ¶ 2.)  Moreover, Satterfield produced sufficient evidence to indicate that the subsequent modifications to the MLA including the St. Kitts and Nevis arbitration provision were permeated with fraud.  For instance, when asked, why he signed the November 2018 Addendum that provided for arbitration in St. Kitts & Nevis, Satterfield answered, "Mr. Sklarov informed me that if I did not he would take all of my shares."  (NYSCEF 190, tr. at 62:8-13.)  Satterfield added, "whenever [Sklarov and Schaeffer] wanted me to sign a new document or new amendment, I would get a whole lot of sales rhetoric right at that moment; oh, this is going to be wonderful … [v]ersus in November the tone had changed completely to we are going to take all your stock."  (*Id.* at 120:8-14.)  When asked, "[d]o you believe that Mr. Sklarov intentionally drove down the price of your shares", Satterfield answered, "[a]bsolutely." (*Id.* at 110:23-25.)  Indeed, Satterfield was asked, "[s]o before you recovered the executed agreement for Mr. Sklarov, how many shares had Mr. Sklarov sold to your knowledge based upon this composit", and Satterfield responded "a little more than 45,000 shares." (*Id.* at 95:17-20.)  Satterfield additionally described the "several lines of evidence"

---

[6] The court discussed this issue at length in its prior decision (NYSCEF 200) granting plaintiff's motion for a preliminary injunction enjoining defendants America 2030 Capital, LLC, Bentley Rothschild Ltd. Corp. and Sklarov from participating in the Nevis arbitration. After an emergency hearing on whether the amendments are permeated with fraud, the court found plaintiff established likelihood of success.  The court declines to reiterate that analysis here although it is incorporated by reference.

650311/2019  SATTERFIELD, BRENT vs. VSTOCK TRANSFER, LLC                    Page 18 of 19
Motion No. 008

18 of 19

indicating that the shares were sold by Sklarov ranging from Sklarov's emails to the shares turning up in the Bank of New York. (NYSCEF Doc. No. 190 at 59-60.) Accordingly, the court finds that the second addendum signed by Satterfield containing the St. Kitts & Nevis arbitration provision was permeated with fraud.

Accordingly, it is

ORDERED that motion sequence number 008 is granted to the extent that the complaint is dismissed against America 2030 Capital Limited; and it is further

ORDERED that America 2030 Capital LLC, Val Sklarov, Brent Satterfield, and Bentley Rothschild Capital Limited Corp. are compelled to arbitrate in New York.

Motion Seq. No. 008

10/30/19
DATE

ANDREA MASLEY, J.S.C.
HON. ANDREA MASLEY

CHECK ONE:               [X] CASE DISPOSED          [ ] NON-FINAL DISPOSITION
                        [ ] GRANTED    [ ] DENIED    [X] GRANTED IN PART    [ ] OTHER
APPLICATION:            [ ] SETTLE ORDER            [ ] SUBMIT ORDER
CHECK IF APPROPRIATE:   [ ] INCLUDES TRANSFER/REASSIGN  [ ] FIDUCIARY APPOINTMENT  [ ] REFERENCE

650311/2019   SATTERFIELD, BRENT vs. VSTOCK TRANSFER, LLC          Page 19 of 19
Motion No. 008

19 of 19