# EXHIBIT 28

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ROTHSCHILD & CO. :
CONTINUATION HOLDINGS A.G., :
et al., :
 :
 :
 Plaintiffs, :
 : Civil Action No.
 v. : 1:19-cv-03561-AT
 :
VAL SKLAROV, et al., :
 :
 :
 :
 Defendants. :

## PRELIMINARY INJUNCTION ORDER AND MEMORANDUM

Before the Court is Plaintiffs' Motion for Preliminary Injunction. [Doc. 6.] On October 10, 2019, this Court held oral argument of the motion, and granted the motion pending final approval of a proposed injunction order. (*See* Transcript, Doc. 34; *see also* Memorandum Opinion on Jurisdictional Ruling, Doc. 41.) The Motion for Preliminary Injunction is GRANTED based on the evidence adduced at the Preliminary Injunction hearing and submitted as part of the record, and for the reasons discussed below.

## I. PROCEDURAL HISTORY

On August 6, 2019, Plaintiffs filed a Complaint against Defendants, alleging trademark infringement-related claims under the Lanham Act, as well as under Georgia state law. (Complaint, Doc. 1.) Simultaneously with the filing of its Complaint, Plaintiffs filed a Motion for Preliminary Injunction. (Doc. 6-1.) The

motion was supported by a memorandum of law and declarations with exhibits provided by John Carroll (Doc. 6-2) (**"Carroll Decl**aration**"**) and Christopher Campbell (Doc. 6-6) (**"Campbell Decl**aration**"**). Plaintiffs filed executed returns of service of the Summons and Complaint on Defendants Sklarov (Doc. 12), America 2030 Capital Limited (Doc. 15), Bentley Rothschild Capital Limited (Georgia) (Doc. 16), Bentley Rothschild Financial LLC (Doc. 17), Black Rock Capital LLC (Doc. 18), and Bentley Rothschild Capital Limited (St. Kitts and Nevis) (Doc. 20). None of these Defendants contested service.

On October 1, 2019, in lieu of an Answer, Defendants filed what was styled **"Defendants' Rule 12(b) Motions."** (Doc. 23.) Concurrently with their Motion to Dismiss, Defenda**nts filed their memorandum of law in opposition to Plaintiffs'** Motion for Preliminary Injunction. (Doc. 26). On October 7, 2019, Plaintiffs filed a Reply in support of their Motion for Preliminary Injunction (Doc. 27) and a Response in Opposition to Defend**ants' Motion to Dismiss** (Doc. 28).

The Court conducted a hearing on the Motions on October 10, 2019. (Minute Entry, Doc. 31.) During the hearing, the Court denied Defendants' Motion to Dismiss (Doc. 23) from the bench. (Doc. 34 at 4–5, 46–47.) Following argument, the Court directed counsel for Plaintiffs to submit a revised proposed written order concerning the grant of injunctive relief. (Doc. 34 at 60.) The Plaintiffs' first proposed injunctive terms were insufficient for the reasons noted in the Court's October 31, 2019 Order. (*See* Oct. 31, 2019 Order by docket entry only.) In that same Order, the Court directed Plaintiffs to file a more detailed

proposed written order, and directed Defendants to file any objections thereto.
(*Id.*) Plaintiffs submitted a Revised Proposed Order for Preliminary Injunction
(Doc. 38) on November 11, 2019,[1] and Defendants filed objections on November
18, 2019 (Doc. 40).

## II.    BACKGROUND

### A.    Plaintiffs' Complaint

On August 6, 2019, Plaintiffs filed a Complaint against Defendants,
alleging trademark infringement-related claims under the Lanham Act, as well as
under Georgia state law. (Complaint, Doc. 1.) Plaintiffs are part of the Rothschild
& Co Group, which provides financial services throughout the world. (Doc. 1 at ¶
27.) The Rothschild & Co Group is controlled by members of the Rothschild
family, "one of the most important and successful banking families in the world."
(*Id.*)

The Rothschild & Co Group in the United States includes (1) Plaintiff
Rothschild & Co US Inc. ("Rothschild US"), a registered broker-dealer that
provides corporate finance, financial advisory, and general investment banking
services, including to clients in Georgia; (2) Plaintiff Rothschild & Co Asset
Management US Inc. ("Rothschild AM"), which provides financial investment
services to individuals and institutions, including clients in Georgia; and (3)
Plaintiff Rothschild & Co Continuation Holdings AG (Rothschild Switzerland), a
Swiss joint-stock company that directly or indirectly owns the other Rothschild

---

[1] Some portions of the Plaintiffs' Revised Proposed Order for Preliminary Injunction (Doc. 38)
have been incorporated into the Court's reasoning herein.

Plaintiffs. (*Id.* at ¶¶ 32–33.) Rothschild Switzerland is the registered owner of two U.S. trademark registrations for financial services.[2] This entity also licenses other Rothschild & Co entities to use the marks. (Doc. 1 at ¶ 36.)

The Complaint alleges the Rothschild marks have acquired substantial reputation and good will, distinctiveness, fame, and secondary meaning, and have become associated in the U.S. and the world with the financial services businesses of the Rothschild Group members operating in the U.S. (Doc. 1 at ¶ 38.) The Complaint further alleges that Defendant Val Sklarov and companies he controls (including several named defendants in this case) have been involved in litigation in the U.S. and Hong Kong in which Sklarov and his companies are alleged to have engaged in fraud in connection with stock loans. (*Id.* at ¶¶ 44–52.) The Complaint alleges Sklarov caused the corporate defendants to be organized, controls and directs the corporate defendants, and was the moving force behind the alleged infringements. (*Id.* at ¶¶ 18–19.)

The Complaint's main allegation is that Sklarov and the other Defendants have been infringing Plaintiffs' trademark rights by using the mark "Bentley Rothschild" to identify financial services offered within the U.S. The alleged infringing uses include:

(1)     registering the domain name www.bentleyrothschild.com;

(2)     operating a website at www.bentleyrothschild.com (the "Website"), which displays the "Bentley Rothschild" mark on its banner and throughout the

---

[2] ROTHSCHILD (U.S. Reg. No. 3447667; and ROTHSCHILD & CO (U.S. Reg. No. 5614371). (Doc. 1 at ¶ 36.)

Website, and offers to provide a wide range of financial services, including from an office of Defendant Bentley Rothschild Capital Limited located in Atlanta, Georgia (*See* Doc. 1-11);[3]

(3)     offering financial advisory services through the Website, including investment management and advice to high net worth individuals and other clients, which are alleged to be similar to the services Plaintiffs offer in the U.S. (*See* Doc. 1 at ¶ 62; Doc. 1-13);

(4)     issuing a term sheet for a collateralized loan, dated March 4, 2019, under the name "Bentley Rothschild Capital Limited (the "Term Sheet," Doc. 1-14). The Term Sheet contained a description of the Rothschild Family, and stated:

> Bentley Rothschild Capital Limited is honored to continue to engage in the tradition of global finance by offering loans against publicly traded securities for our high-net worth clients located throughout the world. Our service is as exceptional now as it has been by the Rothschild dynasty during the past 250 years.

(*Id.*) The Term Sheet identifies **the company as "Bentley R**othschild Capital Limited, member of the Rothschild family of companies**."** (*Id.*) The Term Sheet also contains **the legend "Rothschild Family of Companies** © 1986-2019 All **Rights Reserved."** (*Id.*) The Term Sheet identifies "Bentley Rothschild Capital Limited" as having an address at 1201 Peachtree Street, Suite 2300, Atlanta, Georgia 30309 (*Id.*);

---

[3] The Complaint included attached portions of the Website allegedly accessed and printed on July 8, 2019. (Doc. 1-11.)

(5)     causing defendant America 2030 Capital Limited to issue a press release dated January 12, 2019, which announced it was providing stock financing in the U.S. and other countries.  The release, which is available on the internet, contained the statement that "[t]he firm is utilizing Bentley Rothschild Capital Ltd. of Nevis and Bahamas to structure and fund several of its global stock loan transactions.  The executives at America 2030 Capital believe that the Bentley Rothschild name will be a major player in structuring and funding **publicly traded shareholders for years to come."** (Doc. 1-15.);

(6)     applying to the U.S. Patent and Trademark Office to register BENTLEY ROTHSCHILD as a trademark.  (Doc. 1 at ¶ 72.)  This application was filed by Defendant Black Rock Capital LLC, whose general counsel is JT Singh.[4] (*Id.*)  Mr. Singh also represented Defendants Sklarov, Bentley Rothschild Capital Limited and Bentley Rothschild Financial Limited in pre-litigation communications with counsel for the Plaintiffs.  (Doc. 1-17.)  The description of financial services in the BENTLEY ROTHSCHIILD application is virtually identical to the description of services in the ROTHSCHILD and ROTHSCHILD & CO trademark registrations and appears to have been copied from the latter. (Doc. 1-2.)

B.     **Plaintiffs' Motion** for Preliminary Injunction

---

[4] Mr. Singh informed the Court that he would be moving for admission in this matter *pro hac vice.* (Transcript, Doc. 34 at 4.) To date, no such application for admission from Mr. Singh has been received on the Court's docket. To the extent that Mr. Singh anticipates representing any of the defendants at any future hearing, or in any filing, he is advised to file the application for admission *pro hac vice within* 14 days of this Order.

Plaintiffs' Motion for Preliminary Injunction (Doc. 6-1) is supported by a memorandum of law and declarations with exhibits of John Carroll (Doc. 6-2) (**"Carroll Decl**aration**"**) and Christopher Campbell (Doc. 6-6) (**"Campbell** Declaration**"**). The Carroll Declaration asserted that when a new financial **business uses "Rothschild" as part of a mark, potential consumers of fin**ancial services will understand this to mean that a founder or leader of the Company is a member of the Rothschild Family and that the business is associated with the Rothschild & Co companies, and that this belief will be heightened if the business claims to be **functioning in the tradition of the "Rothschild Dynasty"** or is part of **the "Rothschild Family of Companies."** (Doc. 6-2 at ¶ 22).

The memorandum of law in support of the Motion argued that Plaintiffs satisfied the four elements required for a court to grant a preliminary injunction. Plaintiffs contended they were likely to prevail on their Lanham Act infringement and unfair competition claims for a host of reasons, including: (1) **Rothschild Switzerland** was the owner of the ROTHSCHILD Marks; (2) the ROTHSCHILD Marks were strong; (3) the ROTHSCHILD Marks were **similar to the "Bentley Roths**child" mark used by Defendants; (4) the marks were used for similar services; (5) the likely trade channels and customers for the services offered under the marks were similar; (6) both the Rothschild & Co companies and the Bentley Rothschild companies used the Internet to advertise their services; (7) there w**as evidence Defendants had adopted the "Bentley Rothschild" mark to** wrongfully trade on the accumulated goodwill in the Rothschild Marks; and (8) a

recent inconspicuous disclaimer added to the www.bentleyrothschild.com website did not alleviate confusion. (*See, generally* Doc. 6-1.) Plaintiffs also argued that **Defendants' use of "Bentley Rothschild" in schemes** alleged to be fraudulent tarnished the famous Rothschild Marks. (Doc. 6-1 at 20–21.)

Plaintiffs asserted they are suffering and would continue to suffer irreparable harm from the Defendants**' use of "Bentley Rothschild" through harm** to reputation, loss of goodwill, and loss of control over reputation and goodwill. (Doc. 6-1 at 23.) They argued the balance of hardships and the public interest strongly favored grant of a preliminary injunction. (*Id.* at 23–24.)

C.   **Defendants' Opposition** t**o Plaintiffs' Moti**on for Preliminary Injunction

Defendants filed a Memorandum of L**aw in opposition to Plaintiffs' Motion** for Preliminary Injunction. (Doc. 26). They contend the motion should be denied because (1) the Court lacked personal jurisdiction[5] over Defendants Bentley Rothschild Capital Limited (St. Kitts and Nevis), Bentley Rothschild Financial LLC, America 2030 Capital Limited, and Black Rock Capital LLC; (2) the facts alleged in the Complaint are not sufficient to es**tablish Defendant Sklarov's** personal liability; (3) Plaintiffs were unlikely to succeed on the merits of their Lanham Act claim; and (4) any injunction should be limited to the U.S. because

---

[5] The Court issued a separate Memorandum Opinion to address its exercise of personal jurisdiction over the Defendants. (Doc. 41.) In that Memorandum Opinion, the Court noted that the record at this time is insufficient to support the Court's exercise of personal jurisdiction over the America 2030 Defendants, but that jurisdictional discovery was warranted based on Plaintiffs' preliminary jurisdictional showing. (Doc. 41 at 14–19.) The Court may modify this Preliminary Injunction Order in the event that the limited discovery period alters the Court's analysis of the exercise of personal jurisdiction over any Defendant.

the Court lacks subject matter jurisdiction to apply the Lanham Act to the
**Defendants' foreign a**ctivities. (*See, generally, id.*)

D.    **Plaintiffs' Additional Papers**

On October 7, 2019, Plaintiffs filed a Reply brief in support of their Motion
for Preliminary Injunction (Doc. 27) and a Response in Opposition to
**Defendants'** Motion to Dismiss (Doc.28.) Plaintiffs also filed a declaration and
exhibit showing that since the Motion was filed, the Website had been geo-
blocked to the U.S., meaning that computer users in the U.S. seeking to access the
Website saw only a legend saying **that "Access to this website** from United States
**of America is forbidden" and that services offered on the** Website "are not
available in the United States of America or to citizens of United States of
**America."** (Deutsch Decl., Doc. 27-5 at ¶ 17; Exh. D., Doc. 27-9.)

However, another declaration, executed by a declarant in Great Britain,
and filed by Plaintiffs, states that the declarant was able to access the full Website
as of September 23, 2019.  (Bradley Decl., Doc. 27-1 at ¶¶ 3−4; Exh. C., Doc. 27-
4.) The full copy of the Website pages, attached to the declaration (Doc. 27-4),
appear to be largely the same as the Website pages previously accessible in the
U.S., including advertising a broad range of financial services available from the
owner of the Website. (Campbell Decl., Doc. 1-13; Exh. M, Doc. 6-18.)

In particular, the Website continued **to show "Bentley** Rothschild Capital
**Limited"** or at the top of each webpage; referred to this entity throughout the
web**pages as "Bentley Rothschild"; continue**d to claim that Bentley Rothschild

9

Capital Limited has "7 Client Service Centers"; and, on the "Contact Us" page,

listed the only U.S. office location as:

> USA
> Bentley Rothschild Capital Limited
> 1201 W Peachtree Street
> Suite 2300
> Atlanta, GA 30309

(Doc. 27-4).

### E.    Hearing on Motions

The Court held a hearing on October 10, 2019. (Minute Entry, Doc. 31;

Transcript, Doc. 34.) At the hearing, Plaintiffs introduced another document in

support of their Motion for Preliminary Injunction: an application, filed with the

USPTO by Mr. Singh on behalf of Lincoln Capital Ltd., a Belize entity, to register

"MAYER AMSCHEL ROTHSCHILD CAPITAL" as a trademark. (Doc. 32.-1) The

description of services in this application (Doc. 32-1) was virtually identical to

that of the services descriptions in the registrations for the Rothschild Marks

(*Compare* Doc. 32-1 *with* Doc. 1-2). When questioned by the undersigned judge,

Mr. Singh stated that,

> With regards to what is in the application, it was
> asked by the company for me to put it that way. I did
> advise them against it. They wanted to continue forward
> with the language that is in there.  So therefore it was
> submitted.
> However, after the fact, I do believe the company
> is looking to actually withdraw those applications. And
> it just hasn't been proceeded by my office yet. But they
> are looking to withdraw those applications.

(Doc. 34 at 53.)

The Court has considered the amended proposed Order submitted by

Plaintiffs and the objections filed by Defendants. Having reviewed and modified

the proposed order and reviewed all of the evidence, briefs, and original motion

exhibits, the Court GRANTS a preliminary injunction in this matter, based on

the analysis and findings below.

## III.   ANALYSIS

A court may grant a preliminary injunction where the movant establishes:

> (1) a substantial likelihood of success on the merits; (2)
> a substantial threat of irreparable injury; (3) that the
> threatened injury to the plaintiff outweighs the potential
> harm to the defendant; and (4) that the injunction will
> not disserve the public interest.

*Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002). Each of these required

elements for preliminary injunctive relief is satisfied here.

### 1. Likelihood of Success on the Merits

The Complaint sets out federal claims for trademark infringement, unfair

competition, and trademark dilution, as well as state law claims under O.C.G.A. §

10-1-451(b) (anti-dilution); O.C.G.A. § 10-1-370 *et seq.* (unfair and deceptive

trade practices); O.C.G.A. § 23-2-55 (unfair competition); common law

trademark infringement; and common law unfair competition. (*See* Doc. 1.) The

standards governing the state law claims are similar, if not identical, to those

governing the federal trademark claims.   **Univ. of Ga. Athletic Ass'n v. Laite**, 756

F.2d 1535, 1539 n.11 (11th Cir. 1985). The analysis herein will therefore focus on

the federal claims.

11

The Lanham Act prohibits the unauthorized use of a mark in commerce that is confusingly similar to a registered mark. 15 U.S.C. § 1114(1)(a). To prevail on a claim under 15 U.S.C. § 1125(a), which addresses unregistered **marks, "a plaintiff must show (1) that the plaintiff had enforceable trademark rights in the mark or name, and (2) that the defendant[s] made unauthorized use of it such that consumers w**ere likely to confuse the two." *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647–48 (11th Cir. 2007). For purposes of the motion, Rothschild Switzerland owns the registered ROTHSCHILD Marks in the U.S. and common law rights in those marks, and those marks are presumptively valid and enforceable. 15 U.S.C. § 1115(a). In addition, the ROTHSCHILD mark itself, having been registered for over five years and renewed, may be incontestable as a matter of law.[6] The remaining Plaintiffs have been licensed to use the ROTHSCHILD Marks in the U.S. by Rothschild Switzerland. (Doc. 1 at ¶ 36).

The point for decision is therefore whether Plaintiffs have shown a reasonable probabil**ity that at trial, they will establish use of the "Bentley Rothschild" ma**rk creates a likelihood of confusion with the ROTHSCHILD Marks. In the Eleventh Circuit, seven factors are weighed to determine whether a likelihood of confusion exists:

> (1) the str**ength of the plaintiff's mark; (2) the similarity between the plaintiff's** mark and the allegedly infringing mark; (3) the similarity between the products and

---

[6] Defendants do not challenge Plaintiffs' claim that the ROTHSCHILD mark is incontestable as a matter of law.

> services offered by the plaintiff and defendant; (4) the
> similarity of the sales methods; (5) the similarity of
> advertising methods; (6) the defendant's intent, e.g.,
> does the defendant hope to gain competitive advantage
> by associating his product with the plaintiff's
> established mark; and (7) actual confusion.

*N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1220 (11th Cir.
2008).

### a.    The ROTHSCHILD Marks are strong

The Court finds that the ROTHSCHILD Marks are federally registered and
strong marks.[7] (*See* Register, Doc. 6-3; Campbell Decl., Doc. 6-6 at ¶ 4.) Plaintiffs
have provided a Declaration attesting that the ROTHSCHILD Marks are
commercially strong, used for decades in connection with financial services in the
U.S., and worldwide for over two centuries.  (Carroll Decl., Doc. 6-2 at ¶¶ 8–24.)
Defendants do not contest these facts; indeed, their own Term Sheet, provided to
foreign investors, details the continuing fame of the Rothschild Family in
financial services since the 1760s.  (Term Sheet, Doc. 1-14.)

Defendants offer evidence of a number of entities incorporated throughout
the U.S. that **have "Rothschild" somewhere in their corporate name as registered**
with a Secretary of State.  (Doc. 26 at 6.) However, such evidence is not probative
of the strength of the ROTHSCHILD Marks. Defendants provide no evidence of
use of **"Rothschild"** by such entities as part of a trademark for financial services.
*PlayNation Play Sys., Inc. v. Velex Corp.*, 924 F.3d 1159, 1166 (11th Cir. 2019)

---

[7] ROTHSCHILD and ROTHSCHILD & CO are **legally the same mark, as "& CO" has** no separate
source-indicating capacity.  *In re The Paint Prods. Co.*, 8 U.S.P.Q.2d 1863, 1866 (T.T.A.B. 1988).

("[S]imilar marks used by third parties in unrelated businesses or markets do not diminish the strength of a mark in a particular market."). The Court concludes that there is a substantial public association between Plaintiffs and their marks, and that the strength factor therefore favors a finding of likely confusion. *See E. Remy Martin & Co. v. Shaw-Ross Int'l Imports*, 756 F.2d 1525, 1533 (11th Cir. 1985).

> b. *The Marks are similar*

The "Bentley Rothschild" mark is similar in part to the ROTHSCHILD Marks. "Rothschild" is clearly the most prominent part of any mark used to offer financial services. Defendants argue their full corporate names are not similar to the ROTHSCHILD marks. This is irrelevant. Black Rock applied to register BENTLEY ROTHSCHILD as a trademark. (Doc. 1-1.) Defendants use BENTLEY ROTHSCHILD as a trademark on the Website (Docs. 6-19, 27-8) and on the Term Sheet (Doc. 1-14).

Subsequent to the commencement of this action, the USPTO issued a non-final office action (the "USPTO Action") refusing to register BENTLEY ROTHSCHILD due to likelihood of confusion with the ROTHSCHILD Marks. (Doc. 27-8). While the USPTO Action is not binding on the Court, the reasoning of an experienced trademark examiner is relevant to the case and the Motion for Preliminary Injunction. The USPTO found the BENTLEY ROTHSCHILD and ROTHSCHILD Marks to be "identical in part in appearance, sound, and meaning, 'and have the potential to be used . . . in exactly the same manner.'" (*Id.* (citing *In*

*re i.am.symbolic, llc*, 116 U.S.P.Q.2d 1406, 1411 (T.T.A.B. 2015), *aff'd*, 866 F.3d 1315 (Fed. Cir. 2017)).) "Additionally, because they are identical in part, the marks are likely to engender the same connotation and overall commercial impression when considered in connection with applicant's and registrant's respective goods and/or services." (*Id.*) The Court finds that the similarity of the marks factor favors a finding of likely confusion.

> ### c.  *The Marks are used for similar services*

The BENTLEY ROTHSCHILD mark is also used by Defendants to offer services that are virtually identical to those offered by Plaintiffs under the ROTHSCHILD Marks. Indeed, Black Rock, in the application to register BENTLEY ROTHSCHILD, seemingly copied the list of services from the ROTHSCHILD and ROTHSCHILD & CO trademark registrations, adding only two words: "stock loans." (*Compare* Doc. 1-1 *with* Doc. 1-2). Defendants do not dispute the financial services they offer to potential customers on the Website are closely similar to those offered on Plaintiffs' website. The Court also agrees with the USPTO Action on this point, which found the description of service in all three registrations to be "virtually identical" and "it is presumed that the channels of trade and class of purchasers are the same for these [goods] or services." (Doc. 27-8 at 5). This factor thus favors a finding of likely confusion.

> ### d.  *The customer base is similar*

Similarities in consumers of the parties' respective services is probative of likely confusion. *See, e.g., Am. Foods, Inc. v. Golden Flake, Inc.*, 312 F.2d 619,

624 (5th Cir. 1963); *Bell v. Foster*, No. 1:13-CV-405-TWT, 2013 WL 6229174, at
*4 (N.D. Ga. Dec. 2, 2013). Liability may attach if the **parties cater "to the same**
general kinds of individuals,**" even if those individuals** do not actually frequent
**both parties'** businesses. *Safeway Stores, Inc. v. Safeway Disc. Drugs, Inc.*, 675
F.2d 1160, 1166 (11th Cir. 1982); *abrogated on other grounds by Tobinick v.
Novella*, 884 F.3d 1110 (11th Cir. 2018).

As shown from the Website and the list of financial services in the
BENTLEY ROTHSCHILD application, Defendants are using the BENTLEY
ROTHSCHILD trademark to target the same kinds of actual or potential business
investors and consumers who are likely to use the financial advisory and asset
management services of the Plaintiffs, including institutional clients, pension
funds, and high net worth individuals and families. (Carroll Decl., Doc. 6-2 at ¶¶
14–15, 30; Campbell Decl., Doc. 6-6 at ¶ 15, Website, Doc. 6-19; Bradley Decl.,
Doc. 27-1; Website, Doc. 27-4.) This factor thus favors Plaintiffs.

e.    *The advertising means are similar*

Defendants assert they do not seek customers from within the U.S. (Doc.
26 at 7.) However, today the Internet is a major means by which financial
services businesses attract customers and promote their businesses around the
world. Plaintiffs use the website www.rothschildandco.com for the same purpose,
and it can be accessed throughout the world.

Although Defendants may have now blocked their Website to access by
internet users in the United States, the Website can still be accessed by persons

outside the U.S. who wish to obtain financial services or investments inside the U.S., **using the Defendants' o**ffice in Atlanta, Georgia. (*See* Bradley Decl., Doc. 27-1.) Use **of "Rothschild"** in the www.bentleyrothschild.com URL, and use of **"Bent**ley Rothschi**ld" throughout the Website,** creates a serious risk of confusion on the part of international investors and American investors abroad who will be deceived into believing that investing with the **"**Bentley R**othschild" enter**prise is the same as investing with the Rothschild & Co companies.

           f.     ***Defendants'*** *intent*

Where a defendant adopts a mark with the intention of deriving a gain or **benefit from the plaintiff's business goodwill and business reputation, "thi**s fact alone may be enough to justify the inference that there is confusing similar**ity."** *Frehling Enters., Inc. v. Int'l Select Gr*p*., Inc.*, 192 F.3d 1330, 1340 (11th Cir. 1999); *see also* **Int'l Stamp Art, Inc. v. U.S. Postal Service**, 456 F.3d 1270, 1276 (11th Cir. 2006). The Court finds substantial evidence in the record that Defendants Sklarov, BRC SK, BRC GA, BRF and Black Rock deliberately adopted and used the **"Bentley Rothschild"** mark in order to profit from the substantial goodwill Plaintiffs have created in the ROTHSCHILD Marks. Defendants chose **"Bentley Rothschild"** knowing the ROTHSCHILD Marks are internationally known. (*See* Term Sheet, Doc. 1-14.) They held themselves out to customers using the persona of Rothschild & Co, reciting at length the history of the Rothschild Family in finance and representing Bentley Rothschild Capital Limited as **"**engag**[ing]** in the [Rothschild] tradition of gl**obal finance" while providing**

service "as exceptional now as it has been by the Rothschild dynasty during the past 250 years," and is part of the "Rothschild Family of Companies." (*Id.*) Such deliberately infringing conduct creates a substantial likelihood of confusion, tarnishment of the ROTHSCHILD Marks, and harm to Plaintiffs.

Defendants' intent to profit from the reputation of Plaintiffs is further shown by the application to register BENTLEY ROTHSCHILD, which was drafted and filed by Mr. Singh, who represents all Defendants in this action. (*See* Doc. 34 at 52–53.) The application copies nearly verbatim the list of services in the ROTHSCHILD Marks' registrations. Remarkably, the same description of services appears in the later application for MAYER AMSCHEL ROTHSCHILD CAPITAL, filed by yet another Sklarov-controlled entity *after* Defendants received Plaintiffs' cease-and-desist letter. (Doc. 32-1.). Mayer Amschel Rothschild, as Defendants' own Term Sheet acknowledged, was the founder of the "Rothschild Dynasty." (Doc. 1-14). Mr. Singh, who submitted the application, stated in court that he had been directed by his client to file the application with this list of services over his contrary advice. (Doc. 34 at 53.) This is strong evidence of Defendants' clear and continuing intent to infringe Plaintiffs' ROTHSCHILD Marks. The Court therefore finds there is a likelihood that Plaintiffs will succeed at trial in showing the BENTLEY ROTHSCHILD mark is confusingly similar to the ROTHSCHILD Marks.

      *g.    Actual confusion*

Plaintiffs did not present any evidence of actual confusion, but this does not weaken their likelihood of success on the merits. Proof of actual confusion is not required for a plaintiff to prevail on a claim of trademark infringement, which requires only proof that confusion is probable. *Frehling Enters.*, 192 F.3d at 1341. The record does not show Defendants use**d "Bentley Rothschild" before 2018.** Where a **defendant's product or service is new to the market, and** there has been little opportunity for consumers to come into contact with a **defendant's** trademark use, the absence of actual confusion evidence is given no weight in the overall likelihood of confusion analysis. *See e.g.,* ***Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music*** *Ctr.*, 109 F.3d 275, 284 (6th Cir. 1997). Given **the limited time in which "Bentley Rothschild"** has been used, the absence of actual confusion evidence does not undercut the **Plaintiffs' likely success at trial.**

Thus six of the seven confusion factors identified in of the relevant factors in *N. Am. Med. Corp.*, 522 F.3d at 1220, strongly support a finding of likelihood of confusion, while the seventh, actual confusion, is neutral. The Court therefore concludes Plaintiffs are likely to prevail on the merits of their claims.

### 2. Substantial Threat of Irreparable Injury

Plaintiffs have established they are likely to suffer irreparable injury if a preliminary injunction is not granted. The irreparable injury requirement is satisfied where the evidence shows a strong likelihood of confusion caused by trademark infringement. Gi**ven "**the potential difficulty of proo**f of plaintiff's** damages and the impairment of intangible values," a high likelihood of confusion

caused by infringement ordinarily warrants injunctive relief. *Boulan S. Beach Master Ass'n, Inc. v. Think* Props., LLC, 617 F. App'x 931, 934 (11th Cir. 2015) (internal citation and quotation marks omitted).

The risk of confusion and tarnishment of the ROTHSCHILD Marks presented by Defen**dants' use of "Bentley Roths**child" is likely to harm **Plaintiffs'** reputation and goodwill built over decades. A trademark owner suffers irreparable injury where infringement causes it to lose control over its reputation and goodwill. *Express Franchise Servs., L.P. v. Impact Outsourcing Sols., Inc.*, 244 F. Supp. 3d 1368, 1384 (N.D. Ga. 2017). Money damages cannot sufficiently compensate for these unquantifiable harms.

Irreparable injury and tarnishment also arise from the number of lawsuits charging Bentley Rothschild entities with allegedly having participated in stock loan fraud. Potential buyers of financial services do not know those entities are in reality not associated with Plaintiffs. The risk of tar**nishment of the "Rothschild"** name caused by association with allegations of fraud cannot be fully compensated for by money damages.

### 3. The Threatened Injury to the Plaintiffs Outweighs the Potential Harm to the Defendants

The balance of hardships favors Plaintiffs. Plaintiffs will suffer irreparable injury and damage to their reputation should Defendants be allowed to continue **to use "Bentley Rothschild" while the action is** pending. Defendants, on the other

hand, do not argue **"Bentley Rothschild" is** essential to their business, or state they would suffer any harm if required to use a different name in the interim.

4. The Injunction Will Not Disserve the Public Interest.

Lastly, the public interest will be substantially advanced by entry of a preliminary injunction against use **of the "Bentley Rothschild" mark, since "the public interest is served by preventing consumer confusion in the marketplace,"** *Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1304 (11th Cir. 2001). The risk of confusion under the circumstances of the case is significant and damaging to not only Plaintiffs, but to investors, and the public at large. The risk of confusion stands to have a substantial effect on commerce in the United States.

Plaintiffs have therefore shown all four factors favor entry of a preliminary injunction in this action.

IV. SCOPE OF INJUNCTIVE RELIEF

Plaintiffs seek a preliminary injunction that will direct Defendants Sklarov, BRC SK, BRC GA, BRF, and Black Rock to cease all use **of "Bentley Rothschild"** anywhere in the world. Defendants object to extraterritorial relief, and ask that the Court limit the geographic scope of any injunction to the U.S. (Doc. 26 at 9.) The Court concludes that extraterritorial relief is available in the case and is necessary to prevent further irreparable injury to Plaintiffs.

The Lanham Act gives federal courts subject matter jurisdiction over extraterritorial acts of trademark infringement and unfair competition where (1) one or more primary defendants is a U.S. resident or entity, (2) the conduct

alleged to occur outside of the U.S. would have potential adverse effects on commerce in the U.S., and (3) exercise of jurisdiction by our courts would not interfere with the sovereignty of another country. *Steele v. Bulova Watch Co.*, 344 U.S. 280, 286 (1952) (enjoining manufacture and sale of infringing watches in Mexico because **defendants' "operations and their effects were not** confined **within the territorial limits of a foreign nation.");** *see also Commodores Entm't Corp. v. McClary*, 879 F.3d 1114, 1139 (11th Cir. 2018) (use of contested marks extraterritorially would have effect on United States commerce)(adopting reasoning of ***Commodores Entm't Corp. v. McClary*, 648 F. App'x 771** (11th Cir. 2016) (per curiam)) *cert. denied*, 139 S. Ct. 225 (2018).

First, the Complaint plausibly alleges and the record shows the primary defendants reside in the United States. Defendant Sklarov, a Georgia resident, participated in all of the infringing activity alleged in the Complaint, including use of **"Bentley Rothschild"** and other representations of association with the Rothschild & Co business and Rothschild family contained in the Term Sheet. (Compl., Doc. 1 at ¶ 65). In addition, BRC GA and BRF (which are U.S. corporations), and BRC SK appear to act together as part of the same operation. These facts support extraterritorial relief. *Commodores Entm't*, 879 F.3d at 1139, (citing *Int'l Café, S.A.L. v. Hard Rock Café Int'l (U.S.A.), Inc.*, 252 F.3d 1274, 1278 (11th Cir. 2001); *see also Kroma Makeup EU, Ltd. v. Boldface Licensing + Branding, Inc.*, No. 6:14–cv–1551–Orl–40GJK, 2015 WL 1708757 (M.D. Fla. April 15, 2015), at *9 ("**[S]**ome courts characterize U.S. citizenship as the

paramount factor supporting a conclusion that the Lanham Act should be applied to foreign conduct.") (*citing McBee v. Delica Co., Ltd.,* 417 F.3d 107, 111 (1st Cir. 2005)); *Aerogroup Int'l, Inc. v. Marlboro Footworks, Ltd.,* 955 F. Supp. 220, 227 (S.D.N.Y. 1997) ("[T]he citizenship of the defendant is the most significant factor in determining whether to apply the Lanham Act extraterritorially to a defendant's foreign activities.").

Second, the Complaint plausibly alleges Defendants' foreign conduct has a substantial impact on U.S. commerce. The Lanham Act protects non-U.S. consumers, as well as American consumers from the infringing conduct of U.S. persons or entities. *Babbit Elecs., Inc. v. Dynascan Corp.,* 38 F.3d 1161, 1180 (11th Cir. 1994) (per curiam) ("[T]he Lanham Act imposes . . . the duty to protect the entire gamut of purchasers, including non-English speaking purchasers, in various countries throughout the world to which the defendants intend to export their products."). This second factor is satisfied where American consumers may be confused by a defendant's foreign conduct. *See, e.g., Commodores Entm't,* 879 F.3d at 1139 ("[I]t is likely that [Defendant's] use of the marks abroad would create confusion both abroad and in the United States."); *Bulova Watch,* 344 U.S. at 286 (sufficient effects on U.S. commerce where infringing watches sold exclusively in Mexico filtered into Texas); *Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.,* 111 F.3d 993, 1006 (2d Cir. 1997) (finding that the importation of infringing products "clearly has substantial impact on United States commerce"); *Kroma Makeup,* 2015 WL 1708757, at *10 ("[W]here the defendant's foreign

conduct creates confusion among American consumers, there is little doubt about a substantial effect on U.S. commerce."). There is a substantial effect on U.S. commerce where the legitimate trademark user is located in the U.S. and deals in international commerce, and its ability to use its mark to provide services to foreign customers will be harmed by the infringement. *See Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982 (11th Cir. 1995); *see also Commodores Entm't*, 648 F. App'x at 778 (per curiam) (arising in context where both plaintiff and defendants were U.S. citizens and the use of the marks outside of the U.S. would have an adverse impact on the U.S. plaintiff).

**The Court finds Defendants' alle**ged infringing acts abroad have a substantial impact on U.S. commerce. Plaintiffs regularly provide financial services from the U.S. to non-U.S. residents under the ROTHSCHILD and ROTHSCHILD & CO trademarks. (Carroll Reply Decl., Doc. 27-4 at ¶ 4.) International investors who encounter **"Bentley Rothschild" o**utside of the U.S. **are highly likely to believe any entity using "Bentley Roths**child**" is** associated with Plaintiffs, regardless of where such encounter occurs. This will harm the **Plaintiffs' ROTHSCHILD Marks** which are located in the U.S., and will hinder Plai**ntiffs'** ability to attract foreign customers.

The underlying policies of the Lanham Act also support this conclusion. *See McBee*, 417 F.3d at 121 ("The substantial effects test must be applied in light of the core purposes of the Lanham Act, which are both to protect the ability of American consumers to avoid confusion and to help assure a trademark's owner

that it will reap the financial and reputational rewards associated with having a desirable name or product.") (internal quotation marks omitted). Defendants here were also well aware of the well-established ROTHSCHILD financial services trademarks before they adopted the mark **"Bentley Rothschild,"** as evidenced by, amongst other things, the inclusion of the history of the Rothschild Family in Defendants' client-facing website and term sheet. (*See* Doc. 1-11, Doc. 1-14.) Moreover, **Defendants' application for** BENTLEY ROTHSCHILD was rejected by the USPTO on the grounds of likely confusion with the Plaintiffs' ROTHSCHILD Marks. (Doc. 27-8; *see also Kroma*, 2015 WL 1708757 at *12).

Finally, extending a preliminary injunction to cover extraterritorial acts by Defendants will not interfere **with another country's** sovereignty. There is no parallel litigation in another country, and no risk that a ruling of this Court re**garding Defendants'** international infringement will conflict with any foreign **court's ruling.** *See Bulova Watch*, 344 U.S. at 289 (no interference where all foreign proceedings regarding mark had ended); *Commodores Entm't*, 879 F.3d at 1140 (no evidence that the extraterritorial reach of the injunction infringes on a **foreign nation's sovereignty**).

Accordingly, the Court finds it has subject matter jurisdiction to enjoin, on am international basis, Defendants Sklarov, BRC SK, BRC GA, BRF, and Black **Rock from use of the "Bentley Rothschild" mark** and/or any claim of association with Plaintiffs or the Rothschild family, during the pendency of this action. The Court further finds that irreparable injury to Plaintiffs in the U.S. can only be

prevented by an injunction with an international geographic scope, as defined further below.

## V.  CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiffs' Motion for Preliminary Injunction [Doc. 6] as follows:

Defendants Sklarov, Bentley Rothschild Capital Limited (St. Kitts and Nevis), Bentley Rothschild Capital Limited (Georgia), Bentley Rothschild **Financial LLC, and Black Rock Capital LLC (the "Enjoined Defendants")** and all of their officers, agents, servants, employees, attorneys, and any other persons who are in active concert or participation with anyone described herein, or who have received actual notice of this Order by personal service or otherwise within the meaning of Federal Rule of Civil Procedure 65(d), are enjoined during the pendency of this action from:

1. Using directly or indirectly, in any manner whatsoever, the BENTLEY ROTHSCHILD mark, or any other mark that includes the name or **word "Rothschild" or any variant spelling** thereof, in connection with any goods or services offered by them in the United States or internationally;

2. Using directly or indirectly, in any manner whatsoever, **"Bentley Rothschild"** or the name or **word "Rothschild" or any variant spelling thereof,** as part of a trade, corporate, or domain name, or incorporating or registering any entity with

such a trade name or corporate name, or registering such a
domain name, in the United States or internationally;

3. Using the domain name bentleyrothschild.com;

4. Using or registering any other domain name, URL, or email
address that incorporates the name or **word "Rothschild" or**
any variant spelling thereof;

5. Using the Internet website www.bentleyrothschild.com, or any
other website or other form of social or electronic media,
whose URL, handle, hashtag, or other identifier incorporates
**the name or word "Rothschild."** Defendants shall immediately
inactivate the www.bentleyrothschild.com website available
for access outside the United States;

6. Using any e-mail address that incorporates the name or word
**"Rothschild"** in the domain name, and inactivating any e-mail
server that currently receives or sends e-mail using an e-mail
address incorporating the name or **the word "Rothschild"** in
the domain name;

7. Engaging in any advertising, promotion, solicitation, or other
representation asserting that any Defendant or any entity in
which any Defendant is a director, officer, or shareholder are
affiliated, connected, or endorsed in any way by the Plaintiffs

or their affiliates, the Rothschild Family, or any business controlled by a member of the Rothschild Family;

8. Doing any other act or thing calculated or likely to cause confusion or mistake in the trade or the minds of the public, or to deceive actual or potential purchasers into believing that the Enjoined **Defendants' goods** or services originate with any of the Plaintiffs or are approved, licensed, or otherwise authorized by any of the Plaintiffs;

9. Registering or prosecuting any application to register BENTLEY ROTHSCHILD, MAYER AMSCHEL ROTHSCHILD CAPITAL, or any other mark including the name or word **"Rothschild,"** as a mark in the United States or in any other country; and

10. Aiding, abetting, or assisting any other person or entity in engaging in or performing any activities stated in paragraphs 1-9 hereof.

The foregoing preliminary injunction shall be in full force and effect until such time as this Court has entered a final judgment on the merits of all claims in this case, or until such time as this Court enters a further order vacating or modifying the preliminary injunction granted hereby.

Pursuant to Fed. R. Civ. P. 65 and the discretion of the Court, no security shall be required of Plaintiffs.

IT IS SO ORDERED this 24th day of February, 2020.

_____
AMY TOTENBERG
UNITED STATES DISTRICT JUDGE