# EXHIBIT 38

| | |
|---|---|
| **To:** | BLACK ROCK CAPITAL LLC (JT@MANNYSINGH.COM) |
| **Subject:** | U.S. Trademark Application Serial No. 88457946 - SHEARSON LEHMAN - N/A |
| **Sent:** | September 11, 2019 11:05:54 AM |
| **Sent As:** | ecom111@uspto.gov |
| **Attachments:** | Attachment - 1 |
| | Attachment - 2 |
| | Attachment - 3 |
| | Attachment - 4 |
| | Attachment - 5 |
| | Attachment - 6 |
| | Attachment - 7 |
| | Attachment - 8 |
| | Attachment - 9 |
| | Attachment - 10 |
| | Attachment - 11 |
| | Attachment - 12 |
| | Attachment - 13 |
| | Attachment - 14 |
| | Attachment - 15 |
| | Attachment - 16 |
| | Attachment - 17 |
| | Attachment - 18 |
| | Attachment - 19 |

**United States Patent and Trademark Office (USPTO)**
**Office Action (Official Letter) About Applicant's Trademark Application**

**U.S. Application Serial No.** 88457946

**Mark:** SHEARSON LEHMAN

**Correspondence Address:**
BLACK ROCK CAPITAL LLC
BLACK ROCK CAPITAL LLC
OLD FORT #4 - WESTERN ROAD, SP-63 771
NASSAU, NEW PROVIDENCE
BAHAMAS

**Applicant:** BLACK ROCK CAPITAL LLC

**Reference/Docket No.**
N/A

**Correspondence Email Address:**

JT@MANNYSINGH.COM

# NONFINAL OFFICE ACTION

**The USPTO must receive applicant's response to this letter within six months of the issue date below or the application will be abandoned.** Respond using the Trademark Electronic Application System (TEAS). A link to the appropriate TEAS response form appears at the end of this Office action.

**Issue date: September 11, 2019**

The referenced application has been reviewed by the assigned trademark examining attorney. Applicant must respond timely and completely to the issue(s) below. 15 U.S.C. §1062(b); 37 C.F.R. §§2.62(a), 2.65(a); TMEP §§711, 718.03.

**SUMMARY OF ISSUES** that applicant must address:

- **SECTION 2(d) REFUSAL – LIKELIHOOD OF CONFUSION**
- **INQUIRY REGARDING MARK CONNECTION**
- **IDENTIFICATION OF SERVICES REQUIREMENT**
- **ATTORNEY BAR INFORMATION REQUIREMENT**
- **PRIOR-PENDING APPLICATION ADVISORY**

**SECTION 2(d) REFUSAL – LIKELIHOOD OF CONFUSION**

Registration of the applied-for mark is refused because of a likelihood of confusion with the marks in U.S. Registration Nos. 3610292, 4046912, 4011662, 4056114 and 4322922. Trademark Act Section 2(d), 15 U.S.C. §1052(d); *see* TMEP §§1207.01 *et seq.* A copy of each registration is enclosed. The first four cited registrations are owned by the same registrant.

Trademark Act Section 2(d) bars registration of an applied-for mark that so resembles a registered mark that it is likely a potential consumer would be confused, mistaken, or deceived as to the source of the services of the applicant and registrant. *See* 15 U.S.C. §1052(d). A determination of likelihood of confusion under Section 2(d) is made on a case-by case basis and the factors set forth in *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563 (C.C.P.A. 1973) aid in this determination. *Citigroup Inc. v. Capital City Bank Grp., Inc.*, 637 F.3d 1344, 1349, 98 USPQ2d 1253, 1256 (Fed. Cir. 2011) (citing *On-Line Careline, Inc. v. Am. Online, Inc.*, 229 F.3d 1080, 1085, 56 USPQ2d 1471, 1474 (Fed. Cir. 2000)). Not all the *du Pont* factors, however, are necessarily relevant or of equal weight, and any one of the factors may control in a given case, depending upon the evidence of record. *Citigroup Inc. v. Capital City Bank Grp., Inc.*, 637 F.3d at 1355, 98 USPQ2d at 1260; *In re Majestic Distilling Co.*, 315 F.3d 1311, 1315, 65 USPQ2d 1201, 1204 (Fed. Cir. 2003); *see In re E. I. du Pont de Nemours & Co.*, 476 F.2d at 1361-62, 177 USPQ at 567.

In this case, the following factors are the most relevant: similarity of the marks, similarity and nature of the services, and similarity of the trade channels of the services. *See In re Viterra Inc.*, 671 F.3d 1358, 1361-62, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012); *In re Dakin's Miniatures Inc.*, 59 USPQ2d 1593, 1595-96 (TTAB 1999); TMEP §§1207.01 *et seq.*

**SIMILARITY OF THE MARKS**

In a likelihood of confusion determination, the marks in their entireties are compared for similarities in appearance, sound, connotation, and commercial impression. *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 1361, 177 USPQ 563, 567 (C.C.P.A. 1973); TMEP §1207.01(b)-(b)(v).

Marks may be confusingly similar in appearance where similar terms or phrases or similar parts of terms or phrases appear in the compared marks and create a similar overall commercial impression. *See Crocker Nat'l Bank v. Canadian Imperial Bank of Commerce*, 228 USPQ 689, 690-91 (TTAB 1986), *aff'd sub nom. Canadian Imperial Bank of Commerce v. Wells Fargo Bank, Nat'l Ass'n*, 811 F.2d 1490, 1495, 1 USPQ2d 1813, 1817 (Fed. Cir. 1987) (finding COMMCASH and COMMUNICASH confusingly similar); *In re Corning Glass Works*, 229 USPQ 65, 66 (TTAB 1985) (finding CONFIRM and CONFIRMCELLS confusingly similar); *In re Pellerin Milnor Corp.*, 221 USPQ 558, 560 (TTAB 1983) (finding MILTRON and MILLTRONICS confusingly similar); TMEP §1207.01(b)(ii)-(iii). Slight differences in the sound of similar marks will not avoid a likelihood of confusion. *In re Energy Telecomm. & Elec. Ass'n*, 222 USPQ 350, 351 (TTAB 1983); *see In re Viterra Inc.*, 671 F.3d 1358, 1367, 101 USPQ2d 1905, 1912 (Fed. Cir. 2012).

Consumers are generally more inclined to focus on the first word, prefix, or syllable in any trademark or service mark. *See Palm Bay Imps., Inc.*

*v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F. 3d 1369, 1372, 73 USPQ2d 1689, 1692 (Fed. Cir. 2005); *Presto Prods., Inc. v. Nice-Pak Prods., Inc.*, 9 USPQ2d 1895, 1897 (TTAB 1988) ("it is often the first part of a mark which is most likely to be impressed upon the mind of a purchaser and remembered" when making purchasing decisions).

Consumer confusion has been held likely for marks that do not physically sound or look alike but that convey the same idea, stimulate the same mental reaction, or may have the same overall meaning. *Proctor & Gamble Co. v. Conway*, 419 F.2d 1332, 1336, 164 USPQ 301, 304 (C.C.P.A. 1970) (holding MISTER STAIN likely to be confused with MR. CLEAN on competing cleaning products); *see In re M. Serman & Co.*, 223 USPQ 52, 53 (TTAB 1984) (holding CITY WOMAN for ladies' blouses likely to be confused with CITY GIRL for a variety of female clothing); *H. Sichel Sohne, GmbH v. John Gross & Co.*, 204 USPQ 257, 260-61 (TTAB 1979) (holding BLUE NUN for wines likely to be confused with BLUE CHAPEL for the same goods); *Ralston Purina Co. v. Old Ranchers Canning Co.*, 199 USPQ 125, 128 (TTAB 1978) (holding TUNA O' THE FARM for canned chicken likely to be confused with CHICKEN OF THE SEA for canned tuna); *Downtowner Corp. v. Uptowner Inns, Inc.*, 178 USPQ 105, 109 (TTAB 1973) (holding UPTOWNER for motor inn and restaurant services likely to be confused with DOWNTOWNER for the same services); TMEP §1207.01(b).

In the present case, the applicant's mark is SHEARSON LEHMAN in standard characters, and the registered marks are:

 RN 3610292: SHEARSON

 RN 4046912: SHEARSON FINANCIAL SERVICES with FINANCIAL SERVICES disclaimed

 RN 4011662: SHEARSON FINANCIAL SERVICES, LLC with FINANCIAL SERVICES, LLC disclaimed

 RN 4056114: SHEARSON with an underline

 RN 4322922: LEHMAN BUSH

All of the marks in question consists of surnames, some with additional descriptive wording which is disclaimed.

The first part of the applied-for mark is identical to the first and fourth-cited registrations, and the first part of the second and third registrations. The second part of the applied-for mark is identical to the first part of the fifth-cited registration.

The applied-for mark and the cited marks are identical in part in appearance, sound, and meaning, "and have the potential to be used . . . in exactly the same manner." *In re i.am.symbolic, llc*, 116 USPQ2d 1406, 1411 (TTAB 2015), *aff'd*, 866 F.3d 1315, 123 USPQ2d 1744 (Fed. Cir. 2017). Additionally, because they are identical in part, these marks are likely to engender the same connotation and overall commercial impression when considered in connection with applicant's and registrant's respective goods and/or services. *Id.*

Therefore, the marks are confusingly similar.

**COMPARISON OF THE SERVICES**

Generally, the greater degree of similarity between the applied-for mark and the registered mark, the lesser the degree of similarity between the goods and/or services of the respective parties that is required to support a finding of likelihood of confusion. *In re Davey Prods. Pty Ltd.*, 92 USPQ2d 1198, 1202 (TTAB 2009); *In re Thor Tech, Inc.*, 90 USPQ2d 1634, 1636 (TTAB 2009).

The services of the parties need not be identical or even competitive to find a likelihood of confusion. *See On-line Careline Inc. v. Am. Online Inc.*, 229 F.3d 1080, 1086, 56 USPQ2d 1471, 1475 (Fed. Cir. 2000); *Recot, Inc. v. Becton*, 214 F.3d 1322, 1329, 54 USPQ2d 1894, 1898 (Fed. Cir. 2000) ("[E]ven if the goods in question are different from, and thus not related to, one another in kind, the same goods can be related in the mind of the consuming public as to the origin of the goods."); TMEP §1207.01(a)(i).

The respective services need only be "related in some manner and/or if the circumstances surrounding their marketing [be] such that they could give rise to the mistaken belief that [the goods] emanate from the same source." *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1369, 101 USPQ2d 1713, 1722 (Fed. Cir. 2012) (quoting *7-Eleven Inc. v. Wechsler*, 83 USPQ2d 1715, 1724 (TTAB 2007)); *Gen. Mills Inc. v. Fage Dairy Processing Indus. SA*, 100 USPQ2d 1584, 1597 (TTAB 2011); TMEP §1207.01(a)(i).

With respect to applicant's and registrant's services, the question of likelihood of confusion is determined based on the description of the services stated in the application and registration at issue, not on extrinsic evidence of actual use. *See, e.g.*, *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1369-70, 101 USPQ2d 1713, 1722 (Fed. Cir. 2012); *Octocom Sys. Inc. v. Hous. Computers Servs. Inc.*, 918 F.2d 937, 942, 16 USPQ2d 1783, 1787 (Fed. Cir. 1990).

In this case, neither the application nor the registration contains any limitations regarding trade channels for the services and therefore it is assumed that registrant's and applicant's services are provided everywhere that is normal for such services to be provided.

Applicant's services are identified as:
> International Class 036:
> **Financial services**, namely, advising corporations on debt and financial restructuring, bankruptcy reorganization and divestitures, namely, sales of entities and their stock and assets; **strategic planning and capital raising for corporations, start-ups, emerging companies, private equity fund and other similar corporate entities**; stock loans; **arranging financing for start-ups, emerging companies, private equity funds and other similar corporate entities;** merchant banking; **investment banking**; underwriting, namely, underwriting offers of securities as manager, co-manager or syndicate member; private placements; **investment management and advice**; **financial consultancy**, planning, research and appraisal of corporate entities; financial evaluation and other wealth management services, namely, for high net worth individuals, for pension and other institutional accounts; **trading and dealing in stocks, securities and other financial products**, namely, bonds and advisory services relating thereto; **brokerage and dealer services in the field of stocks and securities**; providing financial news and information via a global communication network; **financial investment and financial advisory services in the field of real estate**; leasing of real estate; real estate acquisition services; real estate appraisal; real estate equity sharing, namely, managing and arranging for co-ownership of real estate; and **real estate investment** and real estate management

The registrations identify the following services:
RN 3610292:
> International Class 036:
> **Financial services**, namely, **securities brokerage, financial investment and consulting and investment banking**

RN 4046912:
> International Class 036:
> **Securities brokerage, investment brokerage, financial and investment consulting, and investment banking services; investment of funds for others**; **investment management;** financial portfolio management; financial asset management; **financial planning** for retirement; financial administration of retirement plans; and financial services, namely, estate asset acquisition and estate settlement services

RN 4011662:
> International Class 036:
> **Securities brokerage, investment brokerage, financial and investment consulting**, and **investment banking services**; **investment of funds for others; investment management**; financial portfolio management; financial asset management; **financial planning** for retirement; financial administration of retirement plans; and financial services, namely, estate asset acquisition and estate settlement services

RN 4056114:
> International Class 036:
> **Securities brokerage, investment brokerage, financial and investment consulting, and investment banking services; investment of funds for others; investment management**; financial portfolio management; financial asset management; **financial planning** for retirement; financial administration of retirement plans; and financial services, namely, estate asset acquisition and estate settlement services

RN 4322922:
> International Class 036:
> **Investment consultancy; professional consultancy and advisory services relating to investment, finance** and country risk; financial and monetary services, namely, **financial planning and investment advisory services, investment management**, project financing, financial research, monetary strategy consultation and research; professional consultancy and advisory services in relation to the structuring of equity capital raisings; **financial advisory in the field of private equity, private equity financial investments, private equity investment funds, and private equity financing**; financial advisory services relating to mergers and acquisitions; professional consultancy and advisory services relating to financial strategic initiatives, financial restructuring, investment, grants and financing of loans, credit control; **professional consultancy and advisory services relating to financial risk management;** financial economic advisory services; banking; capital investments; fiscal assessments; **financial evaluation in the fields of insurance, banking, real estate**; corporate financial advisory evaluation; **financing services; financial management;** business liquidation services; **financial consultancy and information**; monetary affairs; insurance services, namely, insurance in the nature of loss control management for others, commercial collateral liability insurance; **insurance underwriting services, namely, insurance underwriting of loss control management for others, underwriting of commercial collateral liability insurance;** insurance brokerage services, namely, insurance brokerage of loss control management for others, commercial collateral liability insurance brokerage; debt collection agencies; art appraisal; **real estate affairs, namely, appraisal of real estate, lease of real estate, real estate acquisition services, real estate**

**consultancy, real estate investment services, real estate procurement for others; real estate agencies; professional consultancy and advisory services relating to real estate valuations;** financial guarantees (surety services); factoring agencies; fiduciary services, namely, fiduciary representative services

The application and all of the registrations identify financial services in International Class 036. More particularly, the application and registrations identify the same types of securities brokerage, investment banking services, investment advisory services, real estate-related financial investment services

Where the marks of the respective parties are identical or virtually identical, as in this case, the degree of similarity or relatedness between the goods and/or services needed to support a finding of likelihood of confusion declines. *See In re i.am.symbolic, llc*, 116 USPQ2d 1406, 1411 (TTAB 2015) (citing *In re Shell Oil Co.*, 992 F.2d 1204, 1207, 26 USPQ2d 1687, 1689 (Fed. Cir. 1993)), *aff'd* , 866 F.3d 1315, 123 USPQ2d 1744 (Fed. Cir. 2017); TMEP §1207.01(a). Here, because the applied-for mark and the registered marks are virtually identical, and because the applicant and registrants identify the same type of financial services, consumer confusion is likely between the marks.

Although applicant's mark has been refused registration, applicant may respond to the refusal by submitting evidence and arguments in support of registration. If applicant responds to the refusal, applicant must also respond to the requirements set forth below.

**INQUIRY REGARDING MARK CONNECTION**

Due to the renown of the institution(s) and/or person(s) named in the mark (see attached from [www.wikipedia.org](www.wikipedia.org)), and the fact that there is no information in the application record regarding a connection with applicant, applicant must specify whether the person or institution named in the mark has any connection with applicant's goods and/or services, and if so, must describe the nature and extent of that connection. *See* 37 C.F.R. §2.61(b); TMEP §1203.03(c)(i).

**IDENTIFICATION OF SERVICES REQUIREMENT**

Particular wording in the identification of services**, as discussed below in bold,** is indefinite and must be clarified. *See* 37 C.F.R. §2.32(a)(6); TMEP §1402.01. Applicant may substitute the following wording, if accurate:

> **International Class 036:**
>
> Financial services, namely, advising corporations on debt and financial restructuring, bankruptcy reorganization and divestitures, namely, sales of entities and their stock and assets; strategic planning and capital raising for corporations, start-ups, emerging companies, private equity fund and other similar corporate entities; stock loans**, namely, {clarify type of loan services}**; arranging financing for start-ups, emerging companies, private equity funds and other similar corporate entities; merchant banking; investment banking; underwriting, namely, underwriting offers of securities as manager, co-manager or syndicate member; private placements **of hedge funds, private equity funds, securities and derivatives for others;** investment management and advice; financial consultancy, planning, research and appraisal of corporate entities; financial evaluation and other wealth management services, namely, for high net worth individuals, for pension and other institutional accounts; trading and dealing in stocks, securities and other financial products, namely, **brokerage of** bonds and **financial** advisory services relating thereto; brokerage and dealer services in the field of stocks and securities; providing financial news and information via a global communication network; financial investment and financial advisory services in the field of real estate; leasing of real estate; real estate acquisition services; real estate appraisal; real estate equity sharing, namely, managing and arranging for co-ownership of real estate; and real estate investment and real estate management

Applicant may amend the identification to clarify or limit the goods and/or services, but not to broaden or expand the goods and/or services beyond those in the original application or as acceptably amended. *See* 37 C.F.R. §2.71(a); TMEP §1402.06. Generally, any deleted goods and/or services may not later be reinserted. *See* TMEP §1402.07(e).

For assistance with identifying and classifying goods and services in trademark applications, please see the USPTO's online searchable [*U.S. Acceptable Identification of Goods and Services Manual*](). *See* TMEP §1402.04.

The Trademark Act requires that a trademark or service mark application must include a "**specification** of … the goods [or services]" in connection with which the mark is being used or will be used. 15 U.S.C. §1051(a)(2) (emphasis added), (b)(2) (emphasis added); *see* 15 U.S.C. §1053. Specifically, a complete application must include a "list of the **particular** goods or services on or in connection with which the applicant uses or intends to use the mark." 37 C.F.R. §2.32(a)(6) (emphasis added). This requirement for a specification of the particular goods and/or services applies to applications filed under all statutory bases. *See* 15 U.S.C. §§1051(a)(2), 1051(b)(2), 1053, 1126(d)-(e), 1141f; 37 C.F.R. §2.32(a)(6); TMEP §§1402.01, 1402.01(b)-(c).

The USPTO has the discretion to determine the degree of particularity needed to clearly identify goods and/or services covered by a mark. *In re Fiat Grp. Mktg. & Corp. Commc'ns S.p.A* , 109 USPQ2d 1593, 1597 (TTAB 2014) (citing *In re Omega SA*, 494 F.3d 1362, 1365, 83 USPQ2d

1541, 1543-44 (Fed. Cir. 2007)).  Accordingly, the USPTO requires the description of goods and/or services in a U.S. application to be specific, definite, clear, accurate, and concise.  TMEP §1402.01; *see In re Fiat Grp. Mktg. & Corp. Commc'ns S.p.A* , 109 USPQ2d at 1597-98; *Cal. Spray-Chem. Corp. v. Osmose Wood Pres. Co. of Am*., 102 USPQ 321, 322 (Comm'r Pats. 1954).

## ATTORNEY BAR INFORMATION REQUIREMENT

**Attorney bar information required.**  Applicant's attorney must provide the following bar information:   (1) his or her bar membership number, if the bar provides one; (2) the name of the U.S. state, commonwealth, or territory of his or her bar membership; and (3) the year of his or her admission to the bar.  37 C.F.R. §2.17(b)(3).  This information is required for all U.S.-licensed attorneys who are representing trademark applicants at the USPTO.  *Id.*  If the attorney's bar does not issue bar membership numbers, applicant must state this for the record.  *See id.*

**To provide bar information.**  Applicant's attorney should respond to this Office action by using the appropriate TEAS response form and provide his or her bar information in the "Attorney Information" page of the form, within the bar information section.  *See* 37 C.F.R. §2.17(b)(1)(ii).  Bar information provided in any other area of the form will be viewable by the public in USPTO records.

**Attorney statement required.**  Applicant's attorney must provide the following statement:  "I am an attorney who is an active member in good standing of the bar of a U.S. state (including the District of Columbia and any U.S. Commonwealth or territory)."  *See* 37 C.F.R. §2.17(b)(3).  This is required for all U.S.-licensed attorneys who are representing trademark applicants at the USPTO.  *Id.*

## PRIOR-PENDING APPLICATION ADVISORY

The filing date of pending U.S. Application Serial No. 86081143 precedes applicant's filing date.  See attached referenced application.  If the mark in the referenced application registers, applicant's mark may be refused registration under Trademark Act Section 2(d) because of a likelihood of confusion between the two marks.  *See* 15 U.S.C. §1052(d); 37 C.F.R. §2.83; TMEP §§1208 *et seq.*  Therefore, upon receipt of applicant's response to this Office action, action on this application may be suspended pending final disposition of the earlier-filed referenced application.

In response to this Office action, applicant may present arguments in support of registration by addressing the issue of the potential conflict between applicant's mark and the mark in the referenced application.  Applicant's election not to submit arguments at this time in no way limits applicant's right to address this issue later if a refusal under Section 2(d) issues.

## RESPONSE GUIDELINES

 **TEAS PLUS OR TEAS REDUCED FEE (TEAS RF) APPLICANTS – TO MAINTAIN LOWER FEE, ADDITIONAL REQUIREMENTS MUST BE MET, INCLUDING SUBMITTING DOCUMENTS ONLINE:**  Applicants who filed their application online using the lower-fee TEAS Plus or TEAS RF application form must (1) file certain documents online using TEAS, including responses to Office actions (see TMEP §§819.02(b), 820.02(b) for a complete list of these documents); (2) maintain a valid e-mail correspondence address; and (3) agree to receive correspondence from the USPTO by e-mail throughout the prosecution of the application.  *See* 37 C.F.R. §§2.22(b), 2.23(b); TMEP §§819, 820.  TEAS Plus or TEAS RF applicants who do not meet these requirements must submit an additional processing fee of $125 per class of goods and/or services.  37 C.F.R. §§2.6(a)(1)(v), 2.22(c), 2.23(c); TMEP §§819.04, 820.04.  However, in certain situations, TEAS Plus or TEAS RF applicants may respond to an Office action by authorizing an examiner's amendment by telephone or e-mail without incurring this additional fee.

**How to respond.  [Click to file a response to this nonfinal Office action](#)**

> Severson, Justin
> /Justin Severson/
>
> Examining Attorney
> Law Office 111
> 571-272-6893
> justin.severson@uspto.gov

## RESPONSE GUIDANCE

- **Missing the response deadline to this letter will cause the application to abandon.** A response or notice of appeal must be received by the USPTO before midnight **Eastern Time** of the last day of the response period. TEAS and ESTTA maintenance or unforeseen circumstances could affect an applicant's ability to timely respond.

- **Responses signed by an unauthorized party** are not accepted and can **cause the application to abandon.** If applicant does not have an attorney, the response must be signed by the individual applicant, all joint applicants, or someone with legal authority to bind a juristic applicant. If applicant has an attorney, the response must be signed by the attorney.

- If needed, **find contact information for the supervisor** of the office or unit listed in the signature block.

| | |
|---|---|
| **To:** | BLACK ROCK CAPITAL, LLC (jt@jtsinghlaw.com) |
| **Subject:** | U.S. Trademark Application Serial No. 88536436 - SHEARSON LEHMAN HUTTON - N/A |
| **Sent:** | October 24, 2019 09:31:10 AM |
| **Sent As:** | ecom106@uspto.gov |
| **Attachments:** | Attachment - 1<br>Attachment - 2<br>Attachment - 3<br>Attachment - 4<br>Attachment - 5<br>Attachment - 6<br>Attachment - 7<br>Attachment - 8<br>Attachment - 9<br>Attachment - 10<br>Attachment - 11<br>Attachment - 12<br>Attachment - 13 |

**United States Patent and Trademark Office (USPTO)**
**Office Action (Official Letter) About Applicant's Trademark Application**

**U.S. Application Serial No.** 88536436

**Mark:** SHEARSON LEHMAN HUTTON

**Correspondence Address:**
JT SINGH
BLACK ROCK CAPITAL, LLC
OLD FORT #4 - WESTERN ROAD, SP-63 771
OLD FORT #4 - WESTERN ROAD, SP-63 771
NASSAU, NEW PROVIDENCE
Bahamas

**Applicant:** BLACK ROCK CAPITAL, LLC

**Reference/Docket No.** N/A

**Correspondence Email Address:**

jt@jtsinghlaw.com

# NONFINAL OFFICE ACTION

The USPTO must receive applicant's response to this letter within  six months of the issue date below or the application will be abandoned. Respond using the Trademark Electronic Application System (TEAS).  A link to the appropriate TEAS response form appears at the end of this Office action.

**Issue date:  October 24, 2019**

The referenced application and voluntary amendments dated August 6 & 23 and September 4, 2019, have all been reviewed by the assigned trademark examining attorney.  Applicant must respond timely and completely to the issues below.  15 U.S.C. §1062(b); 37 C.F.R. §§2.62(a), 2.65(a); TMEP §§711, 718.03.

**SUMMARY OF ISSUES**:

- Section 2(d) Refusal – Likelihood of Confusion
- Prior-Filed Application
- Information About Applicant Required
- Information About Ownership Required
- Identification of Services

**SECTION 2(d) REFUSAL – LIKELIHOOD OF CONFUSION**

Registration of the applied-for mark is refused because of a likelihood of confusion with the marks in U.S. Registration Nos. 3610292, 4011662, 4046912, & 4056114.  Trademark Act Section 2(d), 15 U.S.C. §1052(d); *see* TMEP §§1207.01 *et seq*.  See the attached registrations.

Applicant has applied to register the mark **SHEARSON LEHMAN HUTTON** (in standard characters) for "Financial services, namely, corporate workout, debt restructuring, receivership, and loan resolution for commercial loans" in International Class 36.  The mark in U.S. Registration No. 3610292 is **SHEARSON** (in standard characters) for "Financial services, namely, securities brokerage, financial investment and consulting and investment banking" in International Class 36.  The mark in U.S. Registration No. 4011662 is **SHEARSON FINANCIAL SERVICES, LLC** (in standard characters) for "Securities brokerage, investment brokerage, financial and investment consulting, and investment banking services; investment of funds for others; investment management; financial portfolio management; financial asset management; financial planning for retirement; financial administration of retirement plans; and financial services, namely, estate asset acquisition and estate settlement services" in International Class 36.  The mark in U.S. Registration No. 4046912 is **SHEARSON FINANCIAL SERIVCES** (in standard characters) for "Securities brokerage, investment brokerage, financial and investment consulting, and investment banking services; investment of funds for others; investment management; financial portfolio management; financial asset management; financial planning for retirement; financial administration of retirement plans; and financial services, namely, estate asset acquisition and estate settlement services" in International Class 36.  The mark in U.S. Registration No. 4056114 is **SHEARSON and design** for "Securities brokerage, investment brokerage, financial and investment consulting, and investment banking services; investment of funds for others; investment management; financial portfolio management; financial asset management; financial planning for retirement; financial administration of retirement plans; and financial services, namely, estate asset acquisition and estate settlement services" in International Class 36.

Trademark Act Section 2(d) bars registration of an applied-for mark that is so similar to a registered mark that it is likely consumers would be confused, mistaken, or deceived as to the commercial source of the services of the parties.  *See* 15 U.S.C. §1052(d).  Likelihood of confusion is determined on a case-by-case basis by applying the factors set forth in *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 1361, 177 USPQ 563, 567 (C.C.P.A. 1973) (called the "*du Pont* factors").  *In re i.am.symbolic, llc*, 866 F.3d 1315, 1322, 123 USPQ2d 1744, 1747 (Fed. Cir. 2017).  Only those factors that are "relevant and of record" need be considered.  *M2 Software, Inc. v. M2 Commc'ns, Inc.* , 450 F.3d 1378, 1382, 78 USPQ2d 1944, 1947 (Fed. Cir. 2006) (citing *Shen Mfg. Co. v. Ritz Hotel Ltd.*, 393 F.3d 1238, 1241, 73 USPQ2d 1350, 1353 (Fed. Cir. 2004)); *see In re Inn at St. John's, LLC* , 126 USPQ2d 1742, 1744 (TTAB 2018).

Although not all *du Pont* factors may be relevant, there are generally two key considerations in any likelihood of confusion analysis:  (1) the similarities between the compared marks and (2) the relatedness of the compared services.  *See In re i.am.symbolic, llc*, 866 F.3d at 1322, 123 USPQ2d at 1747 (quoting *Herbko Int'l, Inc. v. Kappa Books, Inc.* , 308 F.3d 1156, 1164-65, 64 USPQ2d 1375, 1380 (Fed. Cir. 2002)); *Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 1103, 192 USPQ 24, 29 (C.C.P.A. 1976) ("The fundamental inquiry mandated by [Section] 2(d) goes to the cumulative effect of differences in the essential characteristics of the goods [or services] and differences in the marks."); TMEP §1207.01.

**Similarity of the Marks**

Marks are compared in their entireties for similarities in appearance, sound, connotation, and commercial impression. *Stone Lion Capital Partners, LP v. Lion Capital LLP*, 746 F.3d 1317, 1321, 110 USPQ2d 1157, 1160 (Fed. Cir. 2014) (quoting *Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1371, 73 USPQ2d 1689, 1691 (Fed. Cir. 2005)); TMEP §1207.01(b)-(b)(v). "Similarity in any one of these elements may be sufficient to find the marks confusingly similar." *In re Inn at St. John's, LLC* , 126 USPQ2d 1742, 1746 (TTAB 2018) (citing *In re Davia*, 110 USPQ2d 1810, 1812 (TTAB 2014)); TMEP §1207.01(b).

Applicant has applied to register the mark **SHEARSON LEHMAN HUTTON**. The mark in U.S. Registration No. 3610292 is **SHEARSON**. The mark in U.S. Registration No. 4011662 is **SHEARSON FINANCIAL SERVICES, LLC**. The mark in U.S. Registration No. 4046912 is **SHEARSON FINANCIAL SERIVCES**. The mark in U.S. Registration No. 4056114 is **SHEARSON and carrier design**. Each of the other marks appear in standard characters.

First, it should be noted that when evaluating a composite mark consisting of words and a design, the word portion is normally accorded greater weight because it is likely to make a greater impression upon purchasers, be remembered by them, and be used by them to refer to or request the services. *In re Aquitaine Wine USA, LLC*, 126 USPQ2d 1181, 1184 (TTAB 2018) (citing *In re Viterra Inc.*, 671 F.3d 1358, 1362, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012)); TMEP §1207.01(c)(ii). Thus, although marks must be compared in their entireties, the word portion is often considered the dominant feature and is accorded greater weight in determining whether marks are confusingly similar, even where the word portion has been disclaimed. *In re Viterra Inc.*, 671 F.3d at 1366-67, 101 USPQ2d at 1911 (citing *Giant Food, Inc. v. Nation's Foodservice, Inc.*, 710 F.2d 1565, 1570-71, 218 USPQ2d 390, 395 (Fed. Cir. 1983)).

In the present case, that renders the wording dominant in U.S. Registration No. 4056114 as opposed to the simple carrier design. Not only is wording in general dominant over designs, but certain wording can be considered more dominant than others. Consumers are generally more inclined to focus on the first word, prefix, or syllable in any trademark or service mark. *See Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1372, 73 USPQ2d 1689, 1692 (Fed. Cir. 2005) (finding similarity between VEUVE ROYALE and two VEUVE CLICQUOT marks in part because "VEUVE . . . remains a 'prominent feature' as the first word in the mark and the first word to appear on the label"); *Century 21 Real Estate Corp. v. Century Life of Am.*, 970 F.2d 874, 876, 23 USPQ2d 1698, 1700 (Fed Cir. 1992) (finding similarity between CENTURY 21 and CENTURY LIFE OF AMERICA in part because "consumers must first notice th[e] identical lead word"); *see also In re Detroit Athletic Co.*, 903 F.3d 1297, 1303, 128 USPQ2d 1047, 1049 (Fed. Cir. 2018) (finding "the identity of the marks' two initial words is particularly significant because consumers typically notice those words first").

Here, the first word in each of the marks is "SHEARSON." This dominant term is identical in usage in terms of sound, appearance, and meaning across each of the marks. Marks may be confusingly similar in appearance where similar terms or phrases or similar parts of terms or phrases appear in the compared marks and create a similar overall commercial impression. *See Crocker Nat'l Bank v. Canadian Imperial Bank of Commerce*, 228 USPQ 689, 690-91 (TTAB 1986), *aff'd sub nom. Canadian Imperial Bank of Commerce v. Wells Fargo Bank, Nat'l Ass'n* , 811 F.2d 1490, 1495, 1 USPQ2d 1813, 1817 (Fed. Cir. 1987) (finding COMMCASH and COMMUNICASH confusingly similar); *In re Corning Glass Works*, 229 USPQ 65, 66 (TTAB 1985) (finding CONFIRM and CONFIRMCELLS confusingly similar); *In re Pellerin Milnor Corp.*, 221 USPQ 558, 560 (TTAB 1983) (finding MILTRON and MILLTRONICS confusingly similar); TMEP §1207.01(b)(ii)-(iii).

Therefore, the marks are identical in part, and highly similar in terms of connotation and overall commercial impression.

**Similarity of the Services**

The services are compared to determine whether they are similar, commercially related, or travel in the same trade channels. *See Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1369-71, 101 USPQ2d 1713, 1722-23 (Fed. Cir. 2012); *Herbko Int'l, Inc. v. Kappa Books, Inc.* , 308 F.3d 1156, 1165, 64 USPQ2d 1375, 1381 (Fed. Cir. 2002); TMEP §§1207.01, 1207.01(a)(vi).

The compared services need not be identical or even competitive to find a likelihood of confusion. *See On-line Careline Inc. v. Am. Online Inc.*, 229 F.3d 1080, 1086, 56 USPQ2d 1471, 1475 (Fed. Cir. 2000); *Recot, Inc. v. Becton*, 214 F.3d 1322, 1329, 54 USPQ2d 1894, 1898 (Fed. Cir. 2000); TMEP §1207.01(a)(i). They need only be "related in some manner and/or if the circumstances surrounding their marketing are such that they could give rise to the mistaken belief that [the goods and/or services] emanate from the same source." *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1369, 101 USPQ2d 1713, 1722 (Fed. Cir. 2012) (quoting *7-Eleven Inc. v. Wechsler*, 83 USPQ2d 1715, 1724 (TTAB 2007)); TMEP §1207.01(a)(i).

Applicant has identified "Financial services, namely, corporate workout, debt restructuring, receivership, and loan resolution for commercial loans" in International Class 36. The mark in U.S. Registration No. 3610292 is for "Financial services, namely, securities brokerage, financial investment and consulting and investment banking" in International Class 36. The marks in U.S. Registration Nos. 4011662, 4046912, & 4056114 are for "Securities brokerage, investment brokerage, financial and investment consulting, and investment banking services; investment of funds for others; investment management; financial portfolio management; financial asset management; financial planning for retirement;

financial administration of retirement plans; and financial services, namely, estate asset acquisition and estate settlement services" in International Class 36.

Determining likelihood of confusion is based on the description of the services stated in the application and registration at issue, not on extrinsic evidence of actual use. *See In re Detroit Athletic Co.*, 903 F.3d 1297, 1307, 128 USPQ2d 1047, 1052 (Fed. Cir. 2018) (citing *In re i.am.symbolic, llc*, 866 F.3d 1315, 1325, 123 USPQ2d 1744, 1749 (Fed. Cir. 2017)).

In this case, the registrations all use broad wording to describe various types of financial services in general, which presumably encompasses all services of the type described, including applicant's more narrow financial services in relation to debt. *See, e.g.*, *In re Solid State Design Inc.*, 125 USPQ2d 1409, 1412-15 (TTAB 2018); *Sw. Mgmt., Inc. v. Ocinomled, Ltd.*, 115 USPQ2d 1007, 1025 (TTAB 2015). Thus, applicant's and registrant's services are legally identical. *See, e.g.*, *In re i.am.symbolic, llc*, 127 USPQ2d 1627, 1629 (TTAB 2018) (citing *Tuxedo Monopoly, Inc. v. Gen. Mills Fun Grp., Inc.*, 648 F.2d 1335, 1336, 209 USPQ 986, 988 (C.C.P.A. 1981); *Inter IKEA Sys. B.V. v. Akea, LLC*, 110 USPQ2d 1734, 1745 (TTAB 2014); *Baseball Am. Inc. v. Powerplay Sports Ltd.*, 71 USPQ2d 1844, 1847 n.9 (TTAB 2004)).

Additionally, the services of the parties have no restrictions as to nature, type, channels of trade, or classes of purchasers and are "presumed to travel in the same channels of trade to the same class of purchasers." *In re Viterra Inc.*, 671 F.3d 1358, 1362, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012) (quoting *Hewlett-Packard Co. v. Packard Press, Inc.*, 281 F.3d 1261, 1268, 62 USPQ2d 1001, 1005 (Fed. Cir. 2002)). Thus, applicant's and registrant's services are related.

**Summary**

In sum, applicant's mark is identical in part and highly similar in connotation and overall commercial impression to each of the registered marks. In addition, applicant's services are similar to the services identified in the registrations. Thus, it is likely consumers will mistakenly believe the services emanate from the same source. The overriding concern is not only to prevent buyer confusion as to the source of the services, but to protect the registrant from adverse commercial impact due to use of a similar mark by a newcomer. *See In re Shell Oil Co.*, 992 F.2d 1204, 1208, 26 USPQ2d 1687, 1690 (Fed. Cir. 1993). Therefore, any doubt regarding a likelihood of confusion determination is resolved in favor of the registrant. TMEP §1207.01(d)(i); *see Hewlett-Packard Co. v. Packard Press, Inc.*, 281 F.3d 1261, 1265, 62 USPQ2d 1001, 1003 (Fed. Cir. 2002); *In re Hyper Shoppes (Ohio), Inc.*, 837 F.2d 463, 464-65, 6 USPQ2d 1025, 1026 (Fed. Cir. 1988).

Accordingly, registration is refused pursuant to Section 2(d) of the Trademark Act.

Applicant should note the following potential ground for refusal.

**PRIOR-FILED APPLICATION**

The filing date of pending U.S. Application Serial No. 86081143 precedes applicant's filing date. See attached referenced application. If the mark in the referenced application registers, applicant's mark may be refused registration under Trademark Act Section 2(d) because of a likelihood of confusion between the two marks. *See* 15 U.S.C. §1052(d); 37 C.F.R. §2.83; TMEP §§1208 *et seq.* Therefore, upon receipt of applicant's response to this Office action, action on this application may be suspended pending final disposition of the earlier-filed referenced application.

In response to this Office action, applicant may present arguments in support of registration by addressing the issue of the potential conflict between applicant's mark and the mark in the referenced application. Applicant's election not to submit arguments at this time in no way limits applicant's right to address this issue later if a refusal under Section 2(d) issues.

Although applicant's mark has been refused registration, applicant may respond to the refusals and potential refusal by submitting evidence and arguments in support of registration.

If applicant responds to the refusals and potential refusal, applicant must also respond to the requirements set forth below.

**INFORMATION ABOUT APPLICANT REQUIRED**

Due to the renown of the institution named in the mark, and the fact that there is no information in the application record regarding a connection with applicant, applicant must specify whether the institution named in the mark has any connection with applicant's services, and if so, must describe the nature and extent of that connection. *See* 37 C.F.R. §2.61(b); TMEP §1203.03(c)(i).

**INFORMATION ABOUT OWNERSHIP REQUIRED**

Applicant has requested that the applicant name be amended; however, applicant has not provided or recorded in the USPTO database ownership

transfer documentation or any other documentation showing transfer of title nor has applicant indicated whether the assignee is a successor to applicant's business.  An intent-to-use application is void if, prior to filing an allegation of use, the application is assigned to a party other than either a successor to the applicant's business or to a portion of the applicant's business to which the mark pertains, if that business is ongoing and existing.  15 U.S.C. §1060(a)(1); 37 C.F.R. §3.16; TMEP §501.01(a); *see Cent. Garden & Pet Co. v. Doskocil Mfg. Co.*, 108 USPQ2d 1134, 1146 (TTAB 2013); *Clorox Co. v. Chem. Bank*, 40 USPQ2d 1098, 1105-06 (TTAB 1996).  Accordingly, the request to amend the applicant name is denied until (1) clear chain of title to the new party has been established and (2) a statement that the assignee is a successor to applicant's business is provided.  37 C.F.R. §2.61(b); TMEP §814.

To establish chain of title to the application, one of the following must be satisfied:

(1)   The new owner must (a) record an assignment, name change, or other documentation affecting title with the USPTO's Assignment Recordation Branch showing a clear chain of title to the mark in the new owner; and (b) promptly notify the trademark examining attorney that the documentation has been recorded.; *OR*

(2)   The new owner must file either (a) a written statement, verified with an affidavit or signed declaration under 37 C.F.R. §2.20, explaining in detail the chain of title to the new owner; or (b) documentation showing transfer of title to the new owner.  However, the registration will not issue in the name of the new owner without recording chain of title documentation with the USPTO and notifying the trademark examining attorney, as specified in (1) above.

TMEP §502.01; *see* 15 U.S.C. §1060; 37 C.F.R. §§2.193(e)(1), 3.73(b)(1); TMEP §502.02(a).

Assignments and other documents affecting title may be filed electronically.  There is a fee for recording ownership changes.  37 C.F.R. §§2.6(b)(6), 3.41(a); TMEP §503.03(d).  Recording an assignment or other ownership transfer document does not constitute a response to an Office action.  TMEP §503.01(d).  Applicant must still file a separate response to this Office action.  *See id*.

**IDENTIFICATION OF SERVICES**

The proposed amendments to the identification are not acceptable because it exceeds the scope of the identification in the application.  *See* 37 C.F.R. §§2.32(a)(6), 2.71(a); TMEP §§805, 1402.06 *et seq.*, 1402.07.  Applicant's services may be clarified or limited, but may not be expanded beyond those originally itemized in the application or as acceptably amended.  *See* 37 C.F.R. §2.71(a); TMEP §1402.06.  Therefore, the original identification in the application, and any previously accepted amendments, remain operative for purposes of future amendment.  *See* 37 C.F.R. §2.71(a); TMEP §1402.07(d).

In this case, the application originally identified the services as follows:  "Financial services, namely, corporate workout, debt restructuring, receivership, and loan resolution for commercial loans."

However, the proposed amendment on August 6, 2019, identified the following services:  "Financial services, namely, advising corporations on debt and financial restructuring, bankruptcy reorganization and divestitures, namely, sales of entities and their stock and assets; strategic planning and capital raising for corporations, start-ups, emerging companies, private equity fund and other similar corporate entities; stock loans; arranging financing for start-ups, emerging companies, private equity funds and other similar corporate entities; merchant banking; investment banking; underwriting, namely, underwriting offers of securities as manager, co-manager or syndicate member; private placements; investment management and advice; financial consultancy, planning, research and appraisal of corporate entities; financial evaluation and other wealth management services, namely, for high net worth individuals, for pension and other institutional accounts; trading and dealing in stocks, securities and other financial products, namely, bonds and advisory services relating thereto; brokerage and dealer services in the field of stocks and securities; providing financial news and information via a global communication network; financial investment and financial advisory services in the field of real estate; leasing of real estate; real estate acquisition services; real estate appraisal; real estate equity sharing, namely, managing and arranging for co-ownership of real estate; real estate investment and real estate management; advising others regarding intellectual property investments; Financial investment brokerage services; investment banking; administering the issuance; underwriting; distribution of securities; Financial planning and investment advisory services; investment advice; investment management; investment consultation; investment of funds for others; including private; public equity and debt investment services; investment fund transfer; transaction services; operation and management of hedge funds; commodity pools and other collective investment vehicles; trading for others of securities, options, futures, derivatives, debt instruments and commodities; management and brokerage in the fields of stocks, bonds, options, commodities, futures and other securities; and the investment of funds of others."

And further amendments on September 4, 2019, identified the following services instead:  "Securities lending; Financing publicly traded securities."

This proposed amendment is beyond the scope of the original identification because the original services were extremely narrow in terms of working out debt in certain circumstances, and most of the first amendments broadened the scope to financial services in general, and the second amendment is a completely different financial field.

Applicant should note that any wording in **bold**, in *italics*, underlined and/or in ALL CAPS below offers guidance and/or shows the changes being proposed for the identification of goods and/or services.  If there is wording in the applicant's version of the identification of goods and/or services which should be removed, it will be shown with a line through it such as this: ~~strikethrough~~.  When making its amendments, applicant should enter them in standard font, not in **bold**, in *italics*, underlined and/or in ALL CAPS.

Applicant should note the following changes:

> International Class 36:  ~~Securities Lending; Financing Publicly Traded Securities~~ **FINANCIAL SERVICES, NAMELY, CORPORATE WORKOUT, DEBT RESTRUCTURING, RECEIVERSHIP, AND LOAN RESOLUTION FOR COMMERCIAL LOANS**

Applicant's services may be clarified or limited, but may not be expanded beyond those originally itemized in the application or as acceptably amended.  *See* 37 C.F.R. §2.71(a); TMEP §1402.06.  Applicant may clarify or limit the identification by inserting qualifying language or deleting items to result in a more specific identification; however, applicant may not substitute different services or add services not found or encompassed by those in the original application or as acceptably amended.  *See* TMEP §1402.06(a)-(b).  The scope of the services sets the outer limit for any changes to the identification and is generally determined by the ordinary meaning of the wording in the identification.  TMEP §§1402.06(b), 1402.07(a)-(b).  Any acceptable changes to the services will further limit scope, and once services are deleted, they are not permitted to be reinserted.  TMEP §1402.07(e).

For assistance with identifying and classifying services in trademark applications, please see the USPTO's online searchable *U.S. Acceptable Identification of Goods and Services Manual*.  *See* TMEP §1402.04.

**RESPONSE GUIDELINES**

For this application to proceed, applicant must explicitly address each refusal, potential refusal, and requirement in this Office action.  For a refusal, applicant may provide written arguments and evidence against the refusal, and may have other response options if specified above.  For a requirement, applicant should set forth the changes or statements.  Please see "Responding to Office Actions" and the informational video "Response to Office Action" for more information and tips on responding.

Please call or email the assigned trademark examining attorney with questions about this Office action.  Although the trademark examining attorney cannot provide legal advice or statements about applicant's rights, the trademark examining attorney can provide applicant with additional explanation about the refusals, potential refusal, and requirements in this Office action.  *See* TMEP §§705.02, 709.06.  Although the USPTO does not accept emails as responses to Office actions, emails can be used for informal communications and will be included in the application record.  *See* 37 C.F.R. §§2.62(c), 2.191; TMEP §§304.01-.02, 709.04-.05.

**TEAS PLUS OR TEAS REDUCED FEE (TEAS RF) APPLICANTS – TO MAINTAIN LOWER FEE, ADDITIONAL REQUIREMENTS MUST BE MET, INCLUDING SUBMITTING DOCUMENTS ONLINE:**  Applicants who filed their application online using the lower-fee TEAS Plus or TEAS RF application form must (1) file certain documents online using TEAS, including responses to Office actions (see TMEP §§819.02(b), 820.02(b) for a complete list of these documents); (2) maintain a valid e-mail correspondence address; and (3) agree to receive correspondence from the USPTO by e-mail throughout the prosecution of the application.  *See* 37 C.F.R. §§2.22(b), 2.23(b); TMEP §§819, 820.  TEAS Plus or TEAS RF applicants who do not meet these requirements must submit an additional processing fee of $125 per class of services.  37 C.F.R. §§2.6(a)(1)(v), 2.22(c), 2.23(c); TMEP §§819.04, 820.04.  However, in certain situations, TEAS Plus or TEAS RF applicants may respond to an Office action by authorizing an examiner's amendment by telephone or e-mail without incurring this additional fee.

**How to respond.  Click to file a response to this nonfinal Office action**

> Cameron McBride
> /Cameron McBride/
> Examining Attorney - Trademarks
> Law Office 106
> (571) 272-0542
> Cameron.McBride@uspto.gov

**RESPONSE GUIDANCE**

- **Missing the response deadline to this letter will cause the application to abandon**.  A response or notice of appeal must be received by the USPTO before midnight **Eastern Time** of the last day of the response period. TEAS and ESTTA maintenance or unforeseen circumstances could affect an applicant's ability to timely respond.

- **Responses signed by an unauthorized party** are not accepted and can **cause the application to abandon.** If applicant does not have an attorney, the response must be signed by the individual applicant, all joint applicants, or someone with legal authority to bind a juristic applicant. If applicant has an attorney, the response must be signed by the attorney.

- If needed, **find contact information for the supervisor** of the office or unit listed in the signature block.