# EXHIBIT 45



Cowan, Liebowitz & Latman, P.C.
114 West 47th Street
New York, NY 10036

(212) 790-9200 Tel
(212) 575-0671 Fax
www.cll.com

**Eric J. Shimanoff**
(212) 790-9226
ejs@cll.com

July 22, 2019

**Via Federal Express and Email**

Black Rock Capital LLC
Attn: JT Singh, General Counsel
Old Fort #4 - Western Road, SP-63 771
Nassau, New Providence
BAHAMAS
jt@mannysingh.com
niuj12@outlook.com

Black Rock Capital LLC
Attn: Elizaveta Lata, Director/Secretary
3 Jana Karola Chodkiewicza
Krakow
POLAND

Black Rock Capital LLC
c/o America 2030
736 Western Ave.
Lake Forest, IL 6004
Legal@america2030.com

Jaitegh Singh, Esq.
Law Offices of Manny Singh, P.A.
6610 N University Dr Ste 220
Tamarac, FL 33321

   Re: <u>Shearson Lehman Mark</u>

Dear Mr. Singh and Ms. Lata:

   We represent Barclays PLC (with its affiliates, "Barclays"), one of the world's oldest and leading financial institutions. Barclays is the world-wide owner by assignment of marks containing or comprising LEHMAN, including LEHMAN BROTHERS, in connection with financial services in International Class 36 (collectively, the "LEHMAN Marks").

**Cowan, Liebowitz & Latman, P.C.**
July 22, 2019
Page 2

The LEHMAN Marks were first used by the financial services firm Lehman Brothers Holdings Inc. (with its predecessors and affiliates, collectively, "Lehman Brothers") with the establishment of the LEHMAN BROTHERS trading firm in 1850 and have been used in connection with financial services continuously and consistently for nearly 170 years. Between approximately 1984 to 1993, Lehman Brothers used the names and marks SHEARSON LEHMAN BROTHERS and SHEARSON LEHMAN HUTTON (collectively, the "SHEARSON LEHMAN Marks") in connection with individual investing and asset management services and the mark LEHMAN BROTHERS in connection with investment banking and capital market activities. By 1993, the firm unified business under the name and mark LEHMAN BROTHERS. Lehman Brothers owned several trademark registrations for the SHEARSON LEHMAN Marks, including U.S. Registration Nos. 1714152, 1714151, 1534622 and 1417691.

Barclays acquired the LEHMAN Marks and the goodwill therein by assignment from Lehman Brothers in 2008. At that time, Lehman Brothers was the fourth largest investment bank in the United States, with hundreds of billions of dollars' worth of assets under management and over 25,000 employees in offices worldwide. Although Lehman Brothers filed for bankruptcy in 2008, it has operated continuously since that time, including by investing in, improving, maintaining, managing and selling its sizable assets; settling its vast portfolio of derivate swap agreements; managing and reporting its bankruptcy plan; and maintaining and defending numerous litigations. Lehman Brothers has used and continues to use the LEHMAN Marks in connection with these activities pursuant to license from Barclays.

Barclays itself uses the LEHMAN Marks in connection with its own financial services, including by offering and distributing to Barclays' clients and others in the financial industry legacy LEHMAN BROTHERS branded research, analytics and other reports, guides and materials. Barclays also has licensed the LEHMAN BROTHERS mark to Bloomberg LP in connection with the recent sale of Barclays' bond indices business.

Barclays is the owner of United States Application Serial No. 86081143 for the mark LEHMAN BROTHERS for "Securities brokerage services; investment consulting services; investment banking services; merchant banking services; financial and investment management services; financial planning and investment advisory services; financial research services; administration and valuation of financial investments; financial sponsorship of sporting, charitable and educational events; providing consultancy, information and advisory services relating to all the foregoing" in International Class 36. Barclays also owns numerous registrations for the LEHMAN Marks worldwide, including EUTM Registration No. 83261 for the mark LEHMAN BROTHERS, which registration recently was reaffirmed by the European Union Intellectual Property Office despite a non-use revocation challenge by a third party.

Based on long-term and wide-spread use and promotion, the LEHMAN Marks have become and remain famous. The Lehman Brothers bankruptcy in 2008 was one of the most noted moments of the Great Recession and only heightened the fame of the LEHMAN Marks. Every detail of Lehman Brothers' pre-financial crisis business activities, financial troubles, bankruptcy filing and subsequent business activities has been widely publicized in the press and reflected in popular culture. Consumer recognition of the LEHMAN Marks is just as strong

**Cowan, Liebowitz & Latman, P.C.**
July 22, 2019
Page 3

today as it was in 2008 and Barclays has vigorously enforced its rights against those who unlawfully have sought to take a free ride on the fame of the brand.

It has come to Barclays' attention that you, Black Rock Capital LLC, have filed Application Serial No. 88457946 with the United State Patent and Trademark Office ("USPTO") to register the mark SHEARSON LEHMAN, based on an intent-to-use the mark for a variety of financial services in International Class 36 (the "Infringing Mark").

Your use and/or registration of the Infringing Mark is likely to cause confusion among members of the consuming public. Anyone interested in your purported financial services very easily could believe mistakenly that you or your company are part of or are in some way associated with, affiliated with or endorsed by Barclays and/or its licensee Lehman Brothers. Your use and/or registration of the Infringing Mark, which is nearly identical to the SHEARSON LEHMAN Marks used by Lehman Brothers for nearly a decade, was clearly designed to usurp the renown of the LEHMAN Marks, and to intentionally cause consumer confusion.

Your application to register the Infringing Mark will result in a likelihood of consumer confusion under Section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d), and is likely to falsely suggest a connection with the financial institutions Lehman Brothers under Section 2(a) of the Lanham Act, 15 U.S.C. § 1052(a).

Furthermore, any use the Infringing Mark, or any colorable imitation of the LEHMAN Mark, will constitute false designation of origin, unfair competition and trademark dilution under Sections 43(a) & (c) of the Lanham Act, 15 U.S.C. § 1125(a) & (c), and analogous state and local laws. Such unlawful violations would entitle Barclays to numerous remedies, including without limitation: (i) preliminary and permanent injunctive relief; (ii) monetary damages; (iii) treble damages; (iv) compensation equal to all of your profits; and (v) reimbursement for all of its attorney's fees and costs.

Our client therefore demands that you deliver to our offices by no later than the end of business on **Monday, July 29, 2019**, your written agreement that you will: (i) expressly abandon Application Serial No. 88457946 to register the mark SHEARSON LEHMAN in the USPTO; and (ii) permanently cease and desist from any and all use or registration of any name, mark or domain name containing, comprising or confusingly similar to the LEHMAN Marks, including without limitation, the Infringing Mark.

Please be advised that our client takes its intellectual property rights and violations thereof very seriously. Any response that does not conform to the above requirements shall be interpreted to mean that you continue to intend to use the Infringing Mark in willful violation of Barclays' intellectual property rights, requiring Barclays to take further legal action.

This correspondence is without prejudice to any of our client's rights and remedies in law and equity, all of which are expressly reserved.

**Cowan, Liebowitz & Latman, P.C.**
July 22, 2019
Page 4

Sincerely,

Eric J. Shimanoff



**SINGH LAW FIRM, P.A.**
132 E. 43rd Street
Suite 618
New York, NY 10017

Jaitegh Singh (FL, NJ, NY, & CO)
Direct Phone: (212) 687-2578
jt@jtsinghlaw.com

July 29, 2019

Cowan, Liebowitz & Latman, P.C.
Attn: Eric J. Shimanoff
114 West 47th Street
New York, NY 10036
212-790-9226
ejs@cll.com

*Sent Via Federal Express and Email*

**RE: *Shearson Lehman Mark***

Dear Mr. Eric J. Shimanoff;

　　We are legal counsel for Black Rock Capital, LLC. We understand concerns with regards to potential infringement matters and are willing to work to an agreement. We are not conceding to any potential infringement actions by our clients for we do not believe our client will infringe on any rights of Barclays. Nor do we believe Barclays has any standing.

　　The consolidated opposition filed with the USPTO for opposition numbers 91219477, 91219478, and 91219549 showcases that the trademark in question is still in opposition.

　　Tiger Lily seeks to register the mark LEHMAN BROTHERS in standard characters for "Bar services; Restaurant services"; and for "Spirits" and "Beer." On the other hand, Barclays seeks to register LEHMAN BROTHERS in standard characters for securities brokerage and various investment and financial services.

　　In its notices of opposition, Barclays asserts it is the owner by assignment of the LEHMAN BROTHERS by the defunct organization. Barclays asserts that the trademark was transferred to them by Lehman Brothers by assignment when Barclays acquired the bankrupt investment firm during the 2008 financial crises.

　　Barclays also argues that such marks are famous; that confusion is likely  between Barclays' previously used marks and Tiger Lily's mark; that registration of  Tiger  Lily's  mark

---

will dilute the distinctive quality of Barclays' marks; that Tiger Lily's mark falsely suggests a connection between Tiger Lily and Barclays (and/or Lehman Brothers, the predecessor-in-interest of Barclays); and that at the time Tiger Lily filed its applications, it did not have a bona fide intent to use the mark in commerce.

On the other hand, Tiger Lily alleges that Barclays did not have a bona fide intent to use the LEHMAN BROTHERS mark in commerce when it filed its application; and that Barclays' verified statement of bona fide intent to use the mark in commerce "was submitted fraudulently and renders the Application void ab initio because the available evidence shows that over the past six years, [Barclays] has steered clear of using the 'Lehman Brothers' to sell securities." The problem with making an accusation in your letter is the precise argument raised by Tiger Lilly, i.e. Barclays has not used the trademark in six years and has abandoned LEHMAN BROTHERS trademark.

**Three live trademarks, which are still in opposition are:**

# LEHMAN BROTHERS

http://tmsearch.uspto.gov/bin/gate.exe?f=doc&state=4805:u5490.4.2
Owner: Barclays Capital Inc.
Filed: October 2, 2013
Published for opposition: September 30, 2014

# Lehman Brothers

http://tmsearch.uspto.gov/bin/gate.exe?f=doc&state=4805:u5490.4.5
Owner: Tiger Lily Ventures Ltd
Filed: June 2, 2014
Published for opposition: October 28, 2014

# LEHMAN BROTHERS

http://tmsearch.uspto.gov/bin/gate.exe?f=doc&state=4805:u5490.4.6
Owner: Tiger Lily Ventures Ltd
Filed: March 6, 2013
Published for opposition: May 27, 2014

Further, there exists no evidence that Barclays has been operating or utilizing the Lehman Brothers trademark. There is no evidence that Lehman Brothers is incorporated anywhere, and all evidence points to the fact that Lehman Brothers is out of business and bankrupt. The evidence shows that Barclays cannot be so concerned about the Lehman Brothers name, because Barclays did not trademark various variations of it. Instead Barclays abandoned Lehman Brothers name or never had any rights to it.

Unfortunately, your client has no standing because they do not own the trademark which could in any way be confusing to ours. Any interference with our duly executed trademark will be viewed by our client as frivolous bullying and tortious interference, along with other claims such as deprivation of rights and damages for loss of speculative profit. Any claim on part of Barclays will be met with a counterclaim for substantial damages.

As you may know, Barclays has abandoned the trademark of Lehman Brothers for many years but then decided to file an opposition back in 2014 because they felt like they wanted the trademark back. This form of action is not equitable to the decency of a reasonable person acting in a reasonable or prudent way. This is reminiscent of wanting something back which was abandoned, cancelled and forfeited. Below you may find a great depiction of Lehman Brothers current situation:



| Lehman Brothers Holdings Inc. | |
| --- | --- |
| **LEHMAN BROTHERS** | |
| Trade name | Lehman Brothers |
| Former type | Public |
| Traded as | NYSE: LEH |
| Industry | Investment services |
| Fate | Chapter 11 bankruptcy liquidation |
| Predecessor | H. Lehman and Bro. |
| Successors | Nomura Holdings |
| | Barclays |
| Founded | 1850; 169 years ago Montgomery, Alabama, U.S.[1] |
| Founders | Henry, Emanuel, and Mayer Lehman |
| Defunct | 2008; 11 years ago |
| Headquarters | New York City, New York, United States |

Further, in case you are not aware the trademark status that you are speaking about is not revivable as seen below:



Courts have long held that the touchstone of liability for trademark infringement is whether a person's use of the mark is likely to cause confusion among consumers regarding the origin of the goods or services offered by the parties. Our clients are willing to clear up any confusion as to the origin of the goods/services so that there is no confusion that the goods/services are coming from your client.

Courts have further held in order to establish infringement of a registered trademark, the trademark holder must show that it is the owner of a valid, protectable mark, and that the alleged infringer is using a confusingly similar mark. It is a factual determination as to whether "Shearson Lehman" and "Lehman Brothers" are confusingly similar.

As you may know, over the year's courts have held trademark infringement is the unauthorized use of a trademark or service mark or a substantially similar mark on competing or related goods and services. The success of a lawsuit to stop the infringement turns on whether the defendant's use causes a likelihood of confusion in the average consumer. It is clear there is no confusion for the ordinary consumer with regard to these marks and further Barclays does not have clear and free title to the Lehman Brothers trademark.

Black Rock Capital, LLC is outside of the domain of the name-mark attached to your original letter. We maintain that "Shearson Lehman" is not confusingly similar to "Lehman Brothers." Our client will continue to maintain the trademark "Shearson Lehman."

However, if our trademark is important to Barclays, our client is willing to sell the Shearson Lehman mark to your client.


Sincerely,

Jaitegh Singh, Esq.
Managing Partner at Singh Law Firm, P.A.



Cowan, Liebowitz & Latman, P.C.
114 West 47th Street
New York, NY 10036

(212) 790-9200 Tel
(212) 575-0671 Fax
www.cll.com

**Eric J. Shimanoff**
(212) 790-9226
ejs@cll.com

August 8, 2019

<u>**Via Email**</u>

Singh Law Firm, P.A.
Attn: Jaitegh Singh
132 E. 43rd Street, Suite 618
New York, NY 10017
jt@jtsinghlaw.com

  Re: <u>Shearson Lehman</u>

Dear Mr. Singh:

  This is in response to your letter dated July 29, 2019. The tone and substance of your letter confirms our suspicions as to your client's bad faith in its applications to register the marks SHEARSON LEHMAN and SHEARSON LEHMAN HUTTON. It is apparent that your client is engaged in blatant efforts to free ride off of, and usurp the goodwill of, the names and marks used by several well-known financial institutions. Beyond your client's name "Black Rock Capital LLC" (which is an obvious appropriation of the name of the well-known investment management firm BlackRock), the screenshot below from the USPTO TESS database shows that your client has at least 9 pending applications which trade off of the names of old, well-known financial institutions and names.

Refine Search ("black rock capital")[OW]  Submit

Current Search: S1: ("black rock capital")[OW] docs: 14 occ: 14

|   | Serial Number | Reg. Number | Word Mark | Check Status | Live/Dead |
|---|---|---|---|---|---|
| 1 | 88536616 | | PRICE WATERHOUSE COOPERS | TSDR | LIVE |
| 2 | 88536605 | | ARTHUR ANDERSEN | TSDR | LIVE |
| 3 | 88536590 | | CORNELIUS VANDERBILT | TSDR | LIVE |
| 4 | 88536572 | | JOHN D. ROCKEFELLER | TSDR | LIVE |
| 5 | 88536550 | | ANDREW CARNEGIE | TSDR | LIVE |
| 6 | 88536535 | | SAL. OPPENHEIM | TSDR | LIVE |
| 7 | 88536436 | | SHEARSON LEHMAN HUTTON | TSDR | LIVE |
| 8 | 88457959 | | PENN STATE FINANCIAL | TSDR | LIVE |
| 9 | 88457955 | | WASHINGTON MUTUAL | TSDR | LIVE |
| 10 | 88457949 | | BEAR STEARNS | TSDR | LIVE |
| 11 | 88457946 | | SHEARSON LEHMAN | TSDR | LIVE |
| 12 | 88457944 | | DREYFUS FINANCIAL | TSDR | LIVE |
| 13 | 88457942 | | AMERICA 2030 | TSDR | LIVE |
| 14 | 88457938 | | BENTLEY ROTHSCHILD | TSDR | LIVE |

**Cowan, Liebowitz & Latman, P.C.**
August 8, 2019
Page 2

We are particularly troubled that, following our July 22, 2019 letter, your client on July 26, 2019 filed a *second* trademark application which infringes on our client's rights: App. No. 88536436 for the mark SHEARSON LEHMAN HUTTON (collectively with your application to register SHEARSON LEHMAN, the "Infringing Marks"). Your offer to sell the Infringing Mark is further evidence of your bad faith, and your lack of bona-fide intent to use the mark in commerce. To be clear, our client **will not pay** your client to stop the use or registration of a mark that your client has no rights to use or register, especially when the Infringing Mark infringes on our client's rights. In any event, these applications lack priority over our client's prior-filed App. No. 86081143 for the mark LEHMAN BROTHERS.

You seem to be ill-informed as to our client's rights in and to the LEHMAN Marks, apparently relying on Wikipedia for your information. Despite your assertions to the contrary, Lehman Brothers Holdings Inc. remains an active company, incorporated in Delaware and authorized to do business in New York, among other jurisdictions. See Exhibit A.

As explained in our July 22 letter, our client and its predecessors-in-interest and licensees have used the LEHMAN Marks in connection with financial services since the year 1850. This use included the names and marks SHEARSON LEHMAN BROTHERS and SHEARSON LEHMAN HUTTON between approximately 1984 to 1993. Although Lehman Brothers filed for bankruptcy in 2008, it has operated continuously since that time. Lehman Brothers has used and continues to use the name and mark LEHMAN BROTHERS, pursuant to license from Barclays. Barclays itself uses the LEHMAN Marks in connection with its own financial services, including by offering and distributing to Barclays' clients and others in the financial industry legacy LEHMAN BROTHERS branded research, analytics and other reports, guides and materials. Voluminous additional information and evidence showing our client's active status, its use of the LEHMAN Marks, and the fame and renown of the marks, can be viewed at the Trademark Trial and Appeal Board (TTAB), including via the link below.
http://ttabvue.uspto.gov/ttabvue/v?pno=91219477&pty=OPP&eno=27

Your statements as to our client's lack of standing are therefore meritless. Our client has standing to enforce its trademark rights, including without limitation, rights in and to unregistered common law trademarks. Your allegations of "frivolous bullying", "tortious interference", "deprivation of rights" and "damages for loss of speculative profit" are facially spurious and devoid of merit, and do not warrant a substantive response.

Our client therefore repeats its demand that you and your client: (i) expressly abandon Application Serial Nos. 88457946 and 88536436 to register the respective marks SHEARSON LEHMAN and SHEARSON LEHMAN HUTTON in the USPTO; and (ii) permanently cease and desist from any and all use or registration of any name, mark or domain name containing, comprising or confusingly similar to the LEHMAN Marks, including without limitation, the Infringing Marks.

The USPTO is very likely to preliminarily refuse registration of your applications based on likelihood of confusion with our prior marks, and false suggestion of a connection with our client, its predecessors, affiliates and/or licensees. In the event that your applications are

**Cowan, Liebowitz & Latman, P.C.**
August 8, 2019
Page 3

approved for publication by the USPTO, our client intends to oppose them at the TTAB. To avoid this time and expense, we strongly suggest that your client expressly abandon these applications, and avoid using or filing for trademarks which will cause likelihood of confusion with, or falsely suggest a connection to, Barclays, Lehman Brothers, or any of our client's affiliates or licensees.

This correspondence is without prejudice to any of our client's rights and remedies in law and equity, all of which are expressly reserved.

Sincerely,

Eric J. Shimanoff

28827/162/3109589

# **EXHIBIT A**



# Delaware

Page 1

### The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY "LEHMAN BROTHERS HOLDINGS INC." IS DULY INCORPORATED UNDER THE LAWS OF THE STATE OF DELAWARE AND IS IN GOOD STANDING AND HAS A LEGAL CORPORATE EXISTENCE SO FAR AS THE RECORDS OF THIS OFFICE SHOW, AS OF THE SIXTEENTH DAY OF OCTOBER, A.D. 2018.

AND I DO HEREBY FURTHER CERTIFY THAT THE ANNUAL REPORTS HAVE BEEN FILED TO DATE.

AND I DO HEREBY FURTHER CERTIFY THAT THE SAID "LEHMAN BROTHERS HOLDINGS INC." WAS INCORPORATED ON THE TWENTY-NINTH DAY OF DECEMBER, A.D. 1983.

AND I DO HEREBY FURTHER CERTIFY THAT THE FRANCHISE TAXES HAVE BEEN PAID TO DATE.

Jeffrey W. Bullock, Secretary of State

2024634  8300

SR# 20187168536

You may verify this certificate online at corp.delaware.gov/authver.shtml

Authentication: 203621957

Date: 10-16-18

# NYS Department of State

## Division of Corporations

### Entity Information

The information contained in this database is current through July 29, 2019.

Selected Entity Name: LEHMAN BROTHERS HOLDINGS INC.
Selected Entity Status Information

| | |
|---|---|
| **Current Entity Name:** | LEHMAN BROTHERS HOLDINGS INC. |
| **DOS ID #:** | 909570 |
| **Initial DOS Filing Date:** | APRIL 16, 1984 |
| **County:** | NEW YORK |
| **Jurisdiction:** | DELAWARE |
| **Entity Type:** | FOREIGN BUSINESS CORPORATION |
| **Current Entity Status:** | ACTIVE |

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**
CORPORATION SERVICE COMPANY
80 STATE ST
ALBANY, NEW YORK, 12207-2543

**Chief Executive Officer**

CHRISTOPHER O'MEARA
277 PARK AVENUE
46TH FLOOR
NEW YORK, NEW YORK, 10172

**Principal Executive Office**

LEHMAN BROTHERS HOLDINGS INC.
277 PARK AVENUE
46TH FLOOR
NEW YORK, NEW YORK, 10172

**Registered Agent**

THE PRENTICE-HALL CORPORATION SYSTEM, INC.
80 STATE STREET
ALBANY, NEW YORK, 12207

This office does not record information regarding the names and addresses of officers, shareholders or directors of nonprofessional corporations except the chief executive officer, if provided, which would be listed above. Professional corporations must include the name(s) and address(es) of the initial officers, directors, and shareholders in the initial certificate of incorporation, however this information is not recorded and only available by viewing the certificate.

### *Stock Information

| # of Shares | Type of Stock | $ Value per Share |
|---|---|---|
| | No Information Available | |

*Stock information is applicable to domestic business corporations.

### Name History

| Filing Date | Name Type | Entity Name |
|---|---|---|
| AUG 04, 1993 | Actual | LEHMAN BROTHERS HOLDINGS INC. |
| SEP 21, 1990 | Actual | SHEARSON LEHMAN BROTHERS HOLDINGS INC. |
| MAY 11, 1988 | Actual | SHEARSON LEHMAN HUTTON HOLDINGS INC. |
| MAR 20, 1985 | Actual | SHEARSON LEHMAN BROTHERS HOLDINGS INC. |
| APR 16, 1984 | Actual | SHEARSON/AMERICAN EXPRESS HOLDINGS INC. |

A **Fictitious** name must be used when the **Actual** name of a foreign entity is unavailable for use in New York State. The entity must use the fictitious name when conducting its activities or business in New York State.

NOTE: New York State does not issue organizational identification numbers.

Search Results    New Search

Services/Programs   |   Privacy Policy   |   Accessibility Policy   |   Disclaimer   |   Return to DOS Homepage   |   Contact Us



**SINGH LAW FIRM, P.A.**
132 E. 43rd Street
Suite 618
New York, NY 10017

Jaitegh Singh (FL, NJ, NY, & CO)
Direct Phone: (212) 687-2578
jt@jtsinghlaw.com

August 21, 2019

Attn: Eric J. Shimanoff
114 West 47th Street
New York, NY 10036
 (212) 790-9226

*Sent Via E-mail*

### Re: Shearson Lehman

Dear Mr. Shimanoff:

This is in response to your letter dated August 8, 2019. The tone and substance of your letter confirms our suspicions as to your client's reckless disregard for the law, reality, and logic in regard to my client's proper registration of the marks SHEARSON LEHMAN and SHEARSON LEHMAN HUTTON. Your client has no standing and owns no trademark remotely close. Not sure why you keep sending me letters.

*"Trademark, same name, same class" means more than one business entity registering the same trademark name in the same product and service class with the USPTO.* However, as you may know if the names only sound alike but aren't spelled alike, they can be in the same class without issues pursuant to the USPTO guidelines on filings a trademark. All the trademarks you have listed are not taken or spelled in that manner, which allows for trademarking such entity names especially under a different class.

Further, as you may know my client will not stop the use or registration of a mark because he has the right to register a trademark with a different spelling and class, which does not infringe on your client's rights. If you would like to use such a trademark you would have to pay my client royalties.

As you may know on September 15, 2008 Lehman Brothers filed for Chapter 11 bankruptcy protection. The certificate of good standing you submitted in your letter has only been authenticated on October 16, 2018. Further, that entity is very likely a shell entity in existence to settle bankruptcy matters. Please procure proof of the active status of the corporation by way of

---

**Securities Litigation** | **International Arbitration** | **Complex Business Transactions**
Complex Commercial Litigation | **Mergers & Acquisitions** | International Law
**Initial Public Offerings** | Federal Civil Litigation | **Criminal Defense**

tax returns for services rendered or goods sold within the last twelve months and provide proof evidencing your clients trademark ownership of Shearson Lehman name.

In sum, regardless of the activity of "Lehman Brothers Holdings, Inc.", the trademarks my client registered are available on the USPTO pursuant to federal trademark law. The entity Lehman Brothers Holdings, Inc. nor your client has their rights infringed upon. Please reconsider paying royalties to my client for the use of the trademark names and please be aware that any legal action if brought will be fiercely defended together with substantial counterclaim brought against your client.

Sincerely,

Jaitegh Singh, Esq.

Partner at Singh Law Firm, P.A.



Cowan, Liebowitz & Latman, P.C.
114 West 47th Street
New York, NY  10036

(212) 790-9200 Tel
(212) 575-0671 Fax
www.cll.com

**Eric J. Shimanoff**
(212) 790-9226
ejs@cll.com

April 28, 2020

<u>**Via Federal Express & Email**</u>

Vladimir "Val" Sklarov
142 Gold Springs Court
Canton, GA 30114
investments18@msn.com

Vladimir "Val" Sklarov
221 S. Ridge Rd.
Lake Forest, IL 60045

Vladimir "Val" Sklarov
c/o America 2030 Capital Limited
1301 Shiloh Rd., NW, Suite 1231
Kennesaw, GA 30144
val@america2030.net

Vladimir "Val" Sklarov
c/o Bentley Rothschild Financial LLC
736 Western Avenue, Suite 301
Lake Forest IL 60045

Vladimir "Val" Sklarov
c/o Newburgh Capital Ltd.
New Horizon Building, Ground Floor
3 ½ Miles Philip S.W. Goldson Highway
Belize City, Belize

Re:    <u>Violation of Barclays' Intellectual Property Rights</u>

Dear Mr. Sklarov:

We represent Barclays PLC (with its affiliates, "Barclays"), one of the world's oldest and leading financial institutions.   Barclays is the world-wide owner by assignment of marks containing or comprising LEHMAN, including LEHMAN BROTHERS, in connection with financial services in International Class 36 (collectively, the "LEHMAN Marks").

**Cowan, Liebowitz & Latman, P.C.**
Vladimir "Val" Sklarov
April 28, 2020
Page 2

The LEHMAN Marks were first used by the financial services firm Lehman Brothers Holdings Inc. (with its predecessors and affiliates, collectively, "Lehman Brothers") with the establishment of the LEHMAN BROTHERS trading firm in 1850 and have been used in connection with financial services continuously and consistently for 170 years. Between approximately 1984 to 1993, Lehman Brothers used the names and marks SHEARSON LEHMAN BROTHERS and SHEARSON LEHMAN HUTTON (collectively, the "SHEARSON LEHMAN Marks") in connection with individual investing and asset management services and the mark LEHMAN BROTHERS in connection with investment banking and capital market activities. By 1993, the firm unified business under the name and mark LEHMAN BROTHERS. Lehman Brothers owned several trademark registrations for the SHEARSON LEHMAN Marks, including U.S. Registration Nos. 1714152, 1714151, 1534622 and 1417691.

Barclays acquired the LEHMAN Marks and the goodwill therein by assignment from Lehman Brothers in 2008. At that time, Lehman Brothers was the fourth largest investment bank in the United States, with hundreds of billions of dollars worth of assets under management and over 25,000 employees in offices worldwide. Although Lehman Brothers filed for bankruptcy in 2008, it has operated continuously since that time, including by investing in, improving, maintaining, managing and selling its sizable assets; settling its vast portfolio of derivate swap agreements; managing and reporting its bankruptcy plan; and maintaining and defending numerous litigations. Lehman Brothers has used and continues to use the LEHMAN Marks in connection with these activities pursuant to license from Barclays.

Barclays itself uses the LEHMAN Marks in connection with its own financial services, including by offering and distributing to Barclays' clients and others in the financial industry legacy LEHMAN BROTHERS branded research, analytics and other reports, guides and materials. Barclays also has licensed the LEHMAN BROTHERS mark to Bloomberg LP in connection with the recent sale of Barclays' bond indices business.

Barclays is the owner of United States Application Serial No. 86081143 for the mark LEHMAN BROTHERS for "Securities brokerage services; investment consulting services; investment banking services; merchant banking services; financial and investment management services; financial planning and investment advisory services; financial research services; administration and valuation of financial investments; financial sponsorship of sporting, charitable and educational events; providing consultancy, information and advisory services relating to all the foregoing" in International Class 36. Barclays also owns numerous registrations for the LEHMAN Marks worldwide, including EUTM Registration No. 83261 for the mark LEHMAN BROTHERS, which registration recently was reaffirmed by the European Union Intellectual Property Office despite a non-use revocation challenge by a third party.

Based on long-term and wide-spread use and promotion, the LEHMAN Marks have become and remain famous. The Lehman Brothers bankruptcy in 2008 was one of the most noted moments of the Great Recession and only heightened the fame of the LEHMAN Marks. Every detail of Lehman Brothers' pre-financial crisis business activities, financial troubles, bankruptcy filing and subsequent business activities has been widely publicized in the press and

28827/162/3471182

**Cowan, Liebowitz & Latman, P.C.**
Vladimir "Val" Sklarov
April 28, 2020
Page 3

reflected in popular culture.  Consumer recognition of the LEHMAN Marks is just as strong today as it was in 2008 and Barclays has vigorously enforced its rights against those who unlawfully have sought to take a free ride on the fame of the brand.

You should be aware of these facts based on our prior correspondence to you and your attorney, JT Singh, demanding that you and your company Black Rock Capital LLC cease and desist from all attempts to use and register the marks SHEARSON LEHMAN and SHEARSON LEHMAN HUTTON, including by expressly abandoning U.S. Application Ser. Nos. 88457946 and 88536436.  As you are aware, the USPTO has since refused to grant registration those applications under Section 2(d) of the Lanham Act.

Despite our prior notice of Barclays' worldwide rights and demands, and the USPTO's rejection of your prior applications, it has come to our client's attention that, under the guise of the apparent corporate shell Newburgh Capital Ltd., you have applied to register the marks LEHMAN BROTHERS and SHEARSON LEHMAN in connection with financial services in Class 36 in the Principality of Andorra (Application Nos. 041125 & 041044).

Such actions willfully violate Barclays' rights in its LEHMAN Marks, including in that they are likely to cause consumer confusion and to dilute the marks.

Your bad faith is further evidenced by: (1) your prior offer to sell the now-rejected USPTO applications to our client; (2) your history of engaging in criminal and alleged civil fraud; (3) the preliminary injunction recently entered against you in *Rothschild & Co Continuation Holdings A.G. v. Sklarov*, No. 2019 Civ. 03561 (N.D. Ga.); and (4) the numerous trademark applications you have filed in a blatant effort to take a free ride off of, and usurp the goodwill of, the names and marks used by several other well-known financial institutions, including: GEORGE SOROS CAPITAL, WARREN BUFFET CAPITAL, DEAN WITTER REYNOLDS, PRUDENTIAL – BACHELOR, BACHE & CO., SALOMON SMITH BARNEY, DL & J DONALDSON, LUFKIN, & JENRETTE, BENTLEY ROTHSCHILD, PENN STATE FINANCIAL, WASHINGTON MUTUAL, BEAR STEARNS,    DREYFUS    FINANCIAL, OPPENHEIM, PAINE WEBBER, WATERHOUSE COOPERS, ARTHUR ANDERSEN, CORNELIUS VANDERBILT, D. ROCKEFELLER,        ANDREW    CARNEGIE,    SAL. OPPENHEIM, CREDIT SUISSE FIRST BOSTON, BNP PARIBAS FORTIS, ASTOR CAPITAL, FORTIS N.V., MAYER AMSCHEL ROTHSCHILD CAPITAL, SAMUEL WALTON CAPITAL, LAZARD FRERES & CO.  Indeed, on behalf of Morgan Stanley, our firm demanded last year that you cease and desist from all use and registration of the marks DEAN WITTER and SALOMON SMITH BARNEY, the applications for which similarly have been rejected by the USPTO based on Morgan Stanley's prior rights.

Our client therefore demands that you deliver to our offices by no later than the end of business on **Tuesday, May 5, 2020**, your written agreement that you will: (i) expressly abandon Application Nos. 041125 & 041044 to register the marks LEHMAN BROTHERS and SHEARSON LEHMAN in Andorra; and (ii) permanently cease and desist from any and all use

**Cowan, Liebowitz & Latman, P.C.**
Vladimir "Val" Sklarov
April 28, 2020
Page 4

or registration of any name, mark or domain name containing, comprising or confusingly similar to the LEHMAN Marks.

Failure to comply will force us to advise our client to take any and all actions necessary to protect our client's valuable intellectual property rights.

This correspondence is without prejudice to any of our client's rights and remedies in law and equity, all of which are expressly reserved.

Sincerely,

Eric J. Shimanoff

cc: (Via Email only)

Singh Law Firm, P.A.
Attn: Jaitegh Singh
132 E. 43rd Street, Suite 618
New York, NY 10017
jt@jtsinghlaw.com; jt@mannysingh.com

The Law Offices of Michael T. McCracken
Attn: Michael T. McCracken, Esq.
10 South LaSalle Street, Suite 1600
Chicago, IL 60603
michael.t.mccracken@gmail.com

TFCoen Law Firm
Attn: Timothy F. Coen, Esq.
1000 Davis Dr.
Atlanta, GA 30327
tfcoen@bellsouth.net

28827/162/3471182



**SINGH LAW FIRM, P.A.**
155 East 44th Street
6th Floor
New York, NY 10017

Jaitegh Singh (FL, NJ, NY, & CO)
Direct Phone: (212) 687-2578
jt@jtsinghlaw.com

May 6, 2020

Eric J. Shimanoff
Cowan, Liebowitz & Latman, P.C.
114 West 47th Street
New York, NY 10036
(212)790-9226
ejs@cll.com

*Sent Via Email and Fedex*

### RE: VIOLATION OF BARCLAYS' INTELLECTUAL PROPERTY RIGHTS

Dear Mr. Shimanoff:

We send this correspondence in response to your letter dated April 28, 2020. While we acknowledge your position in regard to the intellectual property rights of Lehman Brothers and Shearson Lehman, we completely disagree. As such, our client will not be complying with your demands to abandon the Andorra applications and cease use of the Lehman Mark.

While we appreciate your recitation of the history of the Lehman Mark when it was associated with your client, Barclays PLC, Lehman Brothers filed for bankruptcy in 2008. The Lehman Brothers bankruptcy was the subject of much media coverage and widely known to the general public. As you stated in your letter, "every detail of Lehman Brothers' pre-financial crisis business activities, financial troubles, bankruptcy filing and subsequent business activities has been widely publicized in the press and reflected in public culture." Given this, there is a global presumption that your client abandoned such Mark as the public was, and continues to be, led to believe that Lehman Brothers was no longer an active business entity. This fact is undisputed.

Since the bankruptcy in 2008, there is no indication, by either yourselves or the media, that the Lehman Mark has been used by your client; there has been no advertisement, press release, or other indication to the public which contradicts "common knowledge" that the Lehman Mark has been abandoned. A legal presumption of abandonment occurs when there is nonuse of a Mark for three consecutive years. As 2008 certainly occurred more than three years ago and Barclays PLC has made no attempt to dispel the global public notion, in any way, the Lehman Mark has been abandoned. There is no evidence whatsoever that Barclays PLC, or anyone representing Lehman, has appeared in the media disputing the notion that Lehman is out of business. This is further

evidenced by your client's failure to register the Mark. Instead, rather than attempting to dispel public notion or register the Marks, your client chooses to harass and intimidate others for exercising their legal and rightful actions.

While your letter stated that your client owns the Lehman Brothers Mark (Serial No. 86081143), USPTO reflects that your client is merely an applicant for this Mark, not a registrant. As such, your client is not the owner of said Mark. Furthermore, other Marks associated with the Lehman Mark such as Lehman Brothers Asset Management (Serial No. 78731819), Lehman Brothers (Serial No. 74234194), Lehman Brothers (Serial No. 74234194), Lehman Brother (Serial No. 74068439) and Shearson Lehman Hutton (Serial No. 73734969), while perhaps once associated with Barclays, now are considered to be cancelled or abandoned by the USPTO. Therefore, there is no indication that these Marks are currently being used by your client or that they have been used for more than a decade. Trademarks are territorial and, as such, your client does not own global rights to the Lehman Mark, let alone the legal rights to such a Mark in Andorra. Our client is merely a capitalist opportunist who legally seeks to obtain abandoned or unregistered trademarks and he is well within his legal right to do so.

Further, your accusations of bad faith on behalf of our client are unfounded as Mr. Sklarov's personal past and a singular preliminary injunction are not indicative of bad faith. While you are quick to tarnish our client's name to force our hand in this matter, you neglect to consider the extensive and repulsive criminal history of Barclays. Just last year, the SEC fined Barclays more than six million dollars for violating the Foreign Corrupt Practices Act. However, this was not an unprecedented event given that Barclays has been enmeshed in a series of legal and regulatory proceedings since 2007. In 2007, Barclays paid $10.9 Million to settle charges of illegal insider trading in bond securities. And then, in 2009, the UK Financial Services Authority fined Barclays several million Pounds Sterling for failing to submit accurate transaction reports. In 2010, Barclays paid hundreds of millions in United States Dollars to the U.S. Government and New York State to settle charges for violating the International Emergency Economic Powers Act and the Trading with the Enemy Act. These charges stemmed from transactions with sanctioned countries such as Iran and Sudan.

Furthermore, in 2011, the Federal Housing Financial Agency included Barclays in a lawsuit for violations of federal securities law. In 2012, Barclays agreed to pay $450 million USD to settle allegations of illegal manipulation of LIBOR and Euribor interest rate indices to several UK and U.S. regulatory authorities, including the U.S. Commodity Futures Trading Commission, the U.S. Justice Department, and the Financial Services Authority. Additionally, in 2013, the U.S. Federal Energy Regulatory Commission ordered Barclays to pay civil penalties for manipulating electricity prices in California and other Western U.S. Markets. In 2014, Barclays faced accusations and fines from both the U.S. Senate Permanent Subcommittee on Investigations and the Financial Industry Regulatory Association. In 2015, Barclays PLC was once again fined by British Regulators for anti-money-laundering control failings. In 2016, Barclays again settled with the SEC and New York General Attorney to resolve allegations of violations of securities laws. Then again in 2017, the SEC fined Barclays millions for overcharging customers. In 2018, the U.S. Justice Department stated that Barclays would pay $2 billion USD to settle claims from the early 2000's for fraudulently selling residential mortgage-backed securities. Furthermore, several of Barclays employees have faced criminal charges and have been found guilty for numerous

criminal wrongdoings including corruption, fraud, conspiracy to commit fraud, unlawful financial assistance, and conspiracy to commit fraud by false representation. In this year alone, your client's CEO, Jes Staley, is being investigated by various authorities given his close relationship with financier and convicted child sex offender Jeffery Epstein. Sadly, even this is not an exhaustive list of the corruption, bribery, fraud, scandalous and criminal conduct which your client has perpetrated over the years, rather, these are just some of the highlights, the tip of the iceberg. Additionally, it has come to our attention that additional investigations are currently pending in regard to your client's notorious and persistent criminal activities. It would take pages upon pages to summarize  the extensive criminal conduct Barclay's has been accused of over the years and admitted guilt to.

The following are the legal issues that your client experienced in last year alone:

**Investigations into certain advisory services agreements and other matters/civil action**
The UK Serious Fraud Office (SFO), the Financial Conduct Authority (FCA), the US Department of Justice (DoJ) and the US Securities and Exchange Commission (SEC) have been conducting investigations into two advisory services agreements entered into by Barclays Bank PLC. These agreements were entered into with Qatar Holding LLC in June and October 2008 (the Agreements). The FCA commenced an investigation into whether the Agreements may have related to Barclays PLC's capital raisings in June and November 2008 (the Capital Raisings). The existence of the June 2008 advisory services agreement was disclosed, but the entry into the advisory services agreement in October 2008 and the fees payable under the Agreements, which amounted to a total of £322m payable over a period of five years, were not disclosed in the announcements or public documents relating to the Capital Raisings. The SFO also commenced an investigation into the Agreements and into a $3bn loan (the Loan) provided by Barclays Bank PLC in November 2008 to the State of Qatar. In May 2018, the Crown Court dismissed all charges against Barclays PLC and Barclays Bank PLC brought by the SFO, and in October 2018, the High Court denied the SFO's application to reinstate the charges, which were consequently dismissed.

*FCA Proceedings and other investigations*
In 2013, the FCA issued warning notices (the Notices) finding that, while Barclays PLC and Barclays Bank PLC believed at the time of the execution of the Agreements that there should be at least some unspecified and undetermined value to be derived from them, the primary purpose of the Agreements was not to obtain advisory services but to make additional payments, which would not be disclosed, for the Qatari participation in the Capital Raisings. The Notices concluded that Barclays PLC and Barclays Bank PLC were in breach of certain disclosure-related listing rules and Barclays PLC was also in breach of Listing Principle 3 (the requirement to act with integrity towards holders and potential holders of the Company's shares). In this regard, the FCA considers that Barclays PLC and Barclays Bank PLC acted recklessly. The financial penalty provided in the Notices against Barclays is £50m. Barclays PLC and Barclays Bank PLC continue to contest the findings. The FCA action has been stayed due to the SFO proceedings pending against certain former Barclays executives.

In addition, the DoJ and the SEC have been conducting investigations relating to the Agreements.

*Civil Action*
In 2016, PCP Capital Partners LLP and PCP International Finance Limited (PCP) served a claim on Barclays Bank PLC seeking damages for fraudulent misrepresentation and deceit, arising from alleged statements made by Barclays Bank PLC to PCP in relation to the terms on which securities were to be issued to potential investors, allegedly including PCP, in the November 2008 capital raising. PCP seeks damages of approximately £1.6bn (plus interest from November 2017) and costs. Barclays Bank PLC is defending the claim and trial is scheduled to commence in June 2020.

**Investigations into certain business relationships**
In 2012, the DoJ and SEC commenced investigations in relation to whether certain relationships with third parties who assist Barclays PLC to win or retain business are compliant with the US Foreign Corrupt Practices Act. Various regulators in other jurisdictions are also being briefed on the investigations. Separately Barclays has been cooperating with the DoJ and SEC in relation to an investigation into certain of its hiring practices in Asia and elsewhere and is keeping certain regulators in other jurisdictions informed. Barclays is in advanced discussions to resolve this matter.

**Investigations into LIBOR and other benchmarks**
Regulators and law enforcement agencies, including certain competition authorities, from a number of governments have been conducting investigations relating to Barclays Bank PLC's involvement in manipulating certain financial benchmarks, such as LIBOR and EURIBOR. Barclays PLC, Barclays Bank PLC and Barclays Capital Inc. (BCI) have reached settlements with a number of regulators and law enforcement agencies. Barclays Bank PLC continues to respond to requests for information from the SFO in relation to its ongoing LIBOR investigation, including in respect of Barclays Bank PLC.

**LIBOR and other benchmark civil actions**
Various individuals and corporates in a range of jurisdictions have threatened or brought civil actions against Barclays and other banks in relation to LIBOR and/or other benchmarks. While certain cases have been dismissed, settled or settled subject to final approval from the relevant court (and in the case of class actions, the right of class members to opt out of the settlement and to seek to file their own claims), other actions remain pending and their ultimate impact is unclear.

*USD LIBOR Cases in the Multidistrict Litigation Court*
The majority of the USD LIBOR cases, which have been filed in various US jurisdictions, have been consolidated for pre-trial purposes before a single judge in the US District Court in the Southern District of New York (SDNY).

The complaints are substantially similar and allege, amongst other things, that Barclays PLC, Barclays Bank PLC, BCI and other financial institutions individually and collectively

violated provisions of the US Sherman Antitrust Act (Antitrust Act), the US Commodity Exchange Act (CEA), the US Racketeer Influenced and Corrupt Organizations Act (RICO), the Securities Exchange Act of 1934 and various state laws by manipulating USD LIBOR rates.

Certain of the proposed class actions have been settled. Barclays has settled claims purportedly brought on behalf of plaintiffs that (i) engaged in USD LIBOR-linked over-the-counter transactions (OTC Class); (ii) purchased USD LIBOR-linked financial instruments on an exchange; (iii) purchased USD LIBOR-linked debt securities; or (iv) issued loans linked to USD LIBOR (Lender Class) and paid $120m, $20m, $7.1m and $4m respectively. The settlements with the OTC Class and the Lender Class have received final court approval. The other settlements remain subject to final court approval and/or the right of class members to opt out of the settlement and to seek to file their own claims.

The remaining putative class actions and individual actions seek unspecified damages with the exception of five lawsuits, in which the plaintiffs are seeking a combined total in excess of $1.25bn in actual damages against all defendants, including Barclays Bank PLC, plus punitive damages. Some of the lawsuits also seek trebling of damages under the Antitrust Act and RICO.

*Additional USD LIBOR Cases in the SDNY*
In 2015, an individual action against Barclays Bank PLC and other panel bank defendants was dismissed by the SDNY. The plaintiff alleged that the panel bank defendants conspired to increase USD LIBOR, which caused the value of bonds pledged as collateral for a loan to decrease, ultimately resulting in the sale of the bonds at a low point in the market. In March 2018, the court denied the plaintiff's motion for leave to amend its complaint and dismissed the case. The plaintiff's appeal of the court's order has been dismissed.

Beginning in January 2019, several putative class actions were filed in the SDNY against Barclays PLC, Barclays Bank PLC, BCI, other financial institution defendants and Intercontinental Exchange Inc. and certain of its affiliates (ICE), asserting antitrust and unjust enrichment claims on allegations that, beginning in 2014, defendants manipulated USD LIBOR through defendants' submissions to ICE, which took over rate-setting duties for LIBOR from the British Bankers' Association in 2014. These actions have been consolidated.

*Sterling LIBOR Case in SDNY*
In 2015, a putative class action was filed in the SDNY against Barclays Bank PLC and other Sterling LIBOR panel banks by a plaintiff involved in exchange-traded and over-the-counter derivatives that were linked to Sterling LIBOR. The complaint alleges, among other things, that the defendants manipulated the Sterling LIBOR rate between 2005 and 2010 and, in so doing, committed CEA, Antitrust Act, and RICO violations. In 2016, this class action was consolidated with an additional putative class action making similar allegations against Barclays Bank PLC and BCI and other Sterling LIBOR panel banks.

The defendants' motion to dismiss was granted in December 2018. The plaintiff has asked the court to reconsider this decision.

*Japanese Yen LIBOR Cases in SDNY*
In 2012, a putative class action was filed in the SDNY against Barclays Bank PLC and other Japanese Yen LIBOR panel banks by a plaintiff involved in exchange-traded derivatives. The complaint also names members of the Japanese Bankers Association's Euroyen Tokyo Interbank Offered Rate (Euroyen TIBOR) panel, of which Barclays Bank PLC is not a member. The complaint alleges, amongst other things, manipulation of the Euroyen TIBOR and Yen LIBOR rates and breaches of the CEA and Antitrust Act between 2006 and 2010. In 2014, the court dismissed the plaintiff's antitrust claims in full, but the plaintiff's CEA claims remain pending. Discovery is ongoing.

In 2017, a second putative class action concerning Yen LIBOR which was filed in the SDNY against Barclays PLC, Barclays Bank PLC and BCI was dismissed in full. The complaint makes similar allegations to the 2012 class action. The plaintiffs have appealed the dismissal.

*SIBOR/SOR Case in the SDNY*
In 2016, a putative class action was filed in the SDNY against Barclays PLC, Barclays Bank PLC, BCI and other defendants, alleging manipulation of the Singapore Interbank Offered Rate (SIBOR) and Singapore Swap Offer Rate (SOR). The plaintiffs amended their complaint in 2017 following dismissal by the court of the claims against Barclays for failure to state a claim. In October 2018, the court dismissed all claims against Barclays PLC, Barclays Bank PLC and BCI, a decision that the plaintiffs are challenging.

*Non-US Benchmarks Cases*
In the UK, certain local authorities have brought claims against Barclays asserting that they entered into loans in reliance on misrepresentations made by Barclays in respect of its conduct in relation to LIBOR.

In addition to the US and UK actions described above, legal proceedings have been brought or threatened against Barclays in connection with alleged manipulation of LIBOR and EURIBOR and other benchmarks in the UK, a number of other jurisdictions in Europe, Israel and Argentina. Additional proceedings in other jurisdictions may be brought in the future.

**Foreign Exchange Investigations**
Various regulatory and enforcement authorities across multiple jurisdictions have been investigating a range of issues associated with Foreign Exchange sales and trading, including electronic trading.

In 2015 Barclays reached settlements with the CFTC, the DoJ, the NYDFS, the Board of Governors of the Federal Reserve System (Federal Reserve) and the FCA (together, the 2015 Resolving Authorities) in relation to investigations into certain sales and trading

practices in the Foreign Exchange market. In connection with these settlements, Barclays paid total penalties of approximately $2.38bn and agreed to undertake certain remedial actions. Under the plea agreement with the DoJ, which was approved by the US District Court for the District of Connecticut in January 2017, Barclays PLC agreed to a term of probation of three years. Barclays also continues to provide relevant information to certain of the 2015 Resolving Authorities.

The European Commission is one of a number of authorities still conducting an investigation into certain trading practices in Foreign Exchange markets. In May 2019, the European Commission announced two settlements and Barclays has paid total penalties of approximately €210m. In June 2019, the Swiss Competition Commission announced two settlements, which require Barclays to pay total penalties of approximately CHF 27m.

**Civil actions in respect of Foreign Exchange**

Following settlement of certain investigations referred to above in 'Foreign Exchange Investigations' a number of individuals and corporates in a range of jurisdictions have threatened or brought civil actions against Barclays and other banks in relation to Foreign Exchange or may do so in the future. Certain of these cases have been dismissed, settled or settled subject to final approval from the relevant court (and in the case of class actions, the right of class members to opt out of the settlement and to seek to file their own claims).

*FX Opt Out Action*

In 2014, a number of civil actions filed in the SDNY alleging manipulation of Foreign Exchange markets were combined into a single consolidated action (Consolidated FX Action). In 2015, Barclays Bank PLC and BCI settled the Consolidated FX Action and paid $384m. The settlement received final court approval in August 2018. In November 2018, a group of sixteen plaintiffs (and several of their affiliates) who opted out of the Consolidated FX Action settlement filed a complaint in the SDNY against the Consolidated FX Action defendants, including Barclays Bank PLC and BCI.

*Retail Basis Action*

A putative action was filed in the Northern District of California (and subsequently transferred to the SDNY) against several international banks, including Barclays PLC and BCI, on behalf of a putative class of individuals that exchanged currencies on a retail basis at bank branches (Retail Basis Claims). The Court has ruled that the Retail Basis Claims are not covered by the settlement agreement in the Consolidated FX Action. The Court subsequently dismissed all Retail Basis Claims against Barclays and all other defendants. The plaintiffs amended their complaint and sought to expand the action to include credit card, debit card and wire transactions, which expansion the Court denied.

*State Law FX Action*

In 2016, a putative class action was filed in the SDNY under federal, New York and California law on behalf of proposed classes of stockholders of Exchange Traded Funds and others who supposedly were indirect investors in FX Instruments. The plaintiffs' counsel subsequently amended the complaint to bring claims on behalf of a proposed class

of investors under federal and various state laws who traded FX Instruments through FX dealers or brokers not alleged to have manipulated Foreign Exchange Rates. A different group of plaintiffs subsequently filed another action and asserted substantively similar claims. These two actions were consolidated and a consolidated complaint was filed in 2017. The consolidated action was dismissed, but the plaintiffs have filed an amended complaint, except as to their federal claims.

*Non-US FX Actions*

In addition to the actions described above, legal proceedings have been brought or are threatened against Barclays in connection with manipulation of Foreign Exchange in the UK, a number of other jurisdictions in Europe, Israel and Australia and additional proceedings may be brought in the future.

**Metals investigations**

Barclays Bank PLC has provided information to the DoJ, the CFTC and other authorities in connection with investigations into metals and metals-based financial instruments.

**Civil actions in respect of the gold and silver fix**

A number of civil complaints, each on behalf of a proposed class of plaintiffs, have been consolidated and transferred to the SDNY. The complaints allege that Barclays Bank PLC and other members of The London Gold Market Fixing Ltd. manipulated the prices of gold and gold derivative contracts in violation of the CEA, the Antitrust Act, and state antitrust and consumer protection laws.

Also, in the US, a proposed class of plaintiffs filed a complaint against a number of banks, including Barclays Bank PLC, BCI and Barclays Capital Services Ltd., alleging manipulation of the price of silver in violation of the CEA and antitrust laws. The court has dismissed this action as against the Barclays entities.

Civil actions have also been filed in Canadian courts against Barclays PLC, Barclays Bank PLC, Barclays Capital Canada Inc. and BCI on behalf of proposed classes of plaintiffs alleging manipulation of gold and silver prices in violation of Canadian law.

**US residential mortgage related litigation**

There are various pending civil actions relating to US Residential Mortgage-Backed Securities (RMBS). Barclays was the sole provider of various loan-level representations and warranties (R&Ws) with respect to approximately $5bn of Barclays sponsored securitisations. In addition, an entity that Barclays acquired in 2007 (Acquired Subsidiary) provided R&Ws on $19.4bn of loans it sold to third parties. There are no stated expiration provisions applicable to most R&Ws made by Barclays or the Acquired Subsidiary. Under certain circumstances, Barclays and/or the Acquired Subsidiary may be required to repurchase the related loans or make other payments related to such loans if the R&Ws are breached.

The unresolved repurchase requests received on or before 30 June 2019 associated with R&Ws made by Barclays or the Acquired Subsidiary had an original unpaid principal balance of approximately $2.1bn at the time of such sale.

The unresolved repurchase requests described above relate to civil actions that have been commenced by the trustees for certain RMBS securitisations in which the trustees allege that Barclays and/or the Acquired Subsidiary must repurchase loans that violated the operative R&Ws. Such trustees making repurchase requests have also alleged that the operative R&Ws may have been violated with respect to a greater (but unspecified) amount of loans than the amount of loans previously stated in specific repurchase requests made by such trustees. These civil actions are ongoing. An intermediate appellate court has found that claims related to certain R&Ws are time-barred. This decision is being appealed.

**Alternative trading systems**

In 2014, the New York State Attorney General (NYAG) filed a complaint (NYAG Complaint) against Barclays PLC and BCI in the Supreme Court of the State of New York alleging, amongst other things, that Barclays PLC and BCI engaged in fraud and deceptive practices in connection with LX, Barclays' SEC-registered alternative trading system (ATS). In February 2016, Barclays reached settlement agreements with the SEC and NYAG, which required Barclays to pay $35m to each. Following the filing of the NYAG Complaint, Barclays PLC and BCI were also named in a putative shareholder securities class action. The parties have agreed to a settlement of this action for $27m, which has received final court approval.

**Treasury auction securities civil actions and related matters**

Various civil actions have been filed against Barclays Bank PLC, BCI and other financial institutions alleging violations of antitrust and other laws relating to the markets for US Treasury securities and Supranational, Sovereign and Agency securities. Certain governmental authorities are also conducting investigations relating to trading of certain government and agency securities in various markets.

Numerous putative class action complaints have been filed in US Federal Court against Barclays Bank PLC, BCI and other financial institutions that have served as primary dealers in US Treasury securities. Those actions have been consolidated and in 2017, plaintiffs in the putative class action filed a consolidated amended complaint in the US Federal Court in New York against the defendants as well as certain corporations that operate electronic trading platforms on which US Treasury securities are traded. The complaint purports to assert claims under US federal antitrust laws and state common law based on allegations that the defendants (i) conspired to manipulate the US Treasury securities market and/or (ii) conspired to prevent the creation of certain platforms by boycotting or threatening to boycott such trading platforms. The defendants have filed a motion to dismiss.

In addition, certain plaintiffs have filed a related, direct action against BCI and certain other financial institutions that have served as primary dealers in US Treasury securities. This

complaint alleges that defendants conspired to fix and manipulate the US Treasury securities market in violation of US federal antitrust laws, the CEA and state common law.

Barclays PLC, Barclays Bank PLC, BCI, Barclays Execution Services Limited (formerly Barclays Services Limited), Barclays Capital Securities Limited and certain other financial institutions have been named as defendants in a civil antitrust complaint that alleges that the defendants engaged in a conspiracy to fix prices and restrain competition in the market for US dollar- denominated Supranational, Sovereign and Agency bonds (SSA Bonds) from 2009 through 2015. The defendants have moved to dismiss the action. In February 2019, indirect purchasers of SSA Bonds filed a separate but related complaint making similar allegations.

Certain governmental authorities are conducting investigations into activities relating to the trading of certain government and agency securities in various markets and Barclays has been providing information to various authorities on an ongoing basis.

**US Government Sponsored Entities Bond Civil Class Action**
In a putative consolidated class action filed in the SDNY in 2019, plaintiffs allege that BCI and certain other bond dealers conspired to fix the prices of government sponsored entity bonds in violation of US antitrust law from January 2009 through January 2016.

**Mexican Government Bond civil action**
In 2018, a putative consolidated class action against various financial institutions including Barclays PLC, Barclays Bank PLC, BCI, Barclays Capital Securities Limited, Barclays Bank Mexico, S.A., Grupo Financiero Barclays Mexico, S.A. de C.V. and Banco Barclays S.A. was consolidated in the US District Court in the SDNY. The plaintiffs assert antitrust and state law claims arising out of an alleged conspiracy to fix the prices of Mexican Government Bonds from 2006 through mid-2017. Defendants have moved to dismiss the consolidated action.

**BDC Finance L.L.C.**
In 2008, BDC Finance L.L.C. (BDC) filed a complaint in the NY Supreme Court alleging that Barclays Bank PLC had breached a contract in connection with a portfolio of total return swaps governed by an ISDA Master Agreement (collectively, the Agreement) when it failed to transfer approximately $40m of alleged excess collateral in response to BDC's 2008 demand (Demand).

BDC asserts that under the Agreement Barclays Bank PLC was not entitled to dispute the Demand before transferring the alleged excess collateral and that even if the Agreement entitled Barclays Bank PLC to dispute the Demand before making the transfer, Barclays Bank PLC failed to dispute the Demand. BDC demands damages totalling $298m plus attorneys' fees, expenses, and pre-judgement interest. Following a trial on certain liability issues, the court ruled in December 2018 that Barclays Bank PLC was not a defaulting party. BDC has appealed that decision.

In 2011, BDC's investment advisor, BDCM Fund Adviser, L.L.C. and its parent company, Black Diamond Capital Holdings, L.L.C. also sued Barclays Bank PLC and BCI in Connecticut State Court for unspecified damages allegedly resulting from Barclays Bank PLC's conduct relating to the Agreement, asserting claims for violation of the Connecticut Unfair Trade Practices Act and tortious interference with business and prospective business relations. The Connecticut case is currently stayed.

**Civil actions in respect of the US Anti-Terrorism Act**
Civil complaints against Barclays Bank PLC and other banks allege engagement in a conspiracy and violation of the US Anti- Terrorism Act (ATA). These include various civil complaints filed in the US Federal Courts in the EDNY and SDNY by separate groups of plaintiffs (aggregating over 4,000) alleging that Barclays Bank PLC and a number of other banks engaged in a conspiracy and violated the ATA by facilitating US dollar denominated transactions for the Government of Iran and various Iranian banks, which in turn funded acts of terrorism that injured or killed the plaintiffs' family members. The plaintiffs seek to recover for pain, suffering and mental anguish pursuant to the provisions of the ATA, which allows for the tripling of any proven damages and attorneys' fees. In respect of a motion by defendants to dismiss one of the complaints, in July 2018, a magistrate judge (to whom the court referred the motion) issued a recommendation that the motion be denied; the defendants objected to that recommendation; and the motion is pending before the court. In respect of another complaint, the defendants' motion to dismiss was granted in March 2019, but the plaintiffs have moved to file an amended complaint.

**Interest rate swap and credit default swap US civil actions**
Barclays PLC, Barclays Bank PLC, and BCI, together with other financial institutions that act as market makers for interest rate swaps (IRS) are named as defendants in several antitrust class actions which were consolidated in the SDNY in 2016. The complaints allege the defendants conspired to prevent the development of exchanges for IRS and demand unspecified money damages, treble damages and legal fees. Plaintiffs include certain swap execution facilities, as well as buy-side investors. The buy-side investors claim to represent a class that transacted in fixed-for-floating IRS with defendants in the US from 2008 to the present, including, for example, US retirement and pension funds, municipalities, university endowments, corporations, insurance companies and investment funds.

In 2017, a separate suit was filed in the US District Court in the SDNY against the same financial institution defendants in the IRS cases, including Barclays PLC, Barclays Bank PLC, and BCI, claiming that certain conduct alleged in the IRS cases also caused plaintiff to suffer harm with respect to the Credit Default Swaps market. The defendants have moved to dismiss this action. Separately, in June 2018, trueEX LLC filed an antitrust class action in the SDNY against eleven financial institutions that act as dealers in the IRS market, including Barclays Bank PLC and BCI, alleging that the defendants unlawfully conspired to block trueEX from successfully entering the market with its IRS trading platform. trueEX LLC also alleges that the defendants more generally boycotted other anonymous, all-to-all IRS trading platforms. In November 2018, the court dismissed certain claims for

unjust enrichment and tortious interference, but denied a motion to dismiss the federal and state antitrust claims which remain pending.

**Portuguese Competition Authority investigation**

The Portuguese Competition Authority is investigating whether competition law was infringed by the exchange of information about retail credit products amongst 15 banks in Portugal, including Barclays, over a period of 11 years with particular reference to mortgages, consumer lending and lending to small and medium enterprises. Barclays is cooperating with the investigation.

**Investigation into collections and recoveries relating to unsecured lending**

In February 2018, the FCA commenced an enforcement investigation in relation to whether or not Barclays implemented effective systems and controls with respect to collections and recoveries and whether or not it paid due consideration to the interests of customers in default and arrears.

**HM Revenue & Customs (HMRC) assessments concerning UK Value Added Tax**

In 2018, HMRC issued notices that have the effect of removing certain overseas subsidiaries that have operations in the UK from Barclays' UK VAT group, in which group supplies between members are generally free from VAT. The notices have retrospective effect and correspond to assessments of £181m (inclusive of interest), of which Barclays would expect to attribute an amount of approximately £128m to Barclays Bank UK PLC and £53m to Barclays Bank PLC. Barclays has appealed HMRC's decision to the First Tier Tribunal (Tax Chamber).

This list merely highlights the extensive legal actions taken against your client in 2019. There are undoubtedly more legal and regulatory issues that have arisen this year and will continue to arise in the future in regard to your client.

Furthermore, Barclays has been repeatedly accused of stealing assets and funds from Holocaust victims who entrusted Barclays with their valuables after fleeing the Nazis in WWII. This perhaps is the most abhorrent and disturbing of all allegations Barclays has faced over the years. The fact that Barclays would rather confiscate assets and funds from the dead and profiteer from such repugnant conduct will not sit well with members of a jury should we engage in litigation. To even imply that our client would seek to profit off the use of a name associated with these heinous allegations is counter-intuitive.

You have also failed to state any specific confusion or damage your client has incurred by way of Marks legally owned by your client. Your case has no standing, jurisdictional basis, or legal merit. All portrayal in the media points to Lehman Brothers being out of business for more than a decade and, thus, the Mark abandoned.

To reiterate, our client does not seek to be associated with your client, Barclays PLC, rather, our client seeks to exercise his legal right to register Marks which have been abandoned, unregistered, and are no longer in use. We will also note that your client has no business in Andorra

as you fail to mention what, if any, business your client had or still has in Andorra. We presume your letter is referencing activities in the USA, as such, our client has no activities in the USA and will not.

Therefore, given the aforementioned, we will not be complying with your demands as our client has every legal right to continue pursuing the Mark of Lehman Brothers and Shearson Lehman in Andorra. Furthermore, should your client continue to harass our client with bullying and extortion tactics, we will not hesitate to aggressively pursue legal remedies on behalf of our client. We are not threatened by your attempts to dissuade our client from use of legally obtained Marks. If Lehman Brothers was still in business and wanted the Mark, it should have obtained it. As such, we request that you cease from your continued harassment of our client and immediately stop your interference in this matter.

Sincerely,

Jaitegh Singh, Esq.
Partner at Singh Law Firm, P.A.
Licensed in (NY, NJ, FL & CO)



Cowan, Liebowitz & Latman, P.C.
114 West 47th Street
New York, NY 10036

(212) 790-9200 Tel
(212) 575-0671 Fax
www.cll.com

**Eric J. Shimanoff**
(212) 790-9226
ejs@cll.com

May 21, 2020

<u>**Via Email**</u>

Singh Law Firm, P.A.
Attn: Jaitegh Singh
132 E. 43rd Street, Suite 618
New York, NY 10017
jt@jtsinghlaw.com; jt@mannysingh.com

      Re:    <u>Violation of Barclays' Intellectual Property Rights</u>

Dear Mr. Singh:

      We are in receipt of your May 6, 2020 correspondence sent on behalf of Mr. Sklarov.

      Once again, you and your client willfully ignore all the evidence of Barclays' and Lehman Brothers' continued, consistent and well-publicized use of the LEHMAN Marks since 2008. You and your client also continue to overlook Barclays' current trademark registrations for, and the residual goodwill associated with, the LEHMAN Marks worldwide. We have previously advised you to review all such evidence submitted in the opposition proceedings in the USPTO and the revocation proceeding in the European Union. Clearly, you have not undertaken this simple due diligence. We suggest in the future that you investigate the facts before making unfounded conclusions that are contrary to the plain evidence.

      Your assertion that Mr. Sklarov registered the LEHMAN Marks in Andorra and filed numerous trademark applications in the United States in good faith is incredulous. Mr. Sklarov has a well-documented history of engaging in criminal and civil fraud and has unlawfully utilized the trademarks of and intended to cause an association with at least one global financial services firm, ostensibly in connection with such scams. Nor can Mr. Sklarov legitimately claim he merely is registering "abandoned" marks. George Soros and Warren Buffet still are alive and well and known as leader in the financial world. Moreover, many of the marks for which Mr. Sklarov applied, including DEAN WITTER and SALOMON SMITH BARNEY, were rejected by the USPTO in light of ***existing*** valid trademarks and registrations owned by the parties they were targeting. Your defense of Mr. Sklarov's bad faith trademark filings is surprising considering you admitted to the court during oral argument on the preliminary injunction hearing in the Rothschild litigation that you had advised Mr. Sklarov against applying to register

**Cowan, Liebowitz & Latman, P.C.**
Vladimir "Val" Sklarov
April 28, 2020
Page 2

MAYER AMSCHEL ROTHSCHILD CAPITAL, which fully incorporates the name of the founder of the Rothschild global firm.

Moreover, Mr. Sklarov clearly choose to register the LEHMAN Marks, as well as several marks that infringe the rights of other third-party financial institutions, such as Rothschild and Oppenheimer, in Andorra because the territory does not have an opposition mechanism as part of the trademark registration process, thus making it more difficult for companies to enforce their legitimate rights. This also shows his bad faith intent.

Mr. Sklarov can provide no legitimate explanation for his registration of and attempts to register the LEHMAN Marks, or the myriad third-party marks, other than to take advantage of the good will associated with the marks and the companies associated therewith, and to cause confusion among consumers, just as he did in the Rothschild case.

We also are surprised that you continue to represent Mr. Sklarov since you are actively engaged and participating in Mr. Sklarov's schemes in your role as General Counsel for many of the shell companies, including by filing of the numerous fraudulent trademark applications. One would think such potential personal liability would present a conflict and prevent you from representing Mr. Sklarov going forward.

Given Mr. Sklarov's proclivity for engaging in civil and criminal fraud, including in connection with impersonation another global financial services firm, the risk here is simply too high for Barclays to ignore. Thus, unless Mr. Sklarov immediately complies with Barclays' demands, Barclays will take any and all necessary and appropriate legal action to protect its valuable intellectual property rights and prevent further fraud by Mr. Sklarov.

Barclays is wholly undeterred by your references Barclays' alleged prior acts, which are immaterial to the present dispute with Mr. Sklarov and would never be considered by a court or heard by a jury. Unlike your references to Barclays, all of Mr. Sklarov's prior bad acts are highly relevant to the instant dispute and show a clear pattern of intent to deceive.

This correspondence is without prejudice to any of our client's rights and remedies in law and equity, all of which are expressly reserved.

Sincerely,

Eric J. Shimanoff

cc: (Via Email only)

Vladimir "Val" Sklarov (val@america2030.net)

28827/162/3480143



**SINGH LAW FIRM, P.A.**
155 East 44th Street
6th Floor
New York, NY 10017

Jaitegh Singh (FL, NJ, NY, & CO)
Direct Phone: (212) 687-2578
jt@jtsinghlaw.com

July 27, 2020

Eric J. Shimanoff
Cowan, Liebowitz & Latman, P.C.
114 West 47th Street
New York, NY 10036
(212)790-9226
ejs@cll.com

*Sent Via Email only*

***RE:*** **VIOLATION OF BARCLAYS' INTELLECTUAL PROPERTY RIGHTS**

Dear Mr. Shimanoff:

 We write this correspondence in response to your letter dated May 21, 2020. As such, we reiterate our previous position, we will not comply with your demands as our client has every legal right to continue pursuing the Mark of Lehman Brothers and Shearson Lehman in Andorra. The assertions contained in your letter are not only offensive, but also fail to establish any evidence to counter the fact that the Lehman Mark is actually abandoned and, as such, can be used by our client in Andorra.


 It is well established that in a trademark infringement claim, the defendant may prove the mark has been abandoned if there is a discontinuance of the trademark use and there is no intent to resume use. Given this, the Lehman Mark is abandoned. Lehman Brother's Holding Inc. ("Lehman") declared bankruptcy in 2008 and has not resumed operation since. Lehman's own website, Lehman.com, supports this assertion as the website clearly states on the home page, "Lehman Brother Holdings Inc. has filed for bankruptcy protection in the U.S., See below for more information on Lehman Brothers Holdings Inc. and the **disposition of businesses and subsidiaries of Lehman Brothers Holdings Inc**." The statement "disposition of business and

subsidiaries" alone indicates that Lehman is not conducting business and has not been operational since 2008. Further, there is absolutely no indication whatsoever that Lehman plans to resume operation; rather, there is a link to the Chapter 11 docket and additional links for "information on other **former** Lehman Brothers businesses." As such, Lehman itself has established through its withering online presence that: 1) Lehman declared Chapter 11 bankruptcy, and 2) Lehman's former businesses were acquired by other entities.

Additionally, an online search of Lehman returns that Lehman Brothers Holdings Inc. has zero employees and no phone number; an operational business or a business with intentions to operate would certainly have employees and a phone number readily available. Rather, all information and articles regarding Lehman point to the bankruptcy in 2008 and categorize Lehman as "defunct". The international companies related to the Lehman Mark were acquired by other entities such as Nomura, who, as of October 13, 2008, acquired the Lehman Brothers franchises in the Asia-Pacific region. Additionally, according to the Companies House in the UK, the Lehman Brothers Holdings PLC is currently "in administration" and the accounts are overdue with no annual returns recorded since 2008. The administrative period began in 2008 with a purpose to "achieve a better result for LBH's creditors as a whole than would be likely if LBH were wound up." As such, it is clear that Lehman's is not an active entity. While there is no doubt that the Lehman Mark was well-known prior to the bankruptcy in 2008 and then highly publicized throughout the bankruptcy, for the past decade the Lehman Mark has remained abandoned as Lehman has not and presently does not operate.

Furthermore, while you repeatedly reference the injunction issued in the Rothschild case, the present matter is entirely distinguishable given that our client seeks to register the Lehman Mark in Andorra and will not be using the Mark within the jurisdiction of the United States. As we stated in our previous correspondence, your client has no business in Andorra and, as such, the Lehman Mark will in no way be associated with Barclays or the United States. While you assert that our client registering the Mark in Andorra is indicative of bad faith, our client merely does not plan on conducting business in the United States. Further, our client remains uninterested in profiting off of the Lehman Mark and we are confident that any profit reaped from the Andorra entity will be entirely attributable to our client and his business.

Given the aforementioned, our client will not comply with your demands as our client has every legal right to register the Lehman Mark in Andorra and utilize the Mark in operations outside the jurisdiction of the United States. Further, we ask that you cease your continued interference in this matter as well as your harassment of our client. Should you fail to do so, we will not hesitate to aggressively pursue legal remedies on behalf of our client. We continue to reserve and retain all rights and remedies afforded under law.

Sincerely,

Jaitegh Singh, Esq.
Partner at Singh Law Firm, P.A.
Licensed in (NY, NJ, FL & CO)